UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| BRIAN KEIM,<br>*an individual, on behalf of himself*<br>*and all others similarly situated*,<br><br>    Plaintiff,<br><br>v.<br><br>ADF MIDATLANTIC, LLC,<br>*a foreign limited liability company*,<br>AMERICAN HUTS, INC.,<br>*a foreign corporation*,<br>ADF PIZZA I, LLC,<br>*a foreign limited liability company, and*<br>ADF PA, LLC,<br>*a foreign limited liability company*,<br>(known collectively as "ADF COMPANIES"),<br><br>    Defendants. | CASE NO. 9:12-cv-80577-KAM<br><br><br>JUDGE KENNETH A. MARRA<br><br><br>**PLAINTIFF'S SUR-REPLY**<br>**TO DEFENDANTS' MOTION TO**<br>**DISMISS FOR LACK OF**<br>**FEDERAL SUBJECT MATTER**<br>**JURISDICTION** |

COMES NOW, Plaintiff, BRIAN KEIM, by and through his undersigned counsel and pursuant to the Federal Rules of Civil Procedure, Plaintiff files this Sur-Reply and Memorandum of Law in Opposition to Defendant, AMERICAN HUTS, INC.'s, Motion to Dismiss for Lack of Federal Subject Matter Jurisdiction [DE-18; DE-40] and further states as follows:[1]

### BACKGROUND OF THE CASE

*The So-Called 'Friend Forwarder' Program*

From on or about February 2011 to on or about March 2012, Plaintiff received multiple unwanted text message advertisements which were sent on the behalf of Defendants. Contrary to

---

[1] The instant Sur-Reply is filed in response to the most recent Order of this Court. [DE-42]

Defendants' assertions (or the euphemistic name of "friend forwarder"), the text messages at issue did not come from Plaintiff's friends. Instead, the text messages were sent from two different short codes, 94253 and 30364, which were operated by Songwhale, LLC ("Songwhale") and Cellit, LLC ("Cellit") respectively. Songwhale and Cellit are two mobile marketing companies hired by Defendants to assist in the collective advertising efforts of Defendants ("ADF Companies").

The mobile marketing program consisted of two parts, an aggregation phase and a national advertising campaign. During the aggregation phase, people were bribed with promises of free food to turn in their friends' cellular telephone numbers to Songwhale, which subsequently sent spam text messages to unsuspecting consumers on behalf of Defendants. It is these consumers who make up the putative class in the Complaint presently pending before this Honorable Court. If this were not bad enough, beginning in January 2012, the aforementioned consumers (putative class members) were then sent additional unwanted text messages from Cellit as part of ADF Companies' national advertising campaign. On behalf of the putative class, Plaintiff filed the instant action on May 27, 2012 alleging violations of 47 U.S.C. § 227 *et seq.*, the Telephone Consumer Protection Act ("TCPA").

While it is true that no court has certified a class based upon a company utilizing an identical two-phased, turn-in-your-friends'-cell-numbers-for-food advertising program, a logical explanation for this might be that most companies engaged in mobile marketing actually choose to follow the TCPA. Furthermore, it should be noted that the method of advertising utilized by Defendants is even condemned by the leading trade group promoting text message advertising, the Mobile Marketing Association ("MMA"), for two reasons: (1) the MMA prohibit providing inducements in exchange for a consumer's agreement to forward information (in the present case,

lists of five (5) to ten (10) cellular telephone numbers back to Songwhale);[2] and (2) the messages fail to instruct consumers on how to opt-out of the spam advertising program.[3]  While the present lawsuit is unique in some respects, as noted by at least one scholarly legal article, it bears a resemblance to the matter of *Pimental v. Google, Inc.,* No. C–11–02585–YGR (N.D.Cal. May 27, 2011) wherein the defendants, Google, Inc. and Slide, Inc., harvested phone numbers added by 'group creators' and then independently sent their own text message advertisements promoting a group text messaging service offered by defendants.[4]  The *Pimental* case is currently set for final approval of a class action settlement (i.e. Fairness Hearing) on May 14, 2013.

### *The September 21, 2012 Offer of Judgment*

In an apparent response to the court's ruling in *Zinni v. ER Solutions, Inc*., 692 F.3d 1162 (11th Cir. 2012) (an offer which fails to provide the full relief requested cannot moot plaintiff's claim), Defendants, on September 21, 2012, sent its Offer of Judgment via email in yet another attempt to "pick off" the Plaintiff. Plaintiff declined to accept Defendants' defective Offer of Judgment as its terms are vague, illusory and do not offer complete relief.  Consequently, Plaintiff was forced, without the benefit of discovery, to file his Motion for Class Certification on October 2, 2012, well within the statutory 14-day window [DE-33].

---

[2] See CCS-21 of the current MMA's Consumer Best Practices guidelines available at <http://mmaconsumerbestpractices.com/standard-rate-cross-carrier-guidelines> which prohibits: "Providing inducements – e.g., payments, discounts, free goods or services – in exchange for a consumer's agreement to forward a message."

[3] *See* Mobile Marketing Association Global Code of Conduct available at <http://mmaglobal.com/policies>. ("Mobile Marketers must implement a simple termination (opt-out) process so that users can stop receiving messages, and users must be able to exercise their opt-out choice from any message.").

[4] David Almeida, *Mobile Marketing Class Action Litigation 2.0: Enterprising Plaintiffs' Lawyers Assert Novel Class Claims Under the TCPA* (published: July 2012; last accessed: January 20, 2013) <http://www.sdma.com/mobile-marketing-class-action-litigation-20-enterprising-plaintiffs-lawyers-assert-novel-class-claims-under-the-tcpa-07-25-2012>.

I.  BRIEF BACKGROUND ON TEXT MESSAGE SPAM AND THE TCPA.

Americans received 4.5 billion spam text messages in 2011, more than twice as many compared to 2009.[5] The Pew Research Center reports that 79% percent of cellular telephone owners use text messaging; of this group, 69% percent receive unwanted text message spam, 25% percent on a weekly basis.[6] In the United States, text message spam now reportedly costs consumers upwards of $300 million annually.[7] Congress stated that automated calls and prerecorded messages are a "nuisance," an "invasion of privacy," and "when an emergency or medical assistance telephone line is seized, a risk to public safety." *See* Pub.L. 102–243, § 2, ¶¶ 5–6, 9–10, 13–14, 105 Stat 2394 (1991). The TCPA bans calls using automated technology to protect consumers, placing the burden on the technology users rather than the consumers, who are ill-equipped to mitigate the nuisance. *See Lozano v. Twentieth Century Fox Film Corp.*, 702 F.Supp.2d 999, 1011 (N.D. Ill. 2010) ( "[T]he TCPA serves a significant government interest of minimizing the invasion of privacy caused by unsolicited telephone communications to consumers.").

## ARGUMENT

II.  **PURSUANT TO THE ELEVENTH CIRCUIT'S DECISION IN *ZINNI V. E.R. SOLUTIONS, INC.*, DEFENDANTS CANNOT MOOT THE PRESENT CLASS ACTION COMPLAINT WITH AN OFFER OF JUDGMENT AS IT FAILS TO SATISFY THE REQUESTED RELIEF SOUGHT BY MR. KEIM.**

In *Zinni v. ER Solutions, Inc.*, 692 F.3d 1162, 1168 (11th Cir. August 27, 2012), the Eleventh Circuit clarified that an offer which fails to provide the full relief requested cannot moot plaintiff's claim. In *Zinni*, the Court specifically pronounced:

---

[5] Nicole Perlroth, *Spam Invades a Last Refuge, the Cellphone,* New York Times (published: April 7, 2012; last accessed: November 25, 2012) <http://www.nytimes.com/2012/04/08/technology/text-message-spam-difficult-to-stop-is-a-growing-menace.html>.
[6] Source: http://pewinternet.org/Reports/2012/Mobile-phone-problems/Main-findings.aspx (last accessed November 24, 2012).
[7] Source: http://www.gottabemobile.com/2011/12/22/text-spam-costs-over-300-million-how-to-stop-call-and-sms-spammers-infographic/ (last accessed: November 27, 2012).

> The district court erred in finding Appellees' settlement offers rendered moot Appellants' FDCPA claims because the settlement offers did not offer full relief. Each of the Appellants requested that the district court enter judgment in his or her favor and against an Appellee as part of the prayer for relief in the complaint. Appellees' settlement offers, however, did not offer to have judgment entered against them. **Because the settlement offers were not for the full relief requested, a live controversy remained** over the issue of a judgment, and the cases were not moot.

*Id.* (emphasis added) (internal citations omitted). With respect to the Complaint pending before this Honorable Court, Plaintiff has sought "certification of a hybrid class under Rule 23(b)(3), Federal Rules of Civil Procedure, for monetary damages and pursuant to Rule 23(b)(2) for injunctive relief." [DE-1; ¶ 35]. Furthermore, Defendants have failed to address the first requested relief as enumerated in Plaintiff's wherefore clause, which reads as follows:

> *WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class, and against Defendants for:*
> *(a) **An order certifying this case to proceed as a class action**;*
> *(b) Statutory damages of up to $1500 dollars per call for each willful violation of the TCPA;*
> *(c) An injunction requiring Defendants to cease all communications in violation of the TCPA;*
> *(d) Reasonable attorney's fees and costs; and*
> *(e) Such further relief as this Court may deem appropriate.*

[DE-1; pp. 17,18] (emphasis added). Because Defendants' alleged Rule 68 Offer does not contain the full relief sought by Plaintiff, it cannot moot Plaintiff's claims. *See generally, Valencia v. Affiliated Grp.,* Inc., No. 07–61381–CIV, 2008 WL 4372895, at *2 (S.D.Fla. Sept. 24, 2008) (J. Marra) (denying motion to dismiss action for lack of subject matter jurisdiction because offer of judgment failed to satisfy plaintiff's demand for declaratory and injunctive relief).

III. **CONTRARY TO *ZINNI V. E.R. SOLUTIONS, INC.*, DEFENDANTS' OFFER OF JUDGMENT DOES NOT ENTITLE THE PLAINTIFF TO FULL RELIEF AS THERE STILL REMAINS AN ACTUAL CONTROVERSY REGARDING THE NUMBER OF SPAM TEXT MESSAGES SENT TO MR. KEIM BY THE TELEMARKETERS HIRED BY DEFENDANTS.**

"The plain purpose of Rule 68 is to encourage settlement and avoid litigation." *Util. Automation 2000, Inc. v. Choctawhatchee Elec. Co-op., Inc.,* 298 F.3d 1238, 1240 (11th Cir.2002) (citation omitted). Thus, "Rule 68 allows a defendant to make a firm, non-negotiable offer of judgment." *Id.* In the present matter, Defendants' Offer of Judgment does precisely the opposite. It does not quantify any amount of money that Defendants are offering to pay Plaintiff, only that they are willing to pay $1,500.00 dollars per text message.[8] . [DE-40-1, pp. 4-5] Hence, Plaintiff has not been provided a firm offer to pay anything and any dispute as to the number of spam text messages would necessitate further litigation, in direct contravention to Rule 68.[9] *See Basha v. Mitsubishi Motor Credit of America, Inc.,* 336 F.3d 451, 454–55 (5th Cir.2003) (describing as vague offer of judgment in suit under Fair Debt Collection Practices Act, which offer of judgment agreed to pay statutory damages but left amount of additional actual damages to later agreement by attorneys as to reasonable compensation for plaintiff's claimed actual damages, and holding such offer of judgment was invalid under Rule 68 for failure to properly quantify damages); *Arkla Energy Resources,* 9 F.3d at 867 (10th Cir.1993) (defendant cannot invoke Rule 68 with ambiguous offer of judgment). Moreover, evidence extrinsic to the offer's terms should not be considered. *See Chambers v. Manning,* 169 F.R.D. 5, 8 (D.Conn.1996) (citing *Said*

---

[8] [Defendants] "hereby offer to allow judgment to be entered against them in this action in the amount of $1,500.00 (One-Thousand Five-Hundred U.S. Dollars) for each and every unsolicited text message (as that term is used, defined and otherwise understood in the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") allegedly received by Plaintiff Brian Keim ("Keim") as alleged in his Class Action Complaint."

[9] There is another reason the offer is void – it seems to hinge upon someone determining whether the messages are even unlawful. First, the Offer is limited to "each and every unsolicited text message. . ." while Defendants remain steadfast in their position is that no "unsolicited" messages were ever sent. Moreover, the term "unsolicited text message" is not defined or otherwise understood in the Telephone Consumer Protection Act – only in subsequent FCC Rules and other court holdings - exactly which of those Defendants concede apply here is not known. Finally, Defendants' Offer is limited to those "unsolicited text messages" allegedly "received" by Keim "as alleged in his Class Action Complaint. Here, it is Defendant's position that Keim failed to alleged that he actually "received" any messages [DE-18, p. 1-2 Preliminary Statement], while a review of Plaintiff's Complaint clearly reveals that Keim began receiving unwanted commercial text messages, citing two (2) such messages as examples. [DE-1, ¶ 24] Defendants' Offer of Judgment is merely an exercise in vague and illusory language which, consistent with Defendants' underlying intent, offers the Plaintiff and putative class nothing.

*v. Va. Commonwealth Univ./Medical Coll. of Va*., 130 F.R.D. 60, 63 (E.D. Va. 1990) ("[C]ourts should be reluctant to allow the offeror's extrinsic evidence to affect th[e] construction [of the Rule 68 offer.]")). In sum, because the Rule 68 offeree does not have the luxury of refusing the offer to assure that he has not bound herself to any terms that may later become unfavorable, he may construe the offer's terms strictly, and ambiguities in the offer are to be resolved against the offeror. *See Bosley v. Mineral County Com'n*, 650 F. 3d 408 (4th Cir. 2011) (citations omitted).

The offers at issue do not provide Plaintiff with a valid enforceable judgment or determine the amount of damages to which Plaintiff would be entitled. Defendants' offers do not address an important term, namely the total amount of Plaintiff's damages. In sum, an offer which does not provide for essential terms into an enforceable order cannot moot a plaintiff's claim, such an offer would be illusory in nature. *See Simmons v. United Mortg. & Loan Inv.*, LLC, 634 F.3d 754, 764-66 (4th Cir. 2011) (holding that "the failure of the Defendants to make their attempted offer for full relief in the form of an offer of judgment prevented the mooting of the Plaintiffs' FLSA claims").

Defendants have not provided Plaintiff with a valid Offer of Judgment as contemplated by Rule 68, only an offer to *litigate* those claims in the future at the rate of $1,500 dollars per spam text message, which may or may not depend upon a subsequent determination whether the message was violative of the TCPA.  This is precisely the sort of scenario which the Eleventh Circuit sought to avoid as noted in *Zinni*. "A judgment is important to Appellants because the district court can enforce it…[i]f Appellees did not pay, Appellants faced the prospect of filing a breach of contract suit in state court with its attendant filing fees—**resulting in two lawsuits instead of just one**." *Zinni v. ER Solutions, Inc.*, 692 F.3d 1162, 1168 (11th Cir. 2012) (emphasis added).

IV. **FEDERAL COURTS DISFAVOR THE NOTION OF 'PICKING OFF' THE LEAD PLAINTIFF OF THE PUTATIVE CLASS ACTION WITH AN OFFER OF JUDGMENT UNDER RULE 68, SUCH ATTEMPTS ARE CONTRARY TO RULE 23.**

In *Capote v. United Collection Bureau, Inc.*, No. 09–61834, 2010 U.S. Dist. LEXIS 36948 (S.D.Fla. Mar. 11, 2010), Hon. James I. Cohn expressed his disfavor with the notion that the lead plaintiff in a class action lawsuit could be 'picked off' with an Offer of Judgment made pursuant to Rule 68 prior to the Court ruling on certification. In *Capote*, the Court unequivocally stated:

> It is also well-recognized that a Rule 68 offer of judgment to a plaintiff does not moot a case brought as a class action pursuant to Rule 23 prior to a determination on class certification. *See, e.g., Liles v. American Corrective Counseling Services, Inc.,* 201 F.R.D. 452 (S.D.Iowa July 2, 2001) (holding that defendant's offer of judgment of the maximum statutory relief available to named plaintiff under the FDCPA and the IDCPA did not render class complaint moot); *Silva v. National Telewire Corp.,* 2000 WL 1480269 (D.N.H. Sept. 22, 2000) (offer of settlement to named plaintiff while class certification motion was pending did not extinguish live controversy); *Littledove v. JBC & Assocs.,* 2000 WL 33141223 (E.D.Cal. Dec. 22, 2000) (Rule 68 offer did not moot FDCPA case filed as class action). In addressing such circumstances, the Supreme Court stated the following: Requiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement. *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) 2010 WL 966859.

*Id.* at *3-4. Moreover, Plaintiff maintains that this Court should follow the Fifth Circuit Court of Appeals wherein it pronounced that, "[t]he notion that a defendant may short-circuit a class action by paying off the class representatives either with their acquiescence or, as here, against their will, deserves short shrift." *Roper v. Consurve, Inc.,* 578 F.2d 1106, 1110 (5th Cir.1978); *see also, Zeigenfuse v. Apex Asset Management, LLC,* 239 F.R.D. 400, 402 (E.D.Pa. 2006) ("The

validity of a Rule 68 offer should not be determined by who wins the race to the courthouse—the filer of the motion for class certification or the filer of a Rule 68 offer."); *Stewart v. Cheek & Zeehandelar, LLP,* 252 F.R.D. 384, 386 (S.D.Ohio 2008) ("[I]f the putative class representatives' claims could be mooted by a settlement offer tendered before the certification motion is filed—each side will endeavor to beat the other to the punch. Plaintiffs will be forced to swiftly file their certification motions, possibly before completing class-related discovery, in order to maintain their claims.... Defendants, on the other hand, will race to make their settlement offers before plaintiffs file their certification."); *Schaake v. Risk Management Alternatives, Inc.,* 203 F.R.D. 108, 112 (S.D.N.Y.2001) ("Taken to its absurd logical conclusion, the policy urged by defendant would clearly hamper the sound administration of justice, by forcing a plaintiff to make a class certification motion before the record for such motion is complete—indeed before an Answer is filed—would result in sweeping changes to accepted norms of civil litigation in the Federal Courts."); *Hrivnak v. NCO Portfolio Management, Inc.,* No. 1:10–CV–646, 2010 WL 5392709, at *8 (N.D.Ohio Dec. 22, 2010) (a rule that does not depend on the precise timing of the class certification motion vis-à-vis the offer of judgment "discourages premature motion practice and allows the court to set reasonable time frames for the filing of motions for class certification without fear that it has provided a substantial litigation advantage to the defendant by having done so").

Defendants' repeated attempts to avoid litigating this matter by "picking off" the lead plaintiff represent an exercise in everything this Court and others find contrary to the administration of justice. Plaintiff respectfully submits that the Court should follow its own well-reasoned prior holdings and those of other courts by refusing to recognize Defendants' defective offer of judgment, and in doing so, send a message to this and future Defendants that such

gamesmanship will not be tolerated in this Court.

### V. DEFENDANTS' OFFER OF JUDGMENT CANNOT MOOT PLAINTIFF'S CLASS ACTION COMPLAINT WHEREIN PLAINTIFF HAS MOVED FOR CLASS CERTIFICATION WITHIN FOURTEEN (14) DAYS.

Defendants rely upon *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896–97 (7th Cir. 2011) for the proposition that "Keim no longer has a personal stake in the TCPA Lawsuit…" [DE-18; pg. 13]. It should be noted that the approach in *Damasco* is only followed in the Seventh Circuit and has been specifically rejected in four other Circuit Courts.[10] *See Pitts v. Terrible Herbst, Inc.,* 653 F.3d 1081, 1091–92 (9th Cir. 2011); *Lucero v. Bureau of Collection Recovery, Inc.,* 639 F.3d 1239, 1249–50 (10th Cir. 2011); *Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 920–21 (5th Cir. 2008); *Weiss v. Regal Collections,* 385 F.3d 337, 348 (3d Cir. 2004). Furthermore, even district courts within the Seventh Circuit have allowed plaintiffs to avoid mootness by seeking class certification within that rule's timeframe for accepting or rejecting an offer. *See, e.g., Wilder Chiropractic, Inc. v. Pizza Hut of S. Wis., Inc.,* 754 F.Supp.2d 1009, 1019 (W.D.Wis.2010) (also holding that "[i]t would make little sense to fashion a rule that would allow the fate of a case to be resolved by a race to the courthouse, particularly when the deadline for filing a motion for class certification is still months away.... Such an arbitrary result would serve no purpose other than providing defendants a procedural advantage or requiring plaintiffs in every class action to accompany their complaint with a motion for class certification.").

---

[10] In arriving at its decision, the Court in *Damasco* relied upon at least two premises not recognized by this Court. First, that Clearwire's offer was "definite and certain" under *Illinois law.* Defendants have given no indication what constitutes "definite and certain" under Illinois law, nor have they suggested that any corollary exists between Illinois law and Florida law. Notably, with respect to the issue of "definite and certain," the text of the *Damaso* settlement letter (Exhibit #) materially varies from the language in Defendants' much-more-limited-in-scope Offer of Judgment. Specifically, *Damasco* offers to pay for "**each and every text message which Plaintiff received, which was sent by or on behalf of Defendants during the Claim Period**," a far cry from the restrictive, vague and illusory language contained in Defendants' Offer of Judgment [DE-41-1]. (See also, FN10, *supra*). Moreover, Clearwire tendered only a settlement letter, not an Offer of Judgment, the validity of which has been soundly rejected in this Circuit.

In the present matter, although Plaintiff maintains that he was not required to do so due the defects inherent within Defendants' Offer of Judgment as previously explained herein, Plaintiff did in fact file for certification prior to the expiration of the fourteen day timeline. Defendants' "offer" was made on September 21, 2012; Plaintiff subsequently moved for class certification eleven days later on October 2, 2012. Therefore, even if Defendants' Offer of Judgment is held to offer all the relief the Plaintiff and putative class could possibly receive (which it does not), Plaintiff's timely motion for class certification renders the Offer meaningless.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that Defendants' Motion to Dismiss for Lack of Federal Subject Matter Jurisdiction [DE-18; DE-40] should be denied.

Respectfully submitted,

**SCOTT D. OWENS, ESQ.**
*Attorney for Plaintiff*
664 E. Hallandale Beach Blvd.
Hallandale, Florida 33009
(954) 589-0588 Phone
(954) 337-0666 Fax
Florida Bar No. 0597651
scott@scottdowens.com

By: s/ *Scott D. Owens*
Scott D. Owens, Esq.
Florida Bar No. 0597651

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on 21st day of January 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this 21st day of January 2013 via U.S. mail and/or some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**SCOTT D. OWENS, ESQ.**
*Attorney for Plaintiff*
664 E. Hallandale Beach Blvd.
Hallandale, Florida 33009
(954) 589-0588 Phone
(954) 337-0666 Fax
Florida Bar No. 0597651
scott@scottdowens.com

By: s/ *Scott D. Owens*
Scott D. Owens, Esq.
Florida Bar No. 0597651