UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80577-CIV-MARRA

BRIAN KEIM, an individual, on behalf of himself
and all others similarly situated,

     Plaintiff,

vs.

ADF MIDATLANTIC, LLC, a foreign
limited liability company, et al.,

     Defendants,

_____/

## OPINION AND ORDER

This matter is before the Court on Defendants ADF MidAtlantic, LLC, ADF Pizza I, LLC, and ADF PA, LLC's (collectively, the "Moving Defendants") Motion to Dismiss for Lack of Personal Jurisdiction (DE 100). For the following reasons, the motion is denied.

### I. Background

Defendant Pizza Hut, Inc. ("Pizza Hut"), which has not challenged the Court's personal jurisdiction, is a restaurant chain and international franchise. (DE 97 ¶ 17.) Defendant American Huts, Inc., which also has not challenged personal jurisdiction, and the three Moving Defendants own and operate Pizza Hut franchises in various states and hold themselves out to the public as one entity called "ADF Companies." (DE 97 ¶¶ 7–11.) Of the Defendants that comprise the ADF Companies, only American Huts, Inc. owns and operates Pizza Hut franchises in Florida (in addition to other states). (DE 97 ¶¶ 7–10.) The Moving Defendants own and operate Pizza Hut franchises and other restaurants only in states other than Florida. (DE 97 ¶¶ 7, 9–10.) The ADF Companies jointly

market their stores. (DE 97 ¶ 14.) On their jointly maintained website to market their stores, the ADF Companies list at least 24 ADF Company Pizza Hut stores in Florida, which presumably all belong to Defendant American Huts, Inc. (DE 97 ¶ 12.) The ADF Companies also employ a single marketing director for all of their stores.  (DE 97 ¶ 14).

In 2009, the ADF Companies hired text-message marketing company Songwhale, LLC ("Songwhale") to promote the Pizza Hut brand. (DE 97 ¶¶ 18, 31.) Songwhale implemented a marketing program that encouraged people to text their friends' cell phone numbers to Songwhale in exchange for Pizza Hut coupons. (DE 97 ¶ 32.) Songwhale's software program automatically stored these phone numbers in its text messaging database. (DE 97 ¶ 33.) Songwhale's "dialing system" then, in many instances months later, automatically sent text messages with Pizza Hut advertisements en masse to the numbers stored in its database. (DE 97 ¶ 35.)

Later, the ADF Companies hired text-message marketing company Cellit, LLC ("Cellit") to launch a second national text-message advertising campaign. (DE 97 ¶¶ 19, 42.) Cellit sent text messages with Pizza Hut advertisements on behalf of both Pizza Hut and the ADF Companies to all the cell phone numbers that Songwhale previously collected. (DE 97 ¶ 42.) The purpose of these text messages was to promote the Pizza Hut brand across the United States. (DE 97 ¶ 42.)

Plaintiff Brian Keim, a Florida resident, began receiving unwanted text messages containing Pizza Hut advertisements from Songwhale's and Cellit's short codes[1] in February 2011. (DE 97 ¶¶ 6, 47.) So, he filed a class-action lawsuit against Pizza Hut and the ADF Companies alleging

---

[1] Plaintiff explains, "Most commercial SMS messages are sent from 'short codes' (also known as 'short numbers'), which are special cellular telephone exchanges, typically only five or six digit extensions, that can be used to address SMS messages to mobile phones." (DE 1 ¶ 24.) According to Plaintiff, a short code "conclusively reveals the originator of the SMS message."(DE 1 ¶¶25.)

violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (2012). The Moving Defendants moved to dismiss for lack of personal jurisdiction, and the Court allowed for an extended jurisdictional discovery period. The motion is now ripe for review.

## II. Legal Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the initial burden of "alleg[ing] sufficient facts to make out a prima facie case of jurisdiction" over the nonresident defendant. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (per curiam). If the plaintiff sufficiently alleges a prima facie case of jurisdiction, the defendant must raise "through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction." *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (per curiam) (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996)). "If the defendant does so, 'the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'" *Id.* (quoting *Sculptchair*, 94 F.3d at 627). The court must accept the facts alleged in the complaint as true to the extent they are uncontroverted by the defendant's affidavits. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Where the plaintiff's evidence and defendant's evidence conflict, all reasonable inferences must be construed in favor of the plaintiff. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

## III. Discussion

Because Keim's claim is based on the TCPA, which is silent regarding service of process, state law informs whether the Court has personal jurisdiction over the Moving Defendants. *Sculptchair*, 94 F.3d at 626–27; *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1521 (11th Cir. 1985). The Court engages in a two-part inquiry to determine whether it has personal

3

jurisdiction over a nonresident defendant. First, it determines whether the forum state's long-arm statute authorizes an exercise of personal jurisdiction. *Robinson v. Giarmarco & Bill*, *P.C.*, 74 F.3d 253, 256 (11th Cir. 1996). Second, it determines whether that exercise comports with the Due Process Clause of the Fourteenth Amendment. *Id.* Both prongs must be satisfied for the court to have personal jurisdiction over the defendant. *Id.*

### A. Long-Arm Statute

Florida's long-arm statute authorizes an exercise of personal jurisdiction where a claim arises from a defendant "[c]ommitting a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). TCPA violations are tortious acts. *Bagg v. UShealth Grp., Inc.*, No. 615CV1666ORL37GJK, 2016 WL 1588666, at *3 (M.D. Fla. Apr. 20, 2016); *US Fax Law Ctr., Inc. v. iHire, Inc.*, 362 F. Supp. 2d 1248, 1252 (D. Colo. 2005); *Weber v. U.S. Sterling Sec., Inc.*, 924 A.2d 816, 825 (Conn. 2007). And a tortfeasor's "physical presence in Florida is not required to obtain personal jurisdiction" under this provision. *Sierra Equity Grp., Inc. v. White Oak Equity Partners*, LLC, 650 F. Supp. 2d 1213, 1222 (S.D. Fla. 2009); *see also Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). Instead, committing a tortious act within Florida "can occur by making telephonic, electronic, or written communications into this State, provided that the tort alleged arises from such communications." *Wendt*, 822 So. 2d at 1253; *see also Acquadro v. Bergeron*, 851 So. 2d 665, 671 (Fla. 2003). Thus, Florida's long-arm statute is satisfied as to a TCPA claim that arises from a non-resident defendant making a telephonic communication into Florida.

Here, the alleged tort arises from the Moving Defendants allegedly sending text messages

4

into Florida.[2] In a prior order, the Court denied Defendants' motion to dismiss for failure to state a claim, (DE 114), and thus resolved the "threshold" questions of "whether the allegations of the complaint state a cause of action" and "whether the alleged cause of action arises from the[] communications" at issue. *Wendt*, 822 So. 2d at 1260. The Court reaffirms its decision that Keim adequately states a TCPA claim based on the text messages he received in Florida as a result of Defendants' text-message marketing campaigns.

The Court rejects the Moving Defendants' argument that the text messages at issue cannot give rise to personal jurisdiction under the long-arm statute. In a footnote, the Moving Defendants argue that the text-messages cannot serve as a basis for personal jurisdiction "because they do not own or operate any Pizza Hut locations in Florida" and it would be "illogical to think that non-Florida Defendants would have had anything to do with text messages sent to Florida residents when they would have nothing to gain from such activities." (DE 100 at 10 n.4.) This argument conflates the "tortious acts" provision of the long-arm statute with another, independent basis for jurisdiction—"Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Fla. Stat. § 48.193(1)(a)(1). Whether the Moving Defendants operate restaurants in Florida may be relevant to this separate provision of the long-arm statute, but it is irrelevant to whether the alleged tort arises from a telephonic communication they made into Florida. Similarly, whether the Moving Defendants benefitted from

---

[2] Technically, Keim only alleges that he is a Florida resident and "is the subscriber to the cellular telephone which received unwanted text message spam," but fails to allege his location at the time he received the text messages. (DE 97 ¶ 6.) Nevertheless, the Moving Defendants do not dispute that Keim received the text messages in Florida. (DE 100 at 13) (arguing that "Keim's allegations relating to the text messages he supposedly received by fortuity *in Florida* cannot serve as the basis for jurisdiction") (emphasis added). As the Moving Defendants themselves infer from Keim's allegations that Keim received the text messages in Florida, the Court will not disturb that inference.

the text messages is irrelevant to the inquiry.[3]

Contrary to the Moving Defendants' argument, the text messages do "implicate" them because the text messages were allegedly sent on their behalf. As the Court explained in its prior order, the TCPA incorporates general common law principles of agency and vicarious liability, and a principal may be held liable under the TCPA for the acts of an agent. (DE 114 at 15–16) (citing *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (Tcpa) Rules*, 28 F.C.C. Rcd. 6574, 6574, 6586–87 (2013)).[4] Keim alleges that the separate ADF Companies jointly hired Songwhale and Cellit to promote the Pizza Hut brand, and to do so Songwhale and Cellit implemented the marketing programs that resulted in the allegedly offending text messages. Thus, Keim sufficiently pleads that Songwhale and Cellit acted as each ADF Company's agent, and accordingly each ADF Company—including each Moving Defendant—may be vicariously liable for Songwhale's and Cellit's alleged TCPA violations.

Because Keim alleged that Songwhale and Cellit acted as the Moving Defendants' agents

---

[3] In any event, while sending a text message advertisement into Florida might not be likely to lead the recipient to go to a Pizza Hut restaurant outside Florida, it is unfair to say the Moving Defendants derived no benefit from the text messages at issue. It is reasonable to infer from the complaint's allegations that the Moving Defendants benefitted from pooling their resources together with an owner of Florida Pizza Hut franchises and jointly engaging in a national text-messaging campaign that included sending text messages to Florida phone numbers as well as phone numbers in states where they own Pizza Hut restaurants. Indeed, one could reasonably argue that it would be "illogical" for the Moving Defendants to engage in this joint marketing campaign if they really did "have nothing to gain" from it.

[4] The Court must accept interpretations of the TCPA in FCC orders. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119–21 (11th Cir. 2014). As the Eleventh Circuit explained in *Mais*, the Communications Act of 1934 and the Hobbs Act work together to divest district courts of jurisdiction to question interpretations of the TCPA in FCC orders. *Id.*

when they sent the text messages at issue, those text messages are attributed to the Moving Defendants as their own acts for the purpose of determining personal jurisdiction. Admittedly, in *Wendt*, the Florida Supreme Court expressly did not answer whether personal jurisdiction under the long-arm statute may be based on the allegedly tortious acts of a defendant's agent. 822 So. 2d at 1260 n.8. Nevertheless, it is well-established that general agency principles apply when determining personal jurisdiction. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002); *Taylor v. Phelan*, 912 F.2d 429, 433 (10th Cir. 1990) (per curiam). And Florida's long-arm statute expressly incorporates this well-established principle by stating that the acts enumerated in the statute, including committing a tortious act within the state, may give rise to personal jurisdiction when done "personally *or through an agent*." Fla. Stat. § 48.193(1)(a) (emphasis added); *see also Meir*, 288 F.3d at 1270 & n.7; *Wilcox v. Stout*, 637 So. 2d 335, 337 (Fla. Dist. Ct. App. 1994).

As Keim alleges in his complaint that the Moving Defendants' agents sent the text messages that give rise to his TCPA claim, he establishes a prima facie case for personal jurisdiction under the long-arm statute. None of the affidavits or other exhibits the Moving Defendants submitted rebuts these allegations, so the long-arm statute is satisfied based on the allegations of the complaint alone. *See Madara*, 916 F.2d at 1514 ("The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits.")[5]

---

[5] Because the tortious act provision of the long-arm statute is satisfied by the Moving Defendants allegedly committing a tortious act within the state through an agent, it is unnecessary to address the parties' dispute as to whether the Moving Defendants and American Huts, Inc. were engaged in a joint venture under Florida law. *See Cross Match Techs., Inc. v. Crossresolve, LLC*, No. 15-81310-CIV-MARRA, 2016 WL 3216541, at *4 n.4 (S.D. Fla. June 10, 2016) ("Cross Match must only satisfy the long-arm statute once; it need not do so on multiple grounds.").

**B. Due Process**

The Court next turns to the due process inquiry. The Eleventh Circuit has set forth a three-part test to determine whether an exercise of specific personal jurisdiction comports with due process.[6] *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). Under this test, the Court must examine

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Id.* The first inquiry focuses on whether there is a "direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355–56 (citation omitted). The second inquiry assesses whether the defendant's contacts with the state "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Id.* at 1357. The second inquiry may also be satisfied by an alternative "effects test." *Id.* at 1356. The third test considers "(1) 'the burden on the defendant'; (2) 'the forum's interest in adjudicating the dispute'; (3) 'the plaintiff's interest in obtaining convenient and effective relief'; and (4) 'the judicial system's interest in resolving the dispute.'" *Id.* at 1358 (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008)).

The first inquiry is clearly satisfied. As discussed *supra*, Keim's TCPA claims directly arise from text messages that the Moving Defendants sent into this forum through their agents.

---

[6] Keim does not argue that the Moving Defendants are subject to general personal jurisdiction.

8

Accordingly, there is a direct causal relationship between the Moving Defendants, the forum, and the litigation.

The second inquiry is at least satisfied under the "effects test" first articulated in *Calder v. Jones*, 465 U.S. 783, 789 (1984). Under this test, "a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state," so long as the tort "(1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Louis Vuitton*, 736 F.3d at 1356 (brackets and citation omitted).

Based on the allegations in the complaint, the ADF Companies jointly hired Songwhale and Cellit to send text message advertisements that promoted the Pizza Hut brand, rather any specific Pizza Hut restaurant, in a manner that was not limited to any ADF Company's specific geographic region. (DE 97 ¶¶ 32, 39, 40, 42, 47.) This necessarily included sending text messages to Florida cell phones, including Keim's. Indeed, it is reasonable to infer that Florida cell phones were expressly contemplated as one of the ADF Companies owns multiple Pizza Hut restaurants in Florida. While Songwhale's sending of text messages was done automatically by a dialing system, it is sufficient that the system collected Florida phone numbers and sent text messages to those numbers. Furthermore, the Cellit campaign was even more purposeful because the ADF Companies, including the Moving Defendants, provided all the phone numbers that Songwhale collected, including Florida phone numbers, to Cellit for its text-messaging campaign. Finally, it is reasonable to anticipate that harm from a TCPA violation arising from a call or text message to a Florida phone number would be suffered in Florida. Indeed, multiple courts have found calls or text messages to a phone number affiliated with a particular state that violate the TCPA sufficient to satisfy the effects test for a court

of that state to exercise personal jurisdiction over the defendant. *See Ott v. Mortgage Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1057 (D. Or. 2014); *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at * 3–4 (N.D. Cal. July 14, 2014) (collecting cases).

   Arguing that Keim's receipt of text message in Florida is "random" and "fortuitous," the Moving Defendants raise the hypothetical of Keim, a Florida resident, traveling to California, receiving a text message there, and then attempting to subject the Moving Defendants to the jurisdiction of a California court. The Court need not address that hypothetical, however, because those are not the facts of this case. The Moving Defendants should have reasonably anticipated that sending the allegedly TCPA-violating text messages to a Florida resident's Florida cell phone would cause harm in Florida. *See Ott*, 65 F. Supp. 3d at 1057 ("The individual defendants respond first that, in the era of cellular telephones, not every telephone number with an Oregon area code belongs to a person located in Oregon. Although true, many telephone numbers with an Oregon area code in fact are located in Oregon, such that the individual defendants knew or should have known that the telemarketing scheme was aimed at persons in Oregon."); *Luna*, 2014 WL 3421515, at *3 (rejecting argument based on "inherent mobility of cell phones" because "express aiming" requirement was met based on fact that the alleged harm was "likely" to be suffered in California by sending text messages to cell phones with California area codes). And here the alleged harm actually occurred in Florida. The Court thus expresses no opinion on whether jurisdiction would be proper in the Moving Defendants' hypothetical.

   Finally, the exercise of personal jurisdiction over the Moving Defendants comports with traditional notions of fair play and substantial justice. The Moving Defendants's argument that they "would be burdened if they were made to travel to Florida to defend this action," (DE 100 at 16), is

conclusory. And, in any event, "modern methods of transportation and communication reduce this burden significantly." *Robinson*, 74 F.3d at 259. The state of Florida has an interest in adjudicating a dispute regarding an intentional tort harming one of its own residents. *See Licciardello*, 544 F.3d at 1288. Also, Keim's interest in obtaining convenient and effective relief also favors an exercise of jurisdiction. The Court already has undisputed jurisdiction over two of the defendants, so a declination of jurisdiction over the Moving Defendants would require Keim to litigate the same claim in multiple forums. For the same reason, the interstate judicial system's interest in obtaining the most efficient resolution of controversies weighs in favor of exercising jurisdiction, and the Moving Defendants concede this factor supports an exercise of jurisdiction.

Again, none of the affidavits or other exhibits the Moving Defendants submitted rebuts the allegations supporting an exercise of jurisdiction, so the due process inquiry is also satisfied based on the allegations of the complaint alone.

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants ADF MidAtlantic, LLC, ADF Pizza I, LLC, and ADF PA, LLC's Motion to Dismiss for Lack of Personal Jurisdiction (DE 100) is **DENIED**.

**DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 10th day of August, 2016.

KENNETH A. MARRA
United States District Judge

11