**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| BRIAN KEIM, an individual, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No.  9:12-cv-80577 |
| v. | ) ) | Hon. Judge Kenneth A. Marra |
| ADF MIDATLANTIC, LLC, a foreign limited liability company, AMERICAN HUTS INC., a foreign corporation, ADF PIZZA I, LLC, a foreign limited liability company, ADF PA, LLC, a foreign limited liability company, and PIZZA HUT, INC., a foreign corporation, | ) ) ) ) ) ) ) ) ) ) ) | Magistrate Judge William Matthewman |
| Defendants. | ) ) | |

**PLAINTIFF'S MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION**

Pursuant to Fed. R. Civ. P. 23(b), Plaintiff Brian Keim, on behalf of himself and putative class, hereby moves for certification of the class with respect to the claims against Defendants ADF Midatlantic, LLC, American Huts, Inc., ADF Pizza I, LLC, ADF PA, LLC and Pizza Hut, Inc. pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227. A memorandum of law supporting Plaintiff's motion is incorporated herein.

Plainitff respectfully moves this Court to certify the class, appoint Plaintiff to be class representative, and appoint Plaintiff's counsel to be consel for the class.

Scott D. Owens
Patrick C. Crotty
SCOTT D. OWENS, PA.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Phone: 954-589-0588
Fax: 954-337-0666
Email: Scott@ScottDOwens.com

Amy L. Wells (*pro hac vice*)
KEOGH LAW, LTD
55 W. Monroe St, Suite 3390
Chicago, IL 60603
Phone: 312-726-1902
Fax: 312-726-1093
Email: AWells@KeoghLaw.com

## TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................................1

II.     FACTUAL BACKGROUND ....................................................................................1

III.    THE PROPOSED CLASS DEFINITION ...............................................................4

IV.     THE TCPA...............................................................................................................5

V.      CLASS CERTIFICATION IS COMMON IN TCPA CASES ...............................6

VI.     RULE 23(a) IS SATISFIED ....................................................................................7

        A.      The Class is Sufficiently Numerous ............................................................7

        B.      The Class is Ascertainable ..........................................................................8

        C.      Commonality is Satisfied ...........................................................................10

        D.      Typicality is Satisfied ................................................................................11

        E.      Plaintiff and Plaintiff's Counsel are Adequate ........................................12

VII.    RULE 23(b)(3) IS SATISFIED ..............................................................................12

        A.      Common Questions Predominate ..............................................................13

                1.      A Prior Express Consent Defense is Inapt ...................................14

                        a.      There is No Evidence of Intermediary Consent............................14

                        b.      Participation in a "Family Plan" Does Not Equal Consent...........15

                2.      Pizza Hut's Liability for its Vendors' Actions is a Class Issue .................17

                3.      Pizza Hut, Inc.'s Liability for its Franchisees' Actions is a Class
                        Issue                           17

        B.      The Class Action Mechanism is Superior to Other Methods ...............................18

VIII.   CONCLUSION........................................................................................................19

# TABLE OF AUTHORITIES

<u>Cases</u>

*Abdeljalil v. General Electric Capital Corp.*
    2015 U.S. Dist. LEXIS 43288 (S.D. Cal. 2015) ............................................................. 7

*Agne v. Papa John's Intern., Inc.*
    286 F.R.D. 559 (W.D. Wash. 2012) ...................................................................... 7, 10, 17

*Amer. Copper & Brass v. Lake City Indust. Prod.*
    2014 U.S. App. LEXIS 12921 (6th Cir. 2014) ............................................................. 8

*Ault v. Walt Disney World Co.*
    692 F.3d 1212 (11th Cir. 2012) .................................................................................... 11

*Balbarin v. North Star Capital Acquisition, LLC*
    2011 U.S. Dist. LEXIS 686 (N.D. Ill. 2011) ............................................................... 7

*Bee, Denning, Inc. v. Capital Alliance Group*
    301 F.R.D. 614 (S.D. Cal. 2015) ............................................................................. 7, 9

*Bennett v. Boyd Biloxi, LLC*
    2016 U.S. Dist. LEXIS 62217 (S.D. Ala. 2016) ......................................................... 11

*Birchmeier v. Caribbean Cruise Line, Inc.*
    302 F.R.D. 240 (N.D. Ill. 2014) .............................................................................. 7, 9

*Booth v. Appstack, Inc.*
    2015 U.S. Dist. LEXIS 40779 (W.D. Wash. 2015) .................................................. 7, 8, 9

*Bray v. PNC Bank, N.A.*
    2016 U.S. Dist. LEXIS 131618 (M.D. Fla. 2016) .................................................. 13, 14

*Bridge v. Phoenix Bond & Indem. Co.*
    553 U.S. 639 (2008) ..................................................................................................... 13

*Briseno v. ConAgra Foods, Inc.*
    2017 U.S. App. LEXIS 20 (9th Cir. Jan. 3, 2017) ........................................................ 8

*Buslepp v. B&B Entm't, LLC*
    2012 U.S. Dist. LEXIS 144433 (S.D. Fla. 2012) ........................................................ 14

*Cain v. Shell Oil Co.*
    994 F. Supp. 2d 1251 (N.D. Fla. 2014) ....................................................................... 17

*Chapman v. Wagener*
    2014 U.S. Dist. LEXIS 16866 (N.D. Ill. 2014) ............................................................ 7

*Cheney v. Cyberguard Corp.*
    213 F.R.D. 484 (S.D. Fla. 2003) ................................................................................. 12

*C-Mart, Inc. v. Metro. Life Ins. Co.*
    299 F.R.D. 679 (S.D. Fla. 2014) ..................................................................... 6, 11, 19

*Colomar v. Mercy Hosp., Inc.*
    242 F.R.D. 671 (S.D. Fla. 2007) ................................................................................. 11

*Cox v. Am. Cast Iron Pipe Co.*
    784 F.2d 1546 (11th Cir. 1986) ..................................................................................... 7

*Cty. of Monroe v. Priceline.com, Inc.*
    265 F.R.D. 659 (S.D. Fla. 2010) ................................................................................. 12

*Dr. Robert L. Meinders D.C., Ltd. v. Emery Wilson Corp.*
    2016 U.S. Dist. LEXIS 80570 (S.D. Ill. June 21, 2016) ............................................... 7

*Fabricant v. Sears Roebuck, et al.*
    202 F.R.D. 310 (S.D. Fla. 2001) ............................................................................. 7, 11

*G.M. Sign, Inc. v. Franklin Bank, S.S.B.*
  2008 U.S. Dist. LEXIS 79827 (N.D. Ill. 2008) ................................................ 9
*Gager v. Dell Fin. Servs., LLC*
  727 F.3d 265 (3d Cir. 2013) ............................................................................... 6
*Gomez v. Campbell-Ewald Co.*
  768 F.3d 871 (9th Cir. 2014) ............................................................................ 17
*Hicks v. Client Servs., Inc.*
  2008 U.S. Dist. LEXIS 101129 (S.D. Fla. Dec. 11, 2008) ................................ 6
*Hitchman v. Nat'l Enter. Sys.*
  2014 U.S. Dist. LEXIS 30623 (S.D. Fla. Mar. 10, 2014) ................................. 6
*Holmes v. Continental Can Co.*
  706 F.2d 1144 (11th Cir. 1983) ....................................................................... 18
*Ikuseghan v. Dish Network L.L.C.*
  311 F.R.D. 384 (M.D.N.C. 2015) ..................................................................... 7
*Ikuseghan v. Multicare Health Sys.*
  2015 U.S. Dist. LEXIS 99175 (W.D. Wash. 2015) .......................................... 7
*In re Checking Account Overdraft Litig.*
  286 F.R.D. 645 (S.D. Fla. 2012) ................................................................ 8, 18
*In re GroupMe, Inc.*
  29 FCC Rcd 3442 (F.C.C. 2014) ..................................................................... 14
*Ira Holtzman, C.P.A. & Assoc., Ltd. v. Turza*
  728 F.3d 682 (7th Cir. 2013) ............................................................................. 6
*Johnson v. Navient Sols., Inc.*
  2016 U.S. Dist. LEXIS 102656 (S.D. Ind. 2016) ............................................. 6
*Johnson v. Yahoo!, Inc.*
  2016 U.S. Dist. LEXIS 256 (N.D. Ill. 2016) ........................................... 6, 9, 14
*Juris v. Inamed Corp.*
  685 F.3d 1294 (11th Cir. 2012) ......................................................................... 8
*Karen S. Little, L.L.C. v. Drury Inns, Inc.*
  306 S.W.3d 577 (Mo. Ct. App. 2010) ............................................................... 6
*Kennedy v. Tallant*
  710 F.2d 711 (11th Cir. 1983) ......................................................................... 18
*Kilgo v. Bowman Transp., Inc.*
  789 F.2d 859 (11th Cir. 1986) ........................................................................... 7
*Kirkpatrick v. J.C. Bradford & Co.*
  827 F.2d 718 (11th Cir. 1987) ................................................................... 11, 12
*Klay v. Humana, Inc.*
  382 F.3d 1241 (11th Cir. 2004) ................................................................. 13, 18
*Knutson v. Schwan's Home Serv.*
  2013 U.S. Dist. LEXIS 127032 (S.D. Cal. 2013) ............................................. 7
*Kornberg v. Carnival Cruise Lines, Inc.*
  741 F.2d 1332 (11th Cir. 1984) ....................................................................... 11
*Kristensen v. Credit Payment Services*
  12.Supp.3d 1292 (D. Nev. 2014) ................................................................... 7, 9
*Labrier v. State Farm Fire & Cas. Co.*
  315 F.R.D. 503 (W.D. Mo. 2016) ...................................................................... 7

*Lafollette v. Liberty Mut. Fire Ins. Co.*
    2016 U.S. Dist. LEXIS 99980 (W.D. Mo. Aug. 1, 2016)................................................. 6
*Lardner v. Diversified Consultants Inc.*
    17 F. Supp. 3d 1215 (S.D. Fla. 2014) ........................................................................... 14
*Lee v. Stonebridge Life Ins. Co.*
    289 F.R.D. 292 (N.D. Cal. 2013) .................................................................................... 7
*Legg v. Voice Media Grp., Inc.*
    20 F. Supp. 3d 1370 (S.D. Fla. 2014) ........................................................................... 17
*Mais v. Gulf Coast Collection Bureau, Inc.*
    768 F.3d 1110 (11th Cir. 2014) ..................................................................................... 14
*Mais v. Gulf Coast Collection Bureau, Inc.*
    944 F. Supp. 2d 1226 (S.D. Fla. 2013) ......................................................................... 14
*Manno v. Healthcare Revenue Recovery Grp. LLC*
    289 F.R.D. 674 (S.D. Fla. 2013)......................................................................... 6, 11, 13, 15
*McCaskill v. Navient Sols., Inc.*
    178 F. Supp. 3d 1281 (M.D. Fla. 2016)................................................................... 15, 16
*Meyer v. Portfolio Recovery Assocs., LLC*
    707 F.3d 1036 (9th Cir. 2012) ............................................................................... 6, 7, 15
*Mims v. Arrow Fin. Servs., LLC*
    132 S.Ct. 740 (2012)......................................................................................................... 5
*Mitchem v. Illinois Collection Service*
     2011 U.S. Dist. LEXIS 714 (N.D. Ill. 2011)................................................................. 7
*Mullins v. Direct Digital, LLC*
    795 F.3d 654 (7th Cir. 2015) ........................................................................................... 8
*Murphy v. DCI Biologicals Orlando, LLC*
    797 F.3d 1302 (11th Cir. 2015) ................................................................................. 6, 14
*Murray v. Auslander*
    244 F.3d 807 (11th Cir. 2001) ...................................................................................... 10
*Newhart v. Quicken Loans Inc.*
    2016 U.S. Dist. LEXIS 168721 (S.D. Fla. Oct. 12, 2016).............................................. 15
*Osorio v. State Farm Bank, F.S.B.*
    746 F.3d 1242 (11th Cir. 2014) .................................................................................... 16
*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*
    311 F.R.D. 688 (S.D. Fla. 2015)............................................................................... passim
*Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*
    2016 U.S. Dist. LEXIS 132037 (N.D. Ill. Sep. 27, 2016) .............................................. 6
*Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*
    2014 U.S. Dist. LEXIS 177222 (S.D. Fla. Dec. 23, 2014) ......................................... 6, 8
*Potts v. Budget Rent a Car Sys.*
    19 Fla. L. Weekly Fed. D 551 (U.S. N.D. Fla. 2005) ..................................................... 17
*Prado-Steiman v. Bush*
    221 F.3d 1266 (11th Cir. 2000) .................................................................................... 11
*Rikos v. Procter & Gamble Co.*
    799 F.3d 497 (6th Cir. 2015) ........................................................................................... 8
*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*
    821 F.3d 992 (8th Cir. 2016) ...................................................................................... 6, 8

*Satterfield v. Simon & Schuster*
    569 F.3d 946 (9th Cir. 2009) ........................................ 14
*Seff v. Broward Cty.*
    2010 U.S. Dist. LEXIS 141871 (S.D. Fla. Dec. 6, 2010) ................. 12
*Stemple v. QC Holdings, Inc.*
    2014 U.S. Dist. LEXIS 125313 (S.D. Cal. 2014) ...................... 7, 9
*Stern v. DoCircle, Inc.*
    2014 U.S. Dist. LEXIS 17949 (C.D. Cal. 2014)........................ 7
*Stewart v. Winter*
    669 F.2d 328 (5th Cir. 1982) ....................................... 10
*Villazon v. Prudential Health Care Plan*
    843 So. 2d 842 (Fla. 2003)......................................... 17
*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011)............................................... 10
*Williams v. Mohawk Indus., Inc.*
    568 F.3d 1350 (11th Cir. 2009) .............................. 10, 12, 13

Statutes
47 U.S.C. § 227 ............................................... 1, 5, 11, 18

Other Authorities
Fed. R. Civ. P. 23 ............................................... passim
*In re Rules and Regulations Implementing the TCPA of 1991*
    30 F.C.C. Rcd. 7961 (July 10, 2015) ............................ 5, 14, 16
*In re Rules Implementing the TCPA of 1991*
    23 FCC Rcd. 559 (F.C.C. 2007) ..................................... 15
*In re Rules and Regulations Implementing the TCPA of 1991*
    10 FCC Rcd. 12391 (1995).......................................... 17
*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the*
    *States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the*
    *Tel. Consumer Prot. Act (Tcpa) Rules*
    28 F.C.C. Rcd. 6574 (2013) ........................................ 17
Newberg on Class Actions § 7.22 (4th ed. 2002) ........................ 7

<u>**MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION**</u>

Plaintiff, Brian Keim, moves the Court to certify a class of persons to whom Defendants, ADF Midatlantic, LLC, American Huts, Inc., ADF Pizza I, LLC, ADF PA, LLC (collectively "Franchise Defendants") and Pizza Hut, Inc. (all defendants, collectively, "Pizza Hut") sent unsolicited marketing text messages advertising their food products ("PH Texts"). Pizza Hut's texting records identify the class of individuals whom Pizza Hut solicited by sending them the same PH Texts that Brian Keim received.

## I.      INTRODUCTION

This is a classic example of an action ideal for class certification. The proposed class has thousands of people with the same claim for statutory damages, and each person's claim raises the same material issues, and thus  easily meets the threshold requirements of Fed. R. Civ. P. 23. Pizza Hut violated the Telephone Consumer Protection Act ("TCPA") by (1) using an automatic telephone dialing system ("ATDS") to (2) send text messages to thousands of class members' cellular phone numbers. 47 U.S.C. § 227(b)(1)(A)(iii).  These are the only elements of a TCPA claim, and they are well established through common evidence.

While the TCPA provides an affirmative defense for telemarketing calls made with the "prior express consent" of the called party, class wide evidence demonstrates that Pizza Hut cannot establish such a defense here because Pizza Hut obtained all of the class members' cellular numbers from third-parties rather than the class members themselves. To the extent there is nevertheless any issue of consent, it is a class wide legal issue that is the same for all class members. Pizza Hut admits that it has no evidence to suggest it was aware of any class member providing consent prior to or during the class period. *Exh. 1* (*Dep. of ADF Defs.*), p. 70, 78-79.

As discussed herein, each of the requirements for class certification is satisfied. Accordingly, Mr. Keim respectfully requests that the Court grant his motion to certify in its entirety.

## II.     FACTUAL BACKGROUND

The Franchise Defendants (each franchisees of Defendant Pizza Hut, Inc.), acted in concert to promote the Pizza Hut brand through the text marketing campaign. *Exh. 2 (Dep. of Defs. Marketing Mgr., Kristin Hairabedian)*, p. 25-26. The Franchise Defendants employ one marketing manager for all of their stores. *Id.* This marketing manager oversees all of the marketing activity for the Franchise Defendants, and makes all marketing related decisions on their behalf, including

all aspects of the texting campaign. *Id.* at p. 15, 35, 38. The Franchise Defendants utilize a single website (www.ADFCompanies.com) and further shared in both the expense of the campaign, as well as well as the anticipated benefits therefrom (*i.e.,* increased sales, traffic to stores, coupon redemption). *Id.* at p. 39, 42.

These Franchise Defendants jointly entered a contract with text marketing vendors Songwhale and Cellit, hiring them to sent text message advertising to promote the Pizza Hut brand. *Exh. 2,* p. 25-26, 50-52, 116-117[1]. The coupon codes sent as part of the campaign directed recipients to go to Pizza Hut's website (www.pizzahut.com) to redeem the coupon codes. *Exh. 3* (*Dep. of Def. AHI*), p. 60.

One component of the campaign required persons to opt themselves in, but the Friend-Forward Component was specifically designed to obtain numbers of third-parties without their consent. *Exh. 3,* p. 12-13, 26.

Pizza Hut sent text messages, *en masse,* to 13,046 numbers over a 15 months period to promote its food products as part of the campaign's Friend-Forward Component. *Exh. 4* (*Biggerstaff Expert Rpt.*)*,* ¶ 18-21; *see* also *Exh. 1,* p. 66-67.[1] As the name suggests, these numbers were not obtained from the putative class members, but instead the 13,046 Friend-Forward Component numbers were solicited from third-parties without the requisite consent, as set forth *infra.*

As part of the campaign, Pizza Hut obtained initial subscribers through the use of promotional materials such as fliers, box tops and counter cards, soliciting customers to join the "texting club" by texting in "MyHut" to a particular short code. *Exh. 3,* p. 12-13, 26. The 13,046 putative class members do not include these initial subscribers.

Once an initial subscriber texted their number to Pizza Hut, they immediately received two text messages from Pizza Hut: the first welcomed them to the texting club, and the second, solicited them to submit the cellular numbers of their "friends" in exchange for free food prizes (the "Friend-Forward Component"). *Id.* at p. 26-28. The more cellular numbers a subscriber sent in, the better the free food product he would receive. *Id.* at p. 13-14.

The subscriber messages read as follows:

---

[1] Accordingly, and as discussed in more detail in in Sec. VII(A)(3), *infra,*, Plaintiff maintains that Defendants are jointly liable for violation of the TCPA.

> PIZZAHUT! Thx 4 entering & registering 4 Deals! Visit pizzahut.com w/code FS to get 5 FREE BREADSTICKS w/purchase!  Powered by Songwhale Rply STOP 2quit or HELP
>
> PIZZAHUT! Enter friends and u win!  1=FREE Breadsticks 5=FREE 2 Liter Pepsi 10=FREE Pizza Rollers Rply FRIEND+10digit cell# (eg FRIEND2223334444)

*Exh. 5* (*Pizza Hut Call Records*).

The second message, above, which is the first element of the Friend-Forward Component, clearly does not indicate if, when or how Pizza Hut plans to utilize the cellular numbers the third-party submits, nor that the referred party (the "Friend-Forward Recipient") would be subjected to an onslaught of unwanted marketing texts through no choice of their own.

Subscribers who submitted the cellular numbers of their friends to Pizza Hut in accordance with the instructions that Pizza Hut provided sent text messages that read along these lines:

> FRIEND2223334444

*See e.g., Exh. 6* (*Pizza Hut Call Records*). This message also does not indicate whether or not the referring third-party ("Friend-Forward Sender") spoke to the Friend-Forward Recipient, or what, if anything, was said about the provision of their cellular number. Nothing was conveyed to Pizza Hut except the prompt word "FRIEND" and a ten digit cellular number. Critically, at no stage of the Friend-Forward process, did Pizza Hut take any steps to verify that owner of the ten digit cellular number submitted by the subscriber ever consented to have their cellular number provided to Pizza Hut. *Exh. 1* at 70.

According to the Friend-Forward Component flow, the instant that Friend-Forward Sender submitted the number of a "friend", that Friend-Forward Recipient immediately received two text messages from Pizza Hut. The messages stated:

> "PIZZAHUT! [Friend-Forward Sender's number] entered u 2win pizza 4 a year and Pizza Hut Deals! Rply STOP 2quit or HELP"
>
> "PIZZAHUT! Enter friends and u win!  1=FREE Breadsticks 5=FREE 2 Liter Pepsi 10=FREE Pizza Rollers Rply FRIEND+10digit cell# (eg FRIEND2223334444)"

*Exh. 6.* This flow is precisely the same for all members of the putative class. *Exh. 3*, p. 35. Simultaneously, the Friend-Forward Sender also receives a message upon entering each new cellular number he submits. For example:

> "PIZZAHUT! Thanks 4 entering 1 friend! Visit pizzahut.com w/code FS to get 5 FREE BREADSTICKS w/purchase! 4 more friends wins you a FREE 2 LITER PEPSI!"

*Exh. 6.* And once the Friend-Forward Recipient's cellular number is added to Pizza Hut's database, that cellular number is treated just like all cellular numbers stored in Pizza Hut's database, and is on queue to receive marketing text messages from Pizza Hut going forward.[2]

Pizza Hut acquired Plaintiff's number in the same manner that they acquired every other class member's number: his number was provided by a third-party. *Exh. 3,* p. 35. And just like every other class member, once added to Pizza Hut's database, Mr. Keim received multiple texts each month. *See Exh. 4(A-7).* In fact, between February 11, 2011 and November 4, 2011, Mr. Keim received 16 marketing texts from Pizza Hut. *Id.* Each class member received the very same messages going forward. *Exh. 2,* p. 35-38.

Pizza Hut's records shows the date and time of each outbound telemarketing text that it sent, as well as the content of the message, and the cellular number to whom each message was sent. *See e.g., Exh. 6.* Plaintiff's expert, Robert Biggerstaff, queried the data in Pizza Hut's records to identify the number of unique cellular telephone numbers that had been "'referred' by a friend." *Exh. 4, ¶¶* 15-21. As noted above, Mr. Biggerstaff identified 13,046 unique telephone numbers that were sent marketing texts from Pizza Hut during the campaign as part of the Friend-Forward Component. *Id., ¶¶* 18-21. In other words, people who opted themselves into the campaign are excluded, and only persons opted in via third-parties are class members.

## III.  THE PROPOSED CLASS DEFINITION

Plaintiff's proposed Class is:[3]

### *TCPA Friend-Forwarder Class*

---

[2] The system that Pizza Hut (through its vendors) utilized to send the texts, sent very high volumes of messages in a very small window of time. For example, one marketing text was sent 22,308 times in 3 minutes and 37 seconds (or 102 times per second). *Exh. 4, ¶¶* 22-23; *Exh. 4(A-7)* (demonstrating multiple examples of messages sent at high rates); also *see Exh. 3,* p.48 (Pizza Hut's marketing manager testified that "they obviously have to have some form of computerization just because I can't imagine one person sending 20,000 texts.").

[3] Plaintiff respectfully reserves the right to amend his class definition, or add a sub-class, subject to Court approval. Class definitions may be amended or altered at any time before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C); *see also*, *e.g.*, *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 695 (S.D. Fla. 2013) (modifying class definition per Plaintiff's suggestion).

> All persons within the United States (1) who received a text message from Defendants (2) wherein their cellular telephone number was provided by a third-party (3) and said text messages were sent using using hardware and software owned or licensed to Songwhale or Cellit (4) during the four year period prior to the filing of the original complaint in this action through the date of certification (between November 2010 and January 2013[4]).

As set out above, the proposed class is comprised of 13,046 people, each with the same claim for statutory damages arising from the unsolicited marketing PH Texts. There is no problem identifying the class members because Pizza Hut's records detail each illegal text that was sent, and identify the recipient by their cellular phone number.  Most of Pizza Hut's records also indicate the telephone carrier for each putative class member who received illegal texts, making any necessary identification of each class member's name or address for purposes of notice ascertainable through the carrier's records once the class is certified. Ascertainability via this method is further demonstrated by documents already provided by several of the major carriers in this case subject to Pizza Hut's subpoenas. *See* Sec. VII(A)(1)(b), *infra*. Also *see Exh. 7* (*Biggerstaff Expert Report No. 2*)*, ¶ 22, 28, 32. Pizza Hut's expert, Kenneth Sponsler, agreed that with the telephone number and the carrier (both of which Pizza Hut's records identify), one could obtain very reliable information to identify the subscriber of the account. *Exh. 8* (*Dep. of Def. Expert, Kenneth Sponsler*)*, p. 91.

### IV.    THE TCPA

"Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [Federal Communications] Commission." *In re Rules and Regulations Implementing the TCPA of 1991*, 30 F.C.C. Rcd. 7961, 7991 at ¶ 1 (July 10, 2015) ("2015 TCPA Order"). In fact, abusive text message spam, "robocalls," and "autodialed" calls were the FTC's  number one grievance in 2015, and the FTC reported more than 2.2 million complaints about unwanted robocalls.[5]   The, "voluminous consumer complaints about abuses of telephone technology… prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 742 (2012). Congress found that "automated or prerecorded calls are a nuisance

---

[4] Discovery revealed that the campaign ran from November 2010 through January 2013.

[5]  http://money.cnn.com/2015/10/22/pf/fcc-robocall-telemarketing-data-public/  (Last  Accessed: January 10, 2017).

and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting consumers from this nuisance and  privacy invasion." Pub. L. No. 102-243, §§ 2 (10-13) (Dec. 20, 1991), codified as 47 U.S.C. § 227. The TCPA thus makes it unlawful to make any call using an ATDS to any telephone number assigned to a cellular telephone services provider unless the call is made "for emergency purposes" or with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). Text messages are treated as "calls" under the TCPA. *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1307 (11th Cir. 2015).

The TCPA provides for statutory damages in the amount of $500 per violation, which the Court may treble if a violation is willful. *Hitchman v. Nat'l Enter. Sys.*, 2014 U.S. Dist. LEXIS 30623, at *5 (S.D. Fla. Mar. 10, 2014), *citing* 47 U.S.C. §227(b)(3). "The TCPA is a remedial statute passed to protect consumers from unwanted automated telephone calls and messages and should be construed in accordance with that purpose. *Id.,* at *7-8 n.1, *citing Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013).

## V.     CLASS CERTIFICATION IS COMMON IN TCPA CASES

The "large number of claims, along with the  relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating" claims under TCPA. *C-Mart, Inc. v. Metro. Life Ins. Co*., 299 F.R.D. 679, 691 (S.D. Fla. 2014), *quoting Hicks v. Client Servs., Inc.,* 2008 U.S. Dist. LEXIS 101129, 2008 WL 5479111, *10 (S.D. Fla. Dec. 11, 2008). "Class certification is normal in litigation under [the TCPA], because the main questions… are common to all recipients." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.,* 821 F.3d 992, 998 (8th Cir. 2016), *quoting Ira Holtzman, C.P.A. & Assoc., Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); also *see Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1045 (9th Cir. 2012) (affirming class certification).

At least fifty courts had certified TPCA class actions as of 2010. *Karen S. Little, L.L.C. v. Drury Inns, Inc.*, 306 S.W.3d 577, 584 n. 5 (Mo. Ct. App. 2010). Since that time, courts have continued to certify TCPA class actions, many of which concern calls to cellular telephones. *See e.g. Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 700 (S.D. Fla. 2015); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC,* 2014 U.S. Dist. LEXIS 177222, at *28 (S.D.

Fla. Dec. 23, 2014); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674 (S.D. Fla. 2013); *Johnson v. Yahoo!, Inc.,* 2016 U.S. Dist. LEXIS 256 (N.D. Ill. 2016); *Physicians Healthsource, Inc. v. A-S Medication Sols*., LLC, 2016 U.S. Dist. LEXIS 132037, at *31 (N.D. Ill. Sep. 27, 2016); *Johnson v. Navient Sols., Inc.,* 2016 U.S. Dist. LEXIS 102656 (S.D. Ind. 2016); *Lafollette v. Liberty Mut. Fire Ins. Co*., 2016 U.S. Dist. LEXIS 99980, at *53 (W.D. Mo. Aug. 1, 2016); *Dr. Robert L. Meinders D.C., Ltd. v. Emery Wilson Corp.*, 2016 U.S. Dist. LEXIS 80570, at *22 (S.D. Ill. June 21, 2016); *Labrier v. State Farm Fire & Cas. Co*., 315 F.R.D. 503, 523 (W.D. Mo. 2016); *Abdeljalil v. General Electric Capital Corp.*, 2015 U.S. Dist. LEXIS 43288 (S.D. Cal. 2015); *Booth v. Appstack, Inc.*, 2015 U.S. Dist. LEXIS 40779 (W.D. Wash. 2015); *Ikuseghan v. Multicare Health Sys.,* 2015 U.S. Dist. LEXIS 99175 (W.D. Wash. 2015); *Ikuseghan v. Dish Network L.L.C*., 311 F.R.D. 384 (M.D.N.C. 2015); *Bee, Denning, Inc. v. Capital Alliance Group,* 301 F.R.D. 614 (S.D. Cal. 2015); *Stemple v. QC Holdings, Inc.*, 2014 U.S. Dist. LEXIS 125313 (S.D. Cal. 2014); *Chapman v. Wagener*, 2014 U.S. Dist. LEXIS 16866 (N.D. Ill. 2014); *Stern v. DoCircle, Inc.*, 2014 U.S. Dist. LEXIS 17949 (C.D. Cal. 2014); *Kristensen v. Credit Payment Services*, 12.Supp.3d 1292 (D. Nev. 2014); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014); *Knutson v. Schwan's Home Serv.,* 2013 U.S. Dist. LEXIS 127032 (S.D. Cal. 2013); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013); *Agne v. Papa John's Intern., Inc*., 286 F.R.D. 559 (W.D. Wash. 2012); *Meyer*, 707 F.3d at 1040 (affirming district court's certification); *Balbarin v. North Star Capital Acquisition, LLC*, 2011 U.S. Dist. LEXIS 686 (N.D. Ill. 2011); *Mitchem v. Illinois Collection Service*,  2011 U.S. Dist. LEXIS 714 (N.D. Ill. 2011). This Court should follow this precedent.

## VI.   RULE 23(a) IS SATISFIED

As set forth herein, the proposed class satisfies each of the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).

### A.  The Class is Sufficiently Numerous

The Class is comprised of approximately 13,046 persons. *Exh. 4, ¶* 18. Under Rule 23(a), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no "definite standard" for numerosity, and it is not necessary to know the actual class size. *Fabricant v. Sears Roebuck, et al.*, 202 F.R.D. 310, 313 (S.D. Fla. 2001) ("There is no definite standard as to the size of a given class, and plaintiff's estimate need only be reasonable."), *citing Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986).

However, a class of forty members is generally deemed adequate. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). "[W]here the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." Newberg on Class Actions § 7.22 (4th ed. 2002). The proposed Class easily satisfies this standard. Joinder of more than 13,000 individual claims is highly impracticable. Numerosity is therefore satisfied.

### B.  The Class is Ascertainable

The implied "ascertainability" element for certification simply requires that the class be defined based on objective criteria. *See In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 651 (S.D. Fla. 2012) ("because class membership is defined by objective criteria, the Court finds that the defined class is readily ascertainable.") Each element of the class definition proposed here is an objective, rather than subjective, criteria that is easily determined by referenced to Pizza Hut's business records: (1) a person within the United States (2) who received text messages from Pizza Hut, through their vendor, (3) wherein their cellular number was provided by a third-party (4) and the text messages were sent using an automatic telephone dialing system or device which has the capacity to be used as an ATDS (5) between November 2010 and January 2012.

Rule 23 expressly contemplates that not all class members can be identified through reasonable effort. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1320-21 (11th Cir. 2012) ("Where certain class members' names and addresses cannot be determined with reasonable efforts, notice by publication is generally considered adequate."), *citing* Fed. R. Civ. P. 23(c)(2)(B). Plaintiff is not required to provide a foolproof method to "identify all who fall within the class definition." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). Moreover, many circuits have declined to interpret R. 23 to impose additional standards for certification not mandated by R. 23. *Briseno v. ConAgra Foods, Inc.,* 2017 U.S. App. LEXIS 20, at *9 (9th Cir. Jan. 3, 2017) (refusing to interpose a showing of administrative feasibility to identify the class); *see* also *Sandusky Wellness Ctr., LLC,* 821 F.3d at 995-96; *Rikos v. Procter & Gamble Co.,* 799 F.3d 497, 525 (6th Cir. 2015); *Mullins*, 795 F.3d at 658.

In this case, the class members' telephone numbers are ***already*** identified. As numerous TCPA cases across the country have held, that is sufficient objective criteria to identify the class. *See Palm Beach Golf Center-Boca, Inc.*, 311 F.R.D. at 693 (finding TCPA class to be ascertainable because the plaintiff set forth a list of fax numbers to which to offending communications were

sent); *Physicians Healthsource Inc.*, 2014 U.S. Dist. LEXIS 177222, *9-11 (finding list of "unique fax numbers" sufficient to satisfy ascertainability); *Amer. Copper & Brass v. Lake City Indust. Prod.*, 2014 U.S. App. LEXIS 12921, *12 (6th Cir. 2014) ("the fax numbers are objective data satisfying the ascertainability requirement."); *Booth*, 2016 U.S. Dist. LEXIS 83996, *5 ("The TCPA Class definition provides an objective basis to identify proper claimants, even though that identification will initially be based upon the TCPA Class member's telephone number."); *Kristensen*, 12 F.Supp.3d at 1303 ("calling lists can be used to identify the individual class members. Prospective plaintiffs can readily identify themselves as class members based on receipt of the text message."); *Stemple*, 2014 U.S. Dist. LEXIS 125313, *9-10 (finding TCPA class to be ascertainable because "plaintiff may use the log and fax numbers to work backwards to locate and identify the exact entities to whom the fax was sent."); *Birchmeier*, 302 F.R.D. at 248 ("it is fairly clear that the identities of the persons whose numbers are on plaintiffs' list of 930,000—indeed, the subscribers for those numbers at the time  defendants called them—are sufficiently ascertainable"); *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, 2008 U.S. Dist. LEXIS 79827, *7 (N.D. Ill. 2008) ("Though the logs do not definitively establish the identities of the recipients without further investigation on the part of class counsel, they provide enough information to enable counsel to locate them.") Thus, the unique cellular telephone numbers at issue in this case are sufficient to satisfy the ascertainability requirement.

Next, Plaintiff can mail individual notice to the vast majority of the class members in this case by obtaining the class members' names and addresses through (1) subpoenas to telephone service providers[6] for the names and addresses of the subscribers to the numbers at issue at the time of the calls and (2) supplemental reverse directory searches. *Exh. 7* ¶¶ 15-17, 28-30. Subpoenaing the carrier for purposes of identifying class members is common place, and courts have repeatedly approved this procedure in other TCPA actions. *See e.g., Johnson v. Yahoo!*, 2016 U.S. Dist. LEXIS 256; also *see Exh. 9* (*Order compelling Sprint to produce subscriber information in TCPA case*); *Booth*, 2015 U.S. Dist. LEXIS 40779, *9 (W.D. Wash. 2015) (certifying TCPA Class where "Plaintiffs intend to rely on additional records, such as telephone carrier records and reverse-lookup directories, to identify class members and establish elements of the claims.");

---

[6] The top five carriers make up 97% of the cellular telephone market. *See* http://www.statista.com/statistics/199359/market-share-of-wireless-carriers-in-the-us-by-subscriptions/  (last visited December 13, 2016).

*Birchmeier*, 302 F.R.D. at 248 (finding TCPA class ascertainable where the Plaintiff proposed to use call list to "obtain their contact information to provide notice from either a third-party database or from the telephone carriers themselves"); *Bee, Denning, Inc. v. Capital Alliance Group*, 310 F.R.D. 614, 622 (S.D. Cal. 2015) ("Plaintiffs' intent to use reverse look-up technology to identify persons ...is an objective approach that reinforces the ascertainability of the class."); *Stemple*, 2016 U.S. Dist. LEXIS 55011, *11 (same).

Pizza Hut's expert agrees that the information contained in Pizza Hut's records would yield very reliable information to identify the subscriber of the account via a subpoena to the respective phone carrier. *Exh. 8,* p. 91. It is indisputable that the proposed Class in this case is ascertainable and would allow for direct notice of certification to the vast majority of members.

### C. Commonality is Satisfied

The test for commonality is whether the class claims present "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This is another "low hurdle." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009). To clear it, Plaintiff need only show that the class claims present "at least one issue whose resolution will affect all or a significant number the putative class members," or that their claims "are susceptible to class-wide proof." *Williams*, 568 F.3d at 1355, *quoting Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001) *and Stewart v. Winter,* 669 F.2d 328, 335 (5th Cir. 1982). In other words, the class claims must "depend upon a common contention … capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, class claims depend upon several common contentions that will be resolved on a class-wide basis, "in one stroke," without the need for any individualized inquiries, including (a) whether Pizza Hut's reliance on the alleged intermediary consent (*see infra,* Sec. VII(A)(1)(a)) is sufficient to establish "prior express consent" under the TCPA (issue of law resolved by the FCC orders and Pizza Hut's admissions); (b) whether Pizza Hut is liable for the marketing texts that their vendors, Songwhale and Cellit, sent to the putative class (*see infra,* Sec. VII(A)(2) discussing issue of law resolved by the FCC orders and Pizza Hut's admissions); (c) whether Pizza Hut is vicariously liable for the actions of its franchisees (resolved by franchise agreements and PHI's admissions) (*see infra,* Sec. VII(A)(3)); (d) whether the text messages were sent using an "automatic telephone dialing system" under the TCPA (resolved by the Pizza Hut's admission and

texting records, the testimony of the Songwhale, and the expert opinion of Robert Biggerstaff ).

Thus, commonality is satisfied in this TCPA action, as it has been in numerous other TCPA cases. *See Palm Beach Golf Center-Boca, Inc.*, 311 F.R.D. at 699 ("facts necessary to establish liability relate to Defendant's common course of conduct"); *Agne*, 286 F.R.D. at 567 (finding that when alleged consent was obtained in a uniform way, the issue of consent is common "and the validity of one of [d]efendants' consent defenses can therefore be resolved in one stroke."); *Bennett v. Boyd Biloxi, LLC*, 2016 U.S. Dist. LEXIS 62217, * 6 (S.D. Ala. 2016) ("whether the act of providing telephone numbers (the only basis for consent argued by the defendant) constitutes express written consent applies equally to all class members. The commonality requirement is thus satisfied."); *C-Mart, Inc.*, 299 F.R.D. at 690 (holding in TCPA case that "the legal questions that the instant matter presents will be common to all class members."); *Manno*, 289 F.R.D. at 686 ("Whether the provision of a phone number on admissions paperwork equates to express consent is a question common to all class members . . . all class members will prevail or lose together, making this another common issue to the class.")

### D.  Typicality is Satisfied

"The focus of typicality is whether the class representative's interest is aligned enough with the proposed class members to stand in their shoes for purposes of the litigation and bind them in a judgment on the merits." *Palm Beach Golf Center-Boca, Inc.*, 311 F.R.D. at 696, *quoting Colomar v. Mercy Hosp., Inc*., 242 F.R.D. 671, 677 (S.D. Fla. 2007). "Class members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist 'a sufficient nexus . . . between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" *Ault v. Walt Disney World* Co., 692 F.3d 1212, 1216 (11th Cir. 2012), *citing Prado-Steiman v. Bush*, 221 F.3d 1266, 1278-79 (11th Cir. 2000). "This nexus exists 'if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Ault*, 692 F.3d at 1216, *citing Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

In this case, Plaintiff was subjected to the same conduct as every other class member as a result of Pizza Hut's common practice of sending unsolicited marketing text messages. Plaintiff's claim, like the claim of every other class member, is based on a single legal theory – that Pizza Hut's conduct violated the TCPA's prohibition of sending marketing texts to cellular telephone numbers without prior express consent. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

### E.  Plaintiff and Plaintiff's Counsel are Adequate

The adequacy element of Rule 23(a)(4) requires that Plaintiff and his counsel be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This means Plaintiff must have "no interests antagonistic to the class," and his counsel must be qualified to represent the class. *Fabricant*, 202 F.R.D. at 314-15, *citing Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987).

Plaintiff meets this test because his interests are squarely aligned with the class. Like the class members, Mr. Keim claims that Pizza Hut violated his rights under the TCPA by sending unwanted marketing texts to his cellular telephone. *Exh. 10* (*Dep. of Plaintiff, Brian Keim*)*,* p. 35. He seeks statutory damages to redress these violations pursuant to 47 U.S.C. § 227(b)(3). *Id.* p. 53. Further, Plaintiff has no interests antagonistic to the class. *Id.* at 57-8*.* Plaintiff is not aware of any conflict with the other class members. *Id.* In addition, Plaintiff has no ongoing financial or fiduciary relationship with his counsel that could possibly present a conflict. *Exhs. 11* and *12* at ¶7. (*Declarations of Scott D. Owens and Amy L. Wells, respectively*)*.*

In determining whether a named plaintiff will sufficiently represent a potential class with vigor in accordance with R. 23, the Court should consider (1) "'whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation…" *Cheney v. Cyberguard Corp*., 213 F.R.D. 484, 495 (S.D. Fla. 2003), *citing Kirkpatrick*, 827 F.2d at 726. Here, Plaintiff's counsel are experienced litigators of both consumer protection claims, including similar claims under the TCPA, and class actions. *See Exh. 11* at *¶¶3-28, Exh. 12*. The Court may also take judicial notice of other class actions Plaintiff's counsel has litigated in this District. *Seff v. Broward Cty*., 2010 U.S. Dist. LEXIS 141871, at *10 (S.D. Fla. Dec. 6, 2010); *See Exh. 11* at ¶17. The undersigned attorneys have over 26 years of combined litigation experience, and their firms are at the forefront of TCPA class litigation. *Exh.* 11 at ¶¶3, 15. *Exh. 12* at ¶5. Class counsel has expended significant time and resources vigorously litigating this case since it commenced in 2012. *Exh.* 11 at ¶29. *Exh. 12* at ¶8*; see* also *Cty. of Monroe v. Priceline.com, Inc.,* 265 F.R.D. 659, 669 (S.D. Fla. 2010). For these reasons, Plaintiff's counsel have been—and will continue to be—adequate counsel for the Class.

### VII.    RULE 23(b)(3) IS SATISFIED

Plaintiff seeks certification under Rule 23(b)(3). Plaintiff must therefore establish that "questions of law or fact common to class members predominate over any questions affecting only

individual members" and that "a class is superior to other available methods for fairly and efficiently adjudicating the controversy." *Williams*, 568 F.3d at 1357, *quoting* Fed. R. Civ. P. 23(b)(3).

### A. Common Questions Predominate

Rule 23(b)(3) does not require all issues presented in the case to be common among the Class. It requires only that common issues predominate over any individual issues. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004) ("it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.") (internal quotations omitted), abrogated on other grounds by *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

Common issues of law or fact predominate "if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to …. relief." *Williams*, 568 F.3d at 1357, *quoting Klay*, 382 F.3d at 1255. That is the case here because the common questions that this case presents, which are listed in §VI(B)(C) *supra* (discussing commonality) directly affect the class members' ability to establish liability and obtain relief.  For instance, the issue of whether the declarations Pizza Hut procured in 2016 are sufficient to establish "prior express consent" through a third-party intermediary under the TCPA. Similarly, whether PHI is liable for actions of the remaining defendants is dispositive issue as to PHI's liability.

Thus, as is often the case in TCPA claims, "there are no prickly individualized questions" that could predominate this action. *Manno*, 289 F.R.D. at 690. Instead, "the facts necessary to establish liability [in a TCPA claim] relate to Defendant's common course of conduct and the transmissions of the [calls], and not to issues with individual class members." *Palm Beach Golf Center-Boca, Inc.*, 311 F.R.D. at 699 (finding predominance satisfied in a TCPA case). Indeed, common issues predominate with regard to each aspect of Plaintiff's TCPA claims. For instance, no individual issues will arise with regard to the first element—who received texts sent by Songwhale or Cellit—because the class is already limited to persons who received text messages from Pizza Hut, through these vendors. Pizza Hut's records identify texts that were received by each cellular number during the campaign, specifically listing the date and time that each text was received by each given class member. *Exh. 4,* ¶ 20-21. Similarly, as shown *supra*, common issues predominate with respect to whether the cellular numbers called was provided by a third-party. Lastly, common issues predominate with respect to the use of an ATDS. Pizza Hut sent all texts

using the same telephone systems, and those systems has all the tell-tale criteria of an ATDS as defined by the TCPA. *See id*., ¶¶ 22-24.

And even though "prior express consent" is not an element of Plaintiff's TCPA claim, but rather an affirmative defense for which Defendants' bear the burden of proof, Plaintiff submits that common issues will predominate with respect to any conceivable prior express consent defense as well. *Bray v. PNC Bank, N.A.*, 2016 U.S. Dist. LEXIS 131618, *12 (M.D. Fla. 2016) As the court ruled in the *Abdeljalil* "wrong number" TCPA case, any speculative or hypothetical individualized issues that Pizza Hut asserts regarding "prior express consent" cannot defeat the predominance inquiry, where the class was limited to persons whose numbers were all provided in precisely the same way according to Pizza Hut's records. 306 F.R.D. at 311. The only theory of consent reasonably available to Pizza Hut is intermediary consent. But whether that is sufficient "prior express consent of the called party" is a common issue for the class that should be answered in the negative as set forth below.

### 1.   A Prior Express Consent Defense is Inapt

Prior express consent is an affirmative defense to a TCPA claim. *See Murphy*, 797 F.3d at 1304-05. Pizza Hut bears the burden of proof to establish this claimed defense. *Bray*, 26 Fla. L. Weekly Fed. D 53, *citing Lardner v. Diversified Consultants Inc*., 17 F. Supp. 3d 1215, 1224 (S.D. Fla. 2014). "Express consent is consent that is clearly and unmistakably stated." *Buslepp v. B&B Entm't, LLC*, 2012 U.S. Dist. LEXIS 144433, *14 (S.D. Fla. 2012), citing *Satterfield v. Simon & Schuster*, 569 F.3d 946, 955 (9th Cir. 2009). As held by the FCC, "the TCPA and the Commission's rules plainly require *express* consent, not implied or 'presumed' consent." 2015 TCPA Order at ¶52; *Mais v. Gulf Coast Collection Bureau, Inc.,* 944 F. Supp. 2d 1226, 1239 (S.D. Fla. 2013) ("'implied consent' will not do").

### a.   There is No Evidence of Intermediary Consent

Pizza Hut raises third-party intermediary consent as a defense.[7] Such a defense requires Pizza Hut demonstrate that consent was both "obtained **and** *conveyed* via intermediaries.'" *Mais v. Gulf Coast Collection Bureau, Inc.* 768 F.3d 1110, 1123 (11th Cir. 2014) (emphasis added), *citing In re GroupMe, Inc.,* 29 FCC Rcd 3442, 3445, 2014 FCC LEXIS 1073, *9, 59 Comm. Reg.

---

[7] Only two of the five named defendants have filed an answer in this case. ADF Midatlantic, LLC, ADF Pizza I, LLC and ADF PA, LLC have each failed to file an answer or respond to the Complaint, [ECF No. 191]; accordingly those defendants have not raised any defenses.

(P & F) 1554, 2014 FCC LEXIS 1073, 59 Comm. Reg. (P & F) 1554 (F.C.C. 2014)("GroupMe"). *See also Johnson v. Yahoo!, Inc.,* 2016 U.S. Dist. LEXIS 256, at *14 ("Crucial to [the GroupMe] ruling, however, was the fact that the third-party ***conveyed*** the individual recipient's consent to the network. [*citing GroupMe*] (***group creator represented to GroupMe that each individual consented to receiving text messages***). The FCC's rule on intermediary consent has two necessary parts: ***(1) consent given by the recipient to the intermediary, and (2) consent conveyed by the intermediary to the sender***.") (emphasis added). *See also McCaskill v. Navient Sols., Inc*., 178 F. Supp. 3d 1281, 1293 (M.D. Fla. 2016) (granting summary judgment to Plaintiff on TCPA claim, and rejecting intermediary consent defense where "no evidence indicating that an intermediary conveyed any consent on Plaintiff's behalf.")

Consent must be given ***before*** the call is placed. *Meyer,* 707 F.3d at 1042, *citing In re Rules Implementing the TCPA of 1991,* 23 FCC Rcd. 559, 565, 2008 FCC LEXIS 56, *16, 43 Comm. Reg. (P & F) 877, 2008 FCC LEXIS 56, 43 Comm. Reg. (P & F) 877 (F.C.C. 2007). The question is whether "the requisite consent [was obtained] ***before*** making each challenged call." *Newhart v. Quicken Loans Inc*., 2016 U.S. Dist. LEXIS 168721, at *6-7 (S.D. Fla. Oct. 12, 2016) (emphasis added). "Obviously, if the putative class members did not communicate with [Defendants] ***before*** [Defendants] called them, there is no way those class members could have provided consent..." *Manno*, 289 F.R.D. at 686 (emphasis added).

Defendants did not and cannot show that they requested each Friend-Forward Sender obtain express consent from a Friend-Forward Recipient, nor that they took any steps to verify consent from the subscriber or user of the Friend-Forward Recipient's cellular telephone number. In fact, Pizza Hut admits consent was never conveyed to them before or during the campaign. *Exh. 1,* p. 70, 78-9 ("there's no evidence or documents that exist that would demonstrate consent was obtained to send text messages to the friend forfeward recipients" and also that "what [Pizza Hut] view[s] as consent via these declarations, that was never conveyed to [Pizza Hut] or [its] vendors during the time that the campaign took place"). Upon receipt of the Friend-Forwarded number, Pizza Hut knew that the number was provided by a third-party, and knew that consent was not conveyed to it.  Yet, Defendants immediately blasted these numbers with multiple calls through their vendor's ATDS in an abusive an illegal marketing scheme.

### b.  Participation in a "Family Plan" Does Not Equal Consent

Similarly, consent is not obtained merely because a putative class member shared an account with the Friend-Forward Sender. Pizza Hut has issued subpoenas to the five major cellular carriers, including Verizon, AT&T, Sprint, T-Mobile and US Cellular, which account for nearly 90% of the putative class. *Exh. 7,* ¶ 18. Pizza Hut's subpoenas inquired as to 5,950 putative class members' cellular numbers whereby the Friend-Forward Sender and Recipient shared a common carrier. *Id.* at ¶ 33.

To date, Verizon, Sprint and US Cellular have provided account information (demonstrating such historical account information is accessible from the carriers). Verizon (which is the carrier for approximately one third of the putative class) provided documents demonstrating that only 18.72% of the numbers shared an account. *Id.* at ¶ 32.[8] Between the three carriers who have responded to date, 16.98% of the Friend-Forward Senders shared an account with the cellular number they provided to Pizza Hut. Applied across this board, this amounts to a very small portion (less than 8%) of the putative class having shared an account with the person who provided Pizza Hut with their cellular number. *Id.* at ¶ 33.

Yet there is no need to exclude these accounts. The Eleventh Circuit has found that although two persons shared a cellular phone plan, this does not demonstrate the requisite authority to consent for one another as a matter of law. *McCaskill,* 178 F. Supp. 3d at 1291, *citing Osorio v. State Farm Bank, F.S.B.,* 746 F.3d 1242, 1254 (11th Cir. 2014). Despite its burden, Defendants have produced absolutely no evidence to suggest that any person other than the user of each cellular number who received an unlawful PH Text paid for his own phone service. *Id.* at 1290. As discussed *supra,* consent must be conveyed, and the texts must be within the scope of the consent given. *See* 2015 TCPA Order, ¶ 52. There is no evidence of any such conveyance.

As an aside, the Friend-Forward Senders had no way of knowing what Pizza Hut would do with the cellular numbers they provided in exchange for a free pizza; hence, they could not conceivably convey consent to Pizza Hut because the scope of any so-called consent would have been unknown to them. *See Exh. 13* (*Decl. of Pizza Hut text subscriber, Heather Tucker*), ¶ 6.[9] Regardless, even if there was consent, which there was not, it was never conveyed, so it fails to be

---

[8] The remaining 81.28% simply had Verizon as their common carrier, but different accounts.
[9] Ms. Tucker, a Friend-Forward Sender, stated that she had no idea that Pizza Hut would use the cellular numbers she submitted to send unsolicited marketing texts, or do so without first getting the cellular user's permission.

sufficient consent under the TCPA. In the alternative, the Court can exclude any cellular telephone number that was associated with a shared plan, which as noted above, is only 8% of the putative class.

### 2.   Pizza Hut's Liability for its Vendors' Actions is a Class Issue

Pizza Hut disclaims that it is liable for the texts sent on its behalf by the vendors it hired. This is contrary to the FCC's directives, and Pizza Hut's own testimony. As this Court recently stated "the TCPA incorporates general common law principles of agency and vicarious liability, and a principal may be held liable under the TCPA for the acts of an agent. [ECF No. 114, p. 15-16] (*citing In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (Tcpa) Rules*, 28 F.C.C. Rcd. 6574, 6574, 6586-87 (2013)) ("2013 TCPA Order"); also *see Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1376 (S.D. Fla. 2014) (recognizing agency principles may result in an advertiser's liability under the TCPA for actions taken on its behalf by a vendor).

The FCC has repeatedly acknowledged the existence of vicarious liability under the TCPA. *Gomez v. Campbell-Ewald Co*., 768 F.3d 871, 878 (9th Cir. 2014). As early as 1995, the FCC stated that "[c]alls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." *In re Rules and Regulations Implementing the TCPA of 1991*, 10 FCC Rcd. 12391, 12397 (1995). More recently, the FCC has clarified that vicarious liability is imposed "under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." 2013 TCPA Order, ¶ 28. Here, it is indisputable that Pizza Hut's vendors sent the offending text messages on its behalf. *See Exh. 3, p. 23-25* (Pizza Hut specifically approved the Friend-Forward Component of the campaign, and controlled the verbiage included in each text message, and controlled when each text message would be sent to the putative class).

### 3.   Pizza Hut, Inc.'s Liability for its Franchisees' Actions is a Class Issue

Pizza Hut, Inc. is liable under principles of vicarious liability for the actions of its franchisees (*i.e.,* the other four defendants in this case). *See Agne.,* 286 F.R.D. at 568 (granting class certification finding "the question of whether Papa John's can be held liable for the conduct of its franchisees is a common question"). It is the "right to control…not whether control was actually exercised, that is crucial to determining the existence of an agency relationship." *Cain v.*

*Shell Oil Co*., 994 F. Supp. 2d 1251, 1253 (N.D. Fla. 2014), *citing Villazon v. Prudential Health Care Plan*, 843 So. 2d 842, 853 (Fla. 2003). "Evidence such as operating manuals and other materials may be offered to show the franchisor's right to control the franchisee." *Potts v. Budget Rent a Car Sys.,* 19 Fla. L. Weekly Fed. D 551 (U.S. N.D. Fla. 2005) (citations omitted). PHI's franchise agreements with each of the other defendants (PHI's franchisees) show that PHI exercised, or had the right to exercise, control over the other defendants' operations, including the campaign. *Exh. 14* (*Dep. of Pizza Hut, Inc.*)*,* p. 32-48 (Franchise agreement shows PHI had the right to control training of employees, uniforms, product the stores may sell, recording keeping, and national and local advertising). *Id.*, p. 33-38, 42-49. While PHI testified that at the time of the campaign, PHI did little to adhere to the strict advertising controls set forth in all of the provisions of the operative franchise agreements with its co-defendants, it is undisputed that PHI had every right to exercise control over everything ranging from large scale advertising down to the uniforms worn by line-level employees.

Similarly, whether Defendants are liable for its vendors, Cellit and Songwhale, as well as whether PHI is liable for the actions of its co-defendants, is a class wide issue.  As such, common issues predominate this action.

### B.  The Class Action Mechanism is Superior to Other Methods

"The focus of the superiority analysis is on 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" *Palm Beach Golf Center-Boca, Inc.*, 311 F.R.D. at 699, *citing Klay*, 382 F.3d at 1269.

In this case, there is no legitimate benefit to requiring class members to file their own lawsuits. In fact, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *In re Checking Account Overdraft Litig.*, 286 F.R.D. at 659, *quoting Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983). Likewise, requiring individual class members to file their own suits would deter some from enforcing their rights because recoverable statutory damages are only $500 (or up to $1500 if the Court trebles damages) (47 U.S.C. § 227(b)(3)), and the TCPA is not a fee shifting statute. *See Mims,* 132 S. Ct. at 750 (recognizing plaintiffs are unlikely to pay a $350 filing fee to advance an individual TCPA claim for $500). Thus, the statutory damages in individual claims likely do not provide a sufficient incentive to locate counsel and endure "all the burdens of suing." *See Holmes v. Continental Can Co.*, 706 F.2d 1144, 1154 (11th Cir. 1983) ("the individual might be unable to obtain counsel to

prosecute his action when the amount of individual damages is relatively small.") (citation omitted). A class action avoids this problem by aggregating what would otherwise be a series of "too small" potential individual recoveries. *See In re Checking Acct. Overdraft Litig.*, 286 F.R.D. at 659 ("The class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability.")

As the Southern District of Florida held in the *Palm Beach Golf Center-Boca, Inc.* TCPA case:

> "Given the large number of purported members in this suit and the similarity of their claims, disposition by class action is an efficient use of judicial resources. Moreover, the relatively small potential recovery in individual actions ($500 in the absence of a finding of willfulness) and reduced likelihood that plaintiffs will bring suit also weighs in favor of class resolution."

311 F.R.D. at 699. In the *C-Mart, Inc.* TCPA case, the court reached a similar conclusion:

> "[T]he large number of claims, along with the  relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating" the plaintiffs' claims under TCPA."

299 F.R.D. at 691. This case is no different. Here, the putative class is over 13,000 members strong. The Superiority requirement is satisfied.

## VIII.   CONCLUSION

TCPA cases are well-suited for class treatment, and this case is no exception. It will resolve thousands of nearly identical small claims in a single action. As set forth herein, the class easily satisfies all requirements for class certification.

Pursuant to Fed. R. Civ. P. 23, on behalf of himself and the putative class, Plaintiff hereby moves for certification of the Class. Plaintiff further moves this Court to appoint Brian Keim to be Class representative, and appoint Plaintiff's counsel, Amy L. Wells, Scott D. Owens and Patrick C. Crotty, to be counsel for the Class.


Dated: January 12, 2017                           Respectfully submitted,

                                                  /s/ *Scott D. Owens*
                                                  One of Plaintiff's Attorneys

Scott D. Owens
Patrick C. Crotty
SCOTT D. OWENS, PA.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Phone: 954-589-0588
Fax: 954-337-0666
Email: Scott@ScottDOwens.com

Amy L. Wells, *pro hac vice*
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
312.374.3401 (Direct)
312.726.1092 (Main)
312.726.1092 (Fax)
AWells@Keoghlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 12, 2017, I electronically field the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties below, if any, who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Scott D. Owens*
One of Plaintiff's Attorneys