**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | | |
|---|---|---|
| **BRIAN KEIM, on behalf of himself and** | ) | |
| **all others similarly situated,** | ) | |
| | ) | **Case No. 9:12-cv-80577-KAM** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Hon. Judge Kenneth A. Marra |
| | ) | |
| **ADF MIDATLANTIC, LLC, et al.,** | ) | Magistrate Judge William Matthewman |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MOTION TO COMPEL AT&T TO RESPOND TO SUBPOENA OR TO SHOW CAUSE**
**FOR FAILURE TO RESPOND TO SUBPOENA FOR PURPOSES OF CLASS NOTICE**

Now comes Plaintiff, on behalf of himself and the Class, and moves the Court to compel AT&T to respond to Plaintiff's subpoena, or to show cause for its failure to comply. As Plaintiff previously reported to this Court, Plaintiff believed that he reached an accommodation with AT&T, even though Plaintiff disagreed that the hurdles AT&T assert are required are not well taken and not required by any other carrier. Yet, AT&T has taken Plaintiff's willingness to compromise as an effort to gouge fees that are out of line with what any other carrier has charged. Thus, Plaintiff moves this Court to compel AT&T to comply with the subpoena.

**I.      NATURE OF THE DISCOVERY DISPUTE**

On December 4, 2018, the Court's Order granting class certification was entered. ECF No. 259 ("Order"). The Court found Plaintiff's multi-step plan administratively feasible to identify class members. *Id.* at 2. The plan is based primarily on subpoenas to major telephone carriers, which the Court recognized had been proven an effective method earlier in this litigation. *Id.*

In accordance therewith, in order to identify class members who received Pizza Hut text messages from Defendants without their prior express consent, Plaintiff served various[1] telephone service providers with subpoenas for the production of data sufficient to identify the names,

---

1 Defendants produced records setting forth each text message sent during the class period, which included the text recipient's telephone service provider in approximately 98% of the cases. Plaintiff served subpoenas on each of the carriers Defendants' records' identified.

addresses and email addresses of the subscribing account holder. *See* **Exhibits 1-3** (subpoenas to New Cingular Wireless PCS, LLC, ("New Cingular"), Cricket Wireless, LLC ("Cricket"), and Alltel Wireless ("Alltel") (collectively "AT&T)). Additionally, in accordance with the Order, the subpoenas sought to identify (and eliminate) any person whose number was provided to Defendants by the subscribing account holder on a shared service plan. *See* Order at 19; also *see id.*

Defendants' records identified 19 carriers by name. *See* ECF No. 199-7 at 7-8.

Plaintiff served subpoenas including New Cingular Wireless PCS, LLC, ("New Cingular"), Cricket Wireless, LLC ("Cricket"), and Alltel Wireless ("Alltel") (collectively "AT&T) with the subject subpoena on February 7, 2019,[2] directing AT&T to identify the names, email addresses, and mailing addresses of the persons subscribing to the particular telephone numbers that were identified as belonging to the AT&T network at the time a text was sent. *See* **Exhibits 1-3**. Plaintiff also sought information necessary to exclude any person whose number was provided to Defendants by the subscribing account holder who was on a shared phone plan with that person. *See* Order at 19.

Plaintiff has had favorable responses to the subpoenas in this case from most of carriers, including Sprint and Verizon, who together account for over half of the Class. ECF No. 199-7 at 7-8. Sprint, which comprises over 21% of the Class and Verizon, which accounts for over 30%, have both been cooperative and have not charged anything to comply with the subpoena. **Exhibit 4** at ¶ 4-5. Sprint has produced considerable documents and worked with Class Counsel in this process to agree to the consent order to allow Sprint to produce the data. *See* ECF No. 276. And while Verizon's production is still underway, they have been cooperative and forthright in disclosing an unrelated systems issues has caused delay in their response. **Exhibit 4** at ¶¶ 4-5. Three additional carriers have, or are in the process of, producing responsive information (Eastern Kentucky Network, Cellular South and US Cellular, respectively) with US Cellular only charging $325.00. **Exhibit 4** at ¶ 4.

Only AT&T has refused to produce the information, even in the wake of this Court's Sprint order, which compelled Sprint to produce information for customers who reside in California and Pennsylvania. Class Counsel suggested AT&T follow suit, but AT&T refuses to do so. **Exhibit 4**

---

2 Plaintiff served this amended subpoena, superseding a subpoena served on December 18, 2018 in order to narrow the issues alleged by Defendants.

70125

at ¶ 6. Even then, Plaintiff acquiesced in an effort to avoid burdening this Court with a dispute that would delay resolution of the class notice that Plaintiff proposes be sent via e-mail.

Yet, AT&T has insisted on such a convoluted process that unnecessary delays production of the class data and seeks to gouge Plaintiff. Specifically, AT&T requires Plaintiff to pay the class administrator to pre-print notices, to include prepaid postage to send to the approximately 950 AT&T subscribers with Pennsylvania addresses. *See* **Exhibit 4** at ¶ 7. Additionally, AT&T seeks $1,900.00 to put the notices in the mail, and produce the subpoenaed information. When Plaintiff requested that AT&T send the notice via e-mail as it would entail nominal costs as well as speed up the notice process, AT&T refused.

In short, AT&T's refusal to cooperate makes it an outlier amongst the carriers, who have largely cooperated, and produced the information without the need for court intervention.

## II.   SUBPOENA COMMANDS AT ISSUE

Plaintiff served the following command to AT&T:

- For each of the telephone numbers listed in the attached spreadsheet, please identify the (1) name, (2) mailing address, and (3) email address of the account-holding subscriber to that telephone number between November 1, 2010 and January 31, 2013 by appending additional columns to the attached spreadsheet.
- If a telephone number does not belong to a subscriber or user during the entire November 1, 2010 to January 31, 2013 timeframe, please append an additional column to the spreadsheet stating the date range the telephone number did belong to a subscriber or user.
- If the telephone number of the account-holding subscriber is different than the telephone number identified in the attached spreadsheet, provide the account-holding subscriber's telephone number by appending an additional column to the spreadsheet.
- For each of the telephone numbers listed in the attached spreadsheet, identify the subscriber of the account, and any users, as well as which telephone numbers are associated with each person by appending an additional column to the spreadsheet.

**Exhibits 1-3**.

With respect to the disputes presently at issue regarding application of state laws, AT&T[3] responded as follows:

---

3 The written objections were for each AT&T entity were the identical. *See* **Exhibits 5-7**.

"…to the extent that it seeks documents, the production of which would violate the rights of privacy of third parties under any applicable laws of any relevant jurisdiction, or that such production otherwise is prohibited by law, or is subject to legal requirements for notification of third parties, including without limitation Cal. Pub. Util. Code § 2891, Title 18 PA § 5742, and 11 Del. C. § 2423."

**Exhibits 5-7**.

### III.   LAW AND ANALYSIS

Plaintiff understands that AT&T believes that state law in California, Pennsylvania, and Delaware law may regulate production of subscriber information. Plaintiff submits that the states' law does not govern compliance with the subject *federal* court subpoena.

First, Federal Rule of Evidence 501 requires application of federal law, not state law, to any claim of privilege. There is no federally recognized privilege applicable to the requested information. In fact, Congress has already decided, through the Stored Communications Act (SCA), that the requested information is *not* protected from disclosure. Thus, federal law, which must be applied under Fed. R. Evid. 501, authorizes disclosure. Second, the state laws at issue are further preempted by federal law requiring that notice of class certification be sent directly to all class members who can be identified through reasonable effort (Fed. R. Civ. P. 23(c)) and by federal law requiring compliance with federal subpoenas (Fed. R. Civ. P. 45).

After all, each of the state laws at issue allow production, but if applied as interpreted by AT&T, would stand as an obstacle to accomplishing their purpose in the context of this case, which is to ensure adequate and efficient class notice. Moreover, even *arguendo,* if Fed. R. Evid. 501 did not apply, the express provisions of each state's law shows that AT&T's compliance with a federal subpoena would not run afoul of an order, along the lines of the order this Court issued to Sprint on February 15 (ECF No. 277), compelling production.

#### A.  Federal Law Applies

AT&T's argument that California, Pennsylvania, and Delaware law are applicable to their production of subscriber information is incorrect. AT&T is claiming a *privilege*, which is "a rule that gives a person a right to refuse to disclose information to a tribunal that would otherwise be entitled to demand and make use of that information in performing its assigned function." *Van Nort v. Glen Fair*, 2012 U.S. Dist. LEXIS 128985, *18 (D. Nev. July 18, 2012), *citing* 23 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 5422 (1st ed. 2012); see also

Fed R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]") (emphasis added).

Fed. R. Evid. 501 provides that *federal law* "governs a claim of privilege" in a *federal question* case, stating:

> "The common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege unless any of the following provides otherwise:
> the United States Constitution;
> a federal statute; or
> rules prescribed by the Supreme Court.
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."

Fed. R. Evid. 501. As the only claim in this case is brought under the federal Telephone Consumer Protection Act, 45 U.S.C. §227, federal law, not state law, governs any claim of privilege. The application of federal law is well-settled in the Eleventh Circuit. In *Hancock v. Hobbs*, the Court held:

> Courts that have confronted this issue in the context of the discoverability of evidence have uniformly held that the federal law of privilege governs even where the evidence sought might be relevant to a pendent state claim. *E.g., von Bulow v. von Bulow,* 811 F.2d 136, 141 (2d Cir.1987); *Wm. T. Thompson Co. v. General Nutrition Corp.,* 671 F.2d 100, 104 (3d Cir.1982); *Memorial Hosp. for McHenry County v. Shadur,* 664 F.2d 1058, 1061 n. 3 (7th Cir.1981). We conclude that the generalized rule is persuasive in the context of the admissibility of evidence as well. Not only are rules of privilege generally looked upon with disfavor by the federal courts, *see In re International Horizons, Inc.,* 689 F.2d 996, 1003 (11th Cir.1982), it also would be impractical to apply two different rules of privilege to the same evidence before a single jury. *Accord, Wm. T. Thompson Co.,* 671 F.2d at 104. We therefore hold that the federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question, even if the witness-testimony is relevant to a pendent state law count which may be controlled by a contrary state law of privilege.

*Id.,* 967 F.2d 462, 466-67 (11th Cir. 1992); *DeMartini v. Town of Gulf Stream*, No. 16-81371-CIV, 2017 U.S. Dist. LEXIS 55213, at *4 (S.D. Fla. Apr. 11, 2017) ("The Eleventh Circuit instructs that 'where the court's jurisdiction is premised upon a federal question,' courts should apply 'the federal law of privilege' to both the federal claims and any pendent state law claims." [*citing*

70125

5

*Hancock*, 967 F.2d at 467.] Hence, state privilege rules only govern cases based exclusively on diversity of citizenship."); *EEOC v. Jiudicy, Inc.*, No. 2:09-CV-0163-WCO-SSC, 2011 U.S. Dist. LEXIS 160528, at *9 (N.D. Ga. May 2, 2011) (To the extent that the DOL relies on O.C.G.A. § 34-8-121 to assert a privilege from production of the records requested, the court notes that Fed. R. Evid. 501 provides, with respect to federal claims pursued in federal court, that privileges are determined by federal law.); *Siegmund v. Bian*, No. 16-CV-62506-MORE, 2018 U.S. Dist. LEXIS 130337, at *10 (S.D. Fla. Aug. 1, 2018) (In federal question cases, privileges are determined under federal common law. Fed. R. Evid. 501.); *Absolute Activist Value Master Fund Ltd. v. Devine*, 262 F. Supp. 3d 1312, 1318 (M.D. Fla. 2017) (Federal Rule of Evidence 501 governs the applicability of privileges in federal court.).

Other jurisdictions are in accord. *See Kerr v. U.S. Dist. Court for N. Dist. of California*, 511 F.2d 192, 197 (9th Cir. 1975) ("[I]n federal question cases the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege[.]"); *United States v. Blackman*, 72 F.3d 1418, 1423 (9th Cir. 1995) ("since the adoption of the Federal Rules of Evidence, courts have uniformly held that federal common law of privilege, not state law applies[.]"); *see also Williams v. City of Phila.*, 2014 U.S. Dist. LEXIS 150474, *11-12 (E.D. Pa. Oct. 22, 2014) ("Because federal law supplies the rule of decision in this case, the only bases for Corizon to withhold relevant material are the federal common law of privilege, the U.S. Constitution, federal statute (in this case, HIPAA), or rules prescribed by the Supreme Court.", *citing* Fed. R. Evid. 501.) In other words, federal law expressly preempts state law when it comes to an assertion of privilege in a federal question case. *See Kalinoski v. Evans*, 377 F. Supp. 2d 136, 140-41 (D. D.C. 2005) ("The Supremacy Clause of the United States Constitution (as well as Federal Rule of Evidence 501) prevent a State from directing a federal court with regard to the evidence it may order produced in the adjudication of a federal claim."); *Martinez v. University of Illinois*, 1999 U.S. Dist. LEXIS 12436, *3 (N.D. Ill. 1999) ("Congress preempted the subject of privileges by adopting the generalized language that now constitutes Fed. R. Evid. 501.") (emphasis added); *In re Grand Jury No. 91-1*, 795 F.Supp. 1057, 1058 (D. Colo. 1992) ("federal privilege law preempts a more protective state law."), *citing* Fed. R. Evid. 501.

Several courts interpreting the very laws at issue are in accord. In *Kaur v. City of Lodi*, 2016 U.S. Dist. LEXIS 10348 (E.D. Cal. 2016), the court considered the very California statute at

issue. In applying Fed. R. Evid. 501, *Kaur* rejected the notion that it relieved a subpoena respondent of its obligation to produce subpoenaed telephone records. *Id.* at *3 ("The two state statutes cited to withhold this information do not apply in this federal court litigation."). Similarly, in *Young v. United States*, 149 F.R.D. 199 (S.D. Cal. 1993), the court ruled that a California law protecting tax returns from disclosure was an inapplicable privilege in a federal question case under Rule 501. *Id.* at 201. Likewise, in *Corser v. County of Merced*, 2006 U.S. Dist. LEXIS 65821 (E.D. Cal. 2006), the court denied motion to quash a subpoena for failure to comply with notice requirements under California law because the "California-law privilege…does not apply to this litigation" under Rule 501 of the Federal Rules of Evidence.) *Id.* at *5-8.

Simply put, application of state law to AT&T's claim of privilege is contrary to law in this federal question case. After all, there is no federally-recognized privilege that prohibits a telephone carrier from disclosing customer information in response to a lawful subpoena. Indeed, Congress has already considered whether or not to enact such a privilege and *declined* to do so. The federal Stored Communications Act *expressly permits* telephone companies to disclose subscriber contact information, not including the contents of communications (which Plaintiff has not requested here), "to any person other than a government entity." 18 U.S.C. § 2702(c)(6); *see also Mintz v. Mark Bartelstein & Assocs., Inc.*, 885 F. Supp. 2d 987, 992 (C.D. Cal. 2012) ("The SCA permits AT&T" to make the disclosure).

Thus, federal law *expressly permits* disclosure of the requested subscriber records and recognizes no privilege that could be applied to withhold evidence in a federal case under Fed. R. Evid. 501.[4]

## 1. The Substantive Nature of the State Laws Does not Remove Them from Analysis Under Fed. R. Evid. 501

To the extent that AT&T argues that the substantive nature of any of the states' law provides a basis for withholding evidence makes is unavailing to analysis under Fed. R. Evid. 501.

---

[4] *See also EEOC v. Boston Mkt. Corp.*, 2004 U.S. Dist. LEXIS 27338, *6-8 (E.D.N.Y. 2004) (applying federal statute rather than federal common law under Rule 501 because "Rule 501 provides . . . that evidentiary privileges should be governed by federal common law, only if a relevant rule of law has not been 'otherwise . . . provided by Act of Congress.' In other words, Rule 501 reflects the general principle that courts develop federal common law only 'when Congress has not spoken to a particular issue.'"), citing *City of Milwaukee v. Illinois*, 451 U.S. 304, 313 (1981).

The court in *Gobuty v. Kavanagh*, 141 F.R.D. 136 (D. Minn. 1992) expressly rejected such a distinction:

> "There is nothing in Fed.R.Evid. 501 which requires the court to make a distinction between a state's substantive privilege law and procedural rules designed to implement it. The rule on its face makes no such distinction, and the court sees no reason in law or logic for distinguishing between substantive and procedural aspects of a state's privilege law when applying Federal Rule of Evidence 501."

*Id.* at 138. The reason no such distinction can be made is that virtually all privileges are in fact "substantive in nature." "Rules of privilege are not mere 'housekeeping' rules…Such rules 'affect people's conduct at the stage of primary private activity and should therefore be classified as substantive or quasi-substantive.'" *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 555 (2nd Cir. 1967). Thus, "[f]ederal courts have held that state laws creating a privilege are substantive, and they have followed them in diversity cases." *Palmer v. Fisher*, 228 F.2d 603, 608 (7th Cir. 1955); *Republic Gear Co.*, 381 F.2d at 555 ("Our view that state rules on privilege are substantive for Erie purposes is not only supported by reason but also by the weight of authority"), *citing Baird v. Koerner*, 279 F.2d 623, 632 (9th Cir. 1960); *Garcia v. Progressive Choice Ins. Co.*, 2011 U.S. Dist. LEXIS 105543, *7, (S.D. Cal. 2011) ("In a pure diversity case, such as this case, state law governs interpretation of substantive matters, including privilege.")

Indeed, "the realization that the existence of state privileges created substantive rights was part of the rationale behind the adoption of Fed. R. Evid. 501[.]" *Perry v. Novartis Pharms. Corp.*, 2007 U.S. Dist. LEXIS 104198, *3 (E.D. Penn. 2007). The rule simply codifies what was already required under an *Erie* analysis. As the Third Circuit held in *Samuelson v. Susen*, 576 F.2d 546 (3d Cir. 1978):

> "Prior to the enactment of Rule 501, federal court decisions had determined that in civil actions and proceedings governed by Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), state created privileges conferred substantive rights beyond regulation by federal procedural rules…
>
> The House of Representatives amended the proposed rules to require the application of state privilege law in cases governed by Erie. (It was the House amendment that was eventually enacted into law as Rule 501). The House supported its position with the following contentions: (1) privilege rules are and should continue to be considered substantive for Erie purposes; (2) privilege rules are outcome determinative; (3) where state law supplies the rule of decision, state rules of privilege should be applied because there is no federal interest substantial

> enough to justify departure from state policy; and (4) state policy regarding privilege should not be thwarted merely because of diversity jurisdiction, a situation which, if allowed, would encourage forum shopping. H.R.Rep. No. 650, 93rd Cong., 1st Sess. 9 (1973)."

*Id.* at 549-550. Thus, when Congress enacted Fed. R. Evid. 501, it intended that all state laws that could be asserted as privilege should be analyzed under the rule *because* they were substantive in nature.

Thus, federal courts have repeatedly recognized that state statutes, which, like the statutes at issue here, purportedly prohibit disclosure of information upon criminal penalty, should be analyzed as privileges under Fed. R. Evid. 501 when asserted as a basis to withhold evidence in a federal case. To begin, in *Kaur*, 2016 U.S. Dist. LEXIS 10348, the Eastern District of California considered the very California statute at issue in this case, treated it as a privilege, and, under Fed. R. Evid. 501, determined that it was in applicable in the federal action. *Id.* at *3 ("The two state statutes cited to withhold this information do not apply in this federal court litigation."), *citing* Fed. R. Evid. 501.

Similarly, in *ACLU v. Finch*, 638 F.2d 1336 (5th Cir. 1981), the court considered whether Mississippi officials could refuse to comply with a federal subpoena for the production of records that state law prohibited from disclosure under criminal penalty. *Id.* at 1339, n. 3. In conducting its analysis, the Fifth Circuit "consider[ed] whether Miss. Code Ann. §§ 39-5-61 to -65 (Supp.1977) creates an evidentiary privilege compelling respect by a federal court trying a § 1983 action" under Federal Rule of Evidence 501. *Id.* at 1342. The Court held that "[s]ince the only claims and defenses asserted here relate to federal § 1983 claims,…any privilege created by Miss. Code Ann. §§ 39-5-61 to -65 does not apply in federal court on its own force[.]" *Id.* The court held that the privilege could not be applied in that case because there was no such privilege under federal law and applying the privilege would impose "a cost to the special federal interest in seeking the truth in a federal case." *Id.* at 1343.

Likewise, in *In re Hampers*, 651 F.2d 19 (1st Cir. 1981), the court considered whether the Commissioner of Revenue of Massachusetts could refuse to comply with a federal subpoena for the production of tax return information solely because Massachusetts law strictly prohibited disclosure of the documents and imposed criminal penalties for violation of the state law. *Id.* at 20. In doing so, the Court conducted its analysis under Rule 501 of the Federal Rules of Evidence by

70125

considering whether or not the statute created a privilege that could be recognized under federal common law. *Id.* at 21. The court ruled that federal law already recognized the same privilege because Congress had enacted a similar statute with respect to federal tax documents. *Id.* at 23 ("Being charged as we are under Rule 501 to look to reason and experience in charting a federal evidentiary common law, we think the key has already been forged by the Congress in legislating in 26 U.S.C. § 6103(i)(1)"); *see also Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1060 (7th Cir. 1981) (considering a state law that "classifies the unauthorized disclosure of information obtained in the course of such proceedings as a Class A misdemeanor," referring to the statutory prohibition against disclosure as a "state law privilege," and analyzing is applicability under Fed. R. Evid. 501.)

The Court should conduct the same analysis as these cases. *Kaur* analyzed the precise California statute at issue here, and the statutes at issue in *Finch*, *Hampers*, and *Shadur* were substantially similar – each precludes disclosure upon criminal penalty. Yet in each case, the court analyzed the issue as one of *privilege* under Rule 501, which requires the application of federal privilege law in a federal question case. As shown above, in this case, Congress has already rejected the privilege that AT&T attempts to assert. Unlike the state statutes at issue, the federal Stored Communications Act expressly authorizes respondents to produce the information at issue. Thus, under federal law, there is no privilege that would allow respondents to refuse production.

## 2. Federal Rules of Civil Procedure 23 and 45 also Preempt the State Law

"Pre-emption may be either expressed or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 98 (1992) (Citations omitted). One type of implied preemption, "conflict preemption," occurs "where it is impossible for a private party to comply with both state and federal law and where, under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Atay v. Cnty of Maui*, 842 F.3d 688, 699 (9th Cir. 2016).

The Federal Rules of Civil Procedure require that "*individual* notice" of class certification must be sent "to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Thus, "the Supreme Court has said that direct notice is mandated where contact

information can be obtained through reasonable effort." *Ostrowski v. Amazon.com, Inc.*, 2016 U.S. Dist. LEXIS 126532, *6 (W.D. Wash. 2016), citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-77 (1974).

In this case, it is undisputed that AT&T is able to comply with the subpoena. Indeed, New Cellular has previously provided subscriber information *in this case*, and Sprint – another major carrier comprising a significant portion of the Class, has undertaken responses in compliance with the subpoena. Under a theory that individual notice to consent is needed, there is a conflict between the state law(s) and Fed. R. Civ. P 23(c)(2)(B), which requires individual notice to these persons. Federal law must control. *See Hancock*, 967 F.2d 462, 466-67.

Because certified class actions may impact the rights of the class members, information that might otherwise be subject to privacy concerns is properly utilized in order to send class notice. Thus, Courts have recognized the production even of class member social security numbers "is permitted where plaintiff can demonstrate that names and contact information are insufficient to effectuate notice." *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 129-130 (S.D. N.Y. 2014), citing *Whitehorn v. Wolfgang's Steakhouse*, Inc., 767 F. Supp. 2d 445, 448 (S.D. N.Y. 2011). In this case, Plaintiff seeks only the names, addresses, and email addresses of the class members, as well as user identification in order to identify the Class and send class notice.

*Ostrowski v. Amazon.com, Inc.*, 2016 U.S. Dist. LEXIS 126532 (W.D. Wash. 2016) is instructive. The plaintiff in *Ostrowski* issued subpoenas to various retailers after the court granted preliminary approval of a class action settlement agreement in order to obtain contact information for class members that would be used in order to send class notice. *Id.* at *2-3. One of the respondents, Amazon, objected on the grounds that producing the contact information would violate the class member's privacy rights and Amazon's terms of service, and objected further that production was not necessary because notice could be provided by publication. *Id.* at *4-6. The court overruled these objections, in part, because Rule 23 required direct notice to the individuals that Amazon could identify. *Id.* at 6, *citing Eisen*, 417 U.S. at 175-77.

The state laws at issue are also preempted by Federal Rule Civ. P. 45. Indeed, the court in *Spiegel v. Engagetel*, 2015 U.S. Dist. LEXIS 168344 (N.D. Ill. 2015) ruled that the very California law at issue in this case was preempted by Rule 45, holding:

"In the Enabling Act, codified at 28 U.S.C. § 2072, Congress gave the Supreme

Court the power promulgate the Federal Rules of Civil Procedure. The purpose of the Enabling Act 'was to reverse the philosophy of conformity to local state procedure and establish, with but few specific exceptions, an approach of uniformity within the whole federal judicial trial system.'" *Monarch Ins. Co. of Ohio v. Spach*, 281 F.2d 401, 408 (5th Cir. 1960); *see also Hanna v. Plumer*, 380 U.S. 460, 472, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965) ('One of the shaping purposes of the Federal Rules is to bring about uniformity in the federal courts by getting away from local rules'). Reading Section 2891 in the way that Verizon suggests would essentially excuse all telephone companies from ever having to comply with a third party subpoena relating to their California subscribers. This would stand as a significant obstacle to the accomplishment and execution of the full purposes of Congress in passing the Enabling Act — namely, uniformity of federal procedure — by creating a California-only exception to the duties of parties that receive subpoenas pursuant to Rule 45(e). *Id.* at *8-9.

The decision in *SEC v. Pacific Bell*, 704 F. Supp. 11 (D.D.C. 1989), is also instructive. In that case, the court ruled that the very California law provision at issue in this case, which purportedly requires customer consent for the disclosure of basic telephone subscriber information, was preempted by federal securities laws, which do not require either customer notice or consent for the proper issuance of a subpoena, because it "would stymie the accomplishment and execution of the full purposes and objectives of Congress in delegating broad investigatory duties to the Commission." *Id.* at 15. The Court should reach the same conclusion of preemption, because application of the law "would stymie the accomplishment and execution of the full purposes and objectives" of both Rule 23 to provide direct notice to the class and in Rule 45 for bringing uniformity to federal subpoena procedures.

### B. The State Laws Do Not Preclude Compliance in any Case

As set forth in this Court's Order for production from Sprint, which was consented by both Sprint and Defendants, even under state law[5] production is permissible. *See* ECF No. 277. Thus, the Court should grant this motion to compel even if it finds that federal law does not control AT&T's claim of privilege.

#### 1. California

Plaintiff understands that AT&T believes California Public Utility Code § 2891 regulates its production of subscriber information. That provision states that "no telephone or telegraph corporation shall make available to any other person or corporation, without first obtaining the

---

5 The motion requested an Order for only California and Pennsylvania.

residential subscriber's consent," certain types of information, including "demographic information about individual residential subscribers." *Cal. Pub. Util. Code.* § 2891(a)(4).

Yet § 2894 allows for the production of this information "in good faith compliance with the terms of a state or federal court warrant or order[.]" *Cal. Pub. Util. Code.* § 2891(a)(4); *see also Kaur v. City of Lodi*, 2016 U.S. Dist. LEXIS 10348, *4 (E.D. Cal. 2016) ("section 2894 of the utilities code provides an exception to this rule for court orders") (*quoting McArdle v. AT & T Mobility LLC*, 2010 U.S. Dist. LEXIS 47009, *15-16 (N.D. Cal. 2010); *Kamalu v. Walmart Stores, Inc.*, 2013 U.S. Dist. LEXIS 116590 at *17 (E.D. Cal. 2013) ("The Court finds that section 2891 does not preclude the production of information in response to the subpoena for production of documents."). Accordingly, California law does not preclude AT&T's production of the subpoenaed information.

Further, even if California law might be read to preclude production, compliance with the subpoena would still be required because Rule 45 of the Federal Rules of Civil Procedure preempts § 2891 pursuant to the Supremacy Clause of the Constitution. *See Spiegel v. Engagetel*, 2015 U.S. Dist. LEXIS 168344, *5-14 (N.D. Ill. Dec. 16, 2015 ("Rule 45 preempts Section 2891"); *SEC v. Pacific Bell*, 704 F.Supp. 11, *16 (D.D.C. 1989) ("under the Supremacy Clause of the United States Constitution § 2891 of the CPUC is preempted by federal securities laws and is not applicable to process served pursuant to those laws."); *Pearson v. Miller*, 211 F.3d 57, 73-74 (3rd Cir. 2000) ("Because the District Court placed conditions upon discovery pursuant to inapplicable Pennsylvania law, we will direct the District Court to modify its discovery order to remove any conditions that were imposed solely to conform to state law."); *Snierson v. Chemical Bank*, 108 F.R.D. 159, 162 (D. Del. 1985) ("state privileges do not preclude discovery of relevant information in a federal court suit."); *In re Transbrasil S.A. Linhas Aereas*, 2014 Bankr. LEXIS 1891 (Bankr. S.D. Fla. 2014) ("State law rights of privacy, even where enshrined in a state constitution, must yield to a federal subpoena").

### 2. Delaware

Delaware law also expressly allows for disclosure pursuant to a court order. The Delaware code provides:

"Except as provided in this subdivision, a provider of electronic communications service or remote computing service may not disclose a record or other information

70125

pertaining to a subscriber or customer of the service to any person other than an investigative or law-enforcement officer."

11 Del. C. § 2423(c)(2).

Just like the California law, the same section of the Delaware law goes on to provide:

"Nothing in this chapter may be construed as creating a cause of action against any provider of electronic communication service or remote computing service, such service's officers, employees, or agents or other specified persons for providing information, facilities or assistance *in accordance with the terms of a court order*, warrant, subpoena or certification under this chapter."

11 Del. C. § 2423(e). Thus, the express terms of the Delaware law at issue do not preclude production upon entry of a Court order.

### 3. Pennsylvania

Finally, Pennsylvania also expressly allows production "as authorized by federal law." The Pennsylvania Wiretapping and Electronic Surveillance Control Act provides in relevant part:

"A person or entity may divulge a record or other information pertaining to a subscriber to, or customer of, the service if *any* of the following paragraphs apply:

(2) A record or other information may be divulged to any of the following:
    (i) An investigative or law enforcement official as authorized in section 5743.
    (ii) The subscriber or customer upon request.
    (iii) A third party, upon receipt from the requester of adequate proof of lawful consent from the subscriber to, or customer of, the service to release the information to the third party.
    (iv) A party to a legal proceeding, upon receipt from the party of a <u>court</u> order entered under subsection (c.1).[6] This subparagraph does not apply to an investigative or law enforcement official authorized under section 5743.

(4) Subject to paragraph (2), a record or other information may be divulged as authorized by Federal law or as authorized by a Federal regulatory agency having

---

6 Subsection c.1, in turn, sets numerous limitations on a court's ability to enter such an order:
    "(1) An order to divulge a record or other information pertaining to a subscriber or customer under subsection (c)(2)(iv) must be approved by a *court* presiding over the proceeding in which a party seeks the record or other information.
    (2) The order may be issued only after the subscriber or customer received notice from the party seeking the record or other information and was given an opportunity to be heard;
    (4) An order for disclosure of a record or other information shall be issued only if the party seeking disclosure demonstrates specific and articulable facts to show that there are reasonable grounds to believe that the record or other information sought is relevant and material to the proceeding. In making its determination, the *court* shall consider the totality of the circumstances, including input of the subscriber or customer, if any, and the likely impact of the provider."

18 Pa.C.S.A. § 5742(c.1) (emphasis added).

oversight over the person or entity."

18 Pa. C.S.A. §5742(c). Paragraph (4) thus expressly permits disclosure in federal court "as authorized by federal law." Yet, with respect to the AT&T customers with address in Pennsylvania, AT&T apparently contends that even if this court were to order AT&T's production "as authorized by federal law," it could not lawfully do so unless Pennsylvania subscribers were first given notice and an opportunity to object under subsection c.1. AT&T's reading of the statute would render paragraph (4) completely superfluous. There would be no reason to include a separate paragraph (4) authorizing disclosure under federal law if every requirement of paragraph (2) still had to be satisfied even in a federal court. . Thus, the express language of the statute does not support AT&T's interpretation.

AT&T relies on only one out-of-circuit order in *Lee v. Global*Tel,* Case No. 2:15-cv-2495, ECF No. 184 (C.D. Cal. 2017) (attached as **Exhibit 8**). Plaintiff respectfully submits that the outlier *Lee* opinion is contrary to applicable law on this point.

More importantly, even if AT&T is right about the meaning of the Pennsylvania law, Pennsylvania law does not control in this case for the reasons argued above. However, to the extent that this Court orders that Pennsylvania law controls, and further that Pennsylvania law requires that subscribers be given the opportunity to object before AT&T produces their information for the purpose of class notice, it should allow the class administrator, KCC, to deliver that notice in a single e-mail that combines notice that provides notice of class certification and of the (alleged) right of PA subscribers to object. The court approved a similar process in *Kelly v. Verizon Pennsylvania, LLC*, 16-cv-5672 (E.D. PA). Plaintiff understands that AT&T wishes to provide and the notice and process any objections itself, but AT&T is not the class administrator, and it does not bear the obligations and loyalty to the class that the class administrator does under this Court's orders. Moreover, such a process would be unworkable in this case because information sought is not limited to identifying information for Class members, but also information to allow persons who must be excluded pursuant to the Class definition to be identified and properly excluded. The class administrator is already bound to undertake this analysis; AT&T is not in a position to do so.

## IV.    CONCLUSION

As set forth herein, Plaintiff respectfully moves the Court to compel AT&T to comply with

70125

the subpoena.

## CERTIFICATE OF CONFERRAL IN COMPLIANCE WITH L.R. 7.1(a)(3)

Plaintiff has conferred with the affected party to the relief requested herein, AT&T. AT&T

opposes this motion.

Dated: March 27, 2019                               Respectfully submitted,

                                                    s/ *Keith J. Keogh*
                                                    Keith J. Keogh
                                                    Amy L. Wells, *pro hac vice*
                                                    Keogh Law, LTD.
                                                    55 W. Monroe St., Ste. 3390
                                                    Chicago, IL 60603
                                                    312.374.3401 (Direct)
                                                    312.726.1092 (Main)
                                                    312.726.1092 (Fax)
                                                    AWells@Keoghlaw.com
                                                    Keith@Keoghlaw.com

                                                    Scott D. Owens
                                                    SCOTT D. OWENS, PA.
                                                    3800 S. Ocean Dr., Ste. 235
                                                    Hollywood, FL 33019
                                                    Phone: 954-589-0588
                                                    Fax: 954-337-0666
                                                    Email: Scott@ScottDOwens.com

                                                    *Counsel for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF and served upon Counsel for AT&T via electronic mail.

                                          By: s/ *Keith J. Keogh*
                                              Keith J. Keogh

70125

16