IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| BRIAN KEIM, an individual, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 9:12-cv-80577 ) |
| v. | ) Hon. Judge Kenneth A. Marra ) |
| ADF MIDATLANTIC, LLC, a foreign limited liability company, AMERICAN HUTS INC., a foreign corporation, ADF PIZZA I, LLC, a foreign limited liability company, ADF PA, LLC, a foreign limited liability company, and PIZZA HUT, INC., a foreign corporation | ) Magistrate Judge William Matthewman ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS' MOTION TO COMPEL**
**PLAINTIFF'S PRODUCTION OF CARRIER SUBPOENA COMMUNICATIONS**

David S. Almeida, Esq. (admitted *pro hac vice*)
dalmeida@beneschlaw.com
Mark S. Eisen, Esq. (admitted *pro hac vice*)
meisen@beneschlaw.com
**BENESCH, FRIEDLANDER,**
**COPLAN & ARONOFF LLP**
333 West Wacker Drive, Suite 1900
Chicago, Illinois 60606
Telephone: (312) 212-4949
Facsimile: (312) 767-9192

Jordan S. Kosches, Esq.
jordan.kosches@gray-robinson.com
**GRAYROBINSON, P.A.**
333 SE 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6997
Florida Bar No.: 49881

*Counsel for Defendants*

## PRELIMINARY STATEMENT

On December 4, 2018, this Court certified Plaintiff's class based on, in part, his counsel's representation that they could identify subscribers and customary users of the cell phone numbers at issue simply by serving subpoenas on the various phone carriers (which Plaintiff posited would take three months). Following now four months of carrier subpoenas, it is clear that this proposed plan to ascertain class members is not nearly as feasible as Plaintiff self-servingly contended. Setting aside for a moment the carriers' document retention practices, the carriers are not able to identify customary users because, among other things, Plaintiffs' counsel never defined that ambiguous term in his subpoena. Accordingly, it is perhaps not surprising that Plaintiff's counsel is engaging in myriad meet and confers with carriers to discuss a variety of objections, including the fact that Plaintiff sought "user" data, but did not define the term. Despite the clear relevance of those "meet and confer" communications to this case, Plaintiff's counsel has steadfastly refused to provide *any* of these plainly non-privileged communications to Defendants.

Plaintiff cannot be permitted to operate in the dark in an attempt to identify class members and to provide one-sided and delayed information to Defendants and this Court. Plaintiff's counsel has admittedly held multiple meet and confers with carriers like AT&T to work through objections, including over the interpretation of "user." Carriers like Sprint and U.S. Cellular have omitted hundreds of phone numbers from their responses and it is unclear whether they were able to produce any "user" data. Carriers like Verizon and T-Mobile have still not responded.

Plaintiff should be ordered to immediately turn over the communications his counsel have had with the carriers. These communications are critical to evaluate the nature of whether and to what extent the carriers will produce information. These communications pertain to key issues of ascertainability and commonality—namely, (i) whether carriers retain subscriber data dating to 2011, (ii) whether carriers retain data pertaining to "users," and (iii) the feasibility of obtaining the data to excise subscriber-forwarded numbers. This information is critical in establishing class membership and at trial. For example, Plaintiff's counsel confirmed that they had provided their own interpretation of "users" to AT&T, but declined to provide that interpretation to counsel for Defendants. Whether Plaintiff's counsel's definition—which appears nowhere in the subpoena itself—is legally accurate needs to be evaluated by this Court and Defendants. Likewise, communications with carriers like Sprint and U.S. Cellular will likely explain why hundreds of numbers were not provided in their production (*i.e.*, because data is missing for prepaid carriers).

There is absolutely no legal basis for Plaintiff to withhold his counsel's communications with the carriers from this Court and Defendants. Without understanding what the context for what the carriers are withholding—let alone what they have been told by Plaintiff's counsel—neither this Court nor Defendants can understand what the carriers actually produced. Plaintiff, in turn, will then be enabled to put forward an unchallengable list of persons and deem this list the class, depriving the Court and Defendants of any opportunity to address class membership.

## BACKGROUND

### I.  PLAINTIFF IS MISSING SIGNIFICANT SUBPOENA DATA.

On December 19, 2018, Plaintiff issued his first set of carrier subpoenas. (*See* DE 273-1.) Through these subpoenas, Plaintiff sought information pertaining to 12,465 phone numbers—*approximately 600 fewer than in the class*. (*Id.*)  On February 7, 2019, Plaintiff issued a second set of subpoenas to the carriers, ostensibly fixing errors in the first set and addressing objections. (*See* DE 280-1.)  Through these subpoenas, Plaintiff sought information pertaining to fewer than 12,600 phone numbers—*about 500 fewer than in the class*. (*Id.*)

On March 7, 2019, Plaintiff moved to extend case deadlines due to the fact that he had not received the overwhelming majority of class data from the carriers (indeed, he had only received *partial* responses from Sprint and U.S. Cellular). (DE 282.)  Plaintiff represented that (i) Verizon has yet to produce *any* data due to a purported computer glitch and (ii) AT&T had not yet produced any information due to issues surrounding producing information relating to Pennsylvania residents. (*Id.* at 3-4.)  On March 27, 2019, Plaintiff filed a motion to compel AT&T's response to Plaintiff's subpoena. (DE 288.)  Plaintiff attached no meet and confer correspondence, but represented that "***only AT&T*** has refused to" respond to the subpoena. (*Id.* at 2, emphasis added.)

Plaintiff's representations to this Court regarding the status of the carrier subpoenas is misleading, to put it mildly. AT&T is not the only carrier that has failed to respond. T-Mobile and Verizon, which together account for over 40% of the class, have still <u>produced no data</u>. (*See* Declaration of Mark Eisen ["Eisen Decl."] ¶ 5.)  Plaintiff ignores T-Mobile entirely in his motion to compel, and states only that Verizon has been "cooperative." (DE 288 at 2.)  Plaintiff has not so much as explained when responses are anticipated. Other carriers, like Sprint and U.S. Cellular—which account for 20% of the class—have responded in small part. (Eisen Decl. ¶¶ 6, 7.)  Both produced hundreds fewer phone numbers than class members using those carriers. (*Id.*)

## II. THE "USER" ISSUE.

In granting class certification, this Court relied on Plaintiff's representation that he could identify non-subscribing customary users via carrier subpoena. (*See* DE 259 at 14.) To that end, Plaintiff's subpoenas sought "user" data (at least in part) from the carriers. (*See* Eisen Decl. ¶ 3.) Plaintiff's subpoenas did not, however, define what a "user" was. Numerous carriers, including AT&T, objected on the basis that it "has no way of knowing the identity of all persons who may have been 'users' of a listed telephone number." (*See id.* ¶ 4.)

On April 3, 2019, in the meet and confer regarding this motion, Plaintiff's counsel confirmed that she had conferred with AT&T regarding what "user" meant, but declined to specify for Defendants how she had so defined that term. (*See id.* ¶ 8.)

## III. PLAINTIFF IS DELAYING IN PROVIDING CARRIER INFORMATION.

Finally, it bears noting that to the extent Plaintiff has provided Defendants carrier responses, they come as late as three weeks after Plaintiff received the response, leaving Defendants without key information to address pending motions and to question whether Plaintiff is providing Defendants timely and complete data to Defendants. (*See id.* ¶ 9.)

## DISCUSSION

Plaintiff cannot be permitted to proceed in the dark. Without understanding what the carriers have agreed to do—or have represented that they cannot do—and without understanding what Plaintiff's counsel has explained to the carriers (*i.e.*, regarding who "users" are), neither this Court nor Defendants can evaluate the success or lack thereof of Plaintiff's subpoenas. This Court should compel Plaintiff to immediately produce any and all carrier objections for three reasons.

<u>First</u>, courts have "a continuing obligation to monitor class actions and to decertify if necessary." *Keim v. ADF MidAtlantic, LLC*, 328 F.R.D. 668 (S.D. Fla. 2018) (quoting *Manno v. Healthcare Revenue Recovery, LLC*, 289 F.R.D. 674, 695 (S.D. Fla. 2013)); *Espinoza v. Galardi S. Enterprises*, No. 14-21244, 2016 WL 127586, at *11 (S.D. Fla. Jan. 11, 2016) ("[T]his Court, which has a continuing obligation to monitor class actions, may decertify the class if necessary."); *cf. Shin v. Cobb Cty. Bd. of Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001) ("[T]he district court retains the ability, and perhaps even a duty, to alter or amend a certification decision . . . .").

Plaintiff has issued dozens of subpoenas, seeking class member data (less than 12,600 numbers) that cannot be reconciled with the class member figure identified by Plaintiff (13,046). (*See* DE 274 at 3.) As it is, Plaintiff has failed to seek customary user data from the carriers for

3

over 60% of the class. (*See* DE 280.) Plaintiff failed to define "user" in his subpoenas and now refuses to explain the status of his meet and confer with AT&T (and potentially others) over how they are defining that term, insulating Plaintiff's counsel from any dispute over the validity their unilateral definition. (*See* Eisen Decl. ¶ 8.) Plaintiff also fails to explain (i) the status of his meet and confer with Verizon and (ii) whether any data is coming from T-Mobile. Finally, it is apparent Plaintiff is delaying unnecessarily in producing crucial objections to Defendants. (*Id.* ¶ 9.)

The nature and content of Plaintiff's counsel's communications with the carriers are crucial to this Court's continuing obligation to oversee the class. Without knowing (i) what Plaintiff's counsel is communicating to the carriers and (ii) what carriers are unable or unwilling to produce, this Court cannot evaluate the merits of Plaintiff's subpoena efforts (which are already wanting). It is unclear how, for example, Plaintiff's counsel is explaining to AT&T what "users" are, let alone if this explanation is legally accurate. The FCC provided a broad definition, including a wide range of persons based on their relationship to the subscriber. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8001 (2015) Furthermore, if, as Plaintiff suggests, the only issue standing in the way of a production from Verizon is a technical difficulty, Plaintiff should have no problem providing the communications to support that assertion. This Court cannot monitor Plaintiff's class if Plaintiff withholds the carrier communications indicating exactly what he will and will not be receiving from the carriers and instead supplanting those communications with declarations from Plaintiff's counsel.

Second, Defendants have a due process right to challenge class membership. *See, e.g.*, *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 949 (11th Cir. 2015) (noting defendants' due process right to challenge class membership); *Guarisma v. Hyatt Equities, LLC*, No. 1:17-CV-20931-UU, 2017 WL 6949266, at *7 (S.D. Fla. Sept. 28, 2017) (same); *Wilson v. Badcock Home Furniture*, No. 817CV02739T02AAS, 2018 WL 6660029, at *4 (M.D. Fla. Dec. 19, 2018) (same).

Defendants cannot exercise their right to challenge membership in a vacuum. Plaintiff's counsel's communications with the carriers will indicate what is being produced, what is being withheld, what information no longer or never existed, if and why data is being withheld and possibly the scope of what the carriers maintain. The communications will likewise shed light on how Plaintiff's counsel is defining "user" to address carrier objections. Plaintiff cannot simply present a list of persons they claim are class members and withhold any context for that list, leaving Defendants without any means to address class membership.

4

By way of example, Plaintiff provided Defendants spreadsheets purporting to be Sprint's and U.S. Cellular's subpoena responses. The spreadsheets include data pertaining to about 1,800 numbers. According to Plaintiff's expert, Sprint (including its Boost, Virgin and Nextel brands) and U.S. Cellular account for over 3,100 numbers in the class. (*See* Eisen Decl. ¶¶ 6, 7.) There is no apparent explanation for this shortfall. Sprint's communications may shed light crucial for Defendants to exercise their due process rights and understand what was not produced. U.S. Cellular, in turn, provided data regarding approximately 50 phone numbers, about 10% of the total represented by Plaintiff's expert, and there is no context for this shortfall. (*See id*.) Plaintiff is also routinely producing carrier objections weeks after receiving the objections. (*See id.* ¶ 8.) Defendants cannot adequately address Plaintiff's purported class members without information explaining what was and was not produced and how Plaintiff's counsel is defining "users" for purposes of their subpoenas, let alone without a timely production of the responses and objections.

And third, Rule 26(e)(1) "imposes on parties a continuing obligation to supplement their discovery disclosures 'in a timely manner.'" *Beasley v. 500 Finishes Corp.*, No. 2:17-CV-92-WKW, 2018 WL 3848815, at *6 (M.D. Ala. Aug. 13, 2018); *see also* Fed. R. Civ. P. 26(e)(1); *Arugu v. City of Plantation*, No. 09-61618-CIV, 2010 WL 11520179, at *8 (S.D. Fla. July 15, 2010) (detailing the continuing obligation to supplement responses).

In the first set of requests for production issued by American Huts, Inc., Request No. 39 requests that Plaintiff "produce all documents obtained from third-parties relating to this Action." (*See* Eisen Decl. ¶ 10.) Plaintiff made no objection to this request, and now cannot do so. *See, e.g.*, *Vaughn v. 21st Century Sec. Ins. Co*., No. 12-410, 2013 WL 12106200, at *1 (N.D. Fla. Oct. 9, 2013). Communications from carriers in response to subpoenas relating to members of the Class undoubtedly fall within this request. And, though Rule 26(e)(1) only imposes a "timely manner" requirement, that time has come and gone in the weeks since Plaintiff began meeting and conferring with the carriers. Plaintiff should produce these documents immediately.

Both this Court and Defendants need to evaluate the carrier objections Plaintiff has received. Conversely, Plaintiff has neither explained—nor has a viable basis for—his refusal to produce these communications. This Court should therefore compel Plaintiff's production.

## CONCLUSION

Defendants respectfully request this Court (i) compel Plaintiff to produce the carrier objections and (ii) award all relief deemed equitable and just.

5

## FRCP 37 AND LOCAL RULE 7.1 CERTIFICATION

The undersigned hereby certifies, pursuant to Federal Rule of Civil Procedure 37(a), Local Rule 7.1(a)(3) and this Court's standing order, that counsel for Defendants reached out to counsel for Plaintiff via email on March 14, 15 and 18, 2019 and April 3, 2019. On Wednesday, April 3, 2019, counsel for Defendants and counsel for Plaintiff had a telephonic meet and confer. The Parties were not able to reach an agreement on the relief sought in this motion.

DATED:  April 11, 2019 	Respectfully submitted,

	/s/ David S. Almeida

	David S. Almeida, Esq. (admitted *pro hac vice*)
	dalmeida@beneschlaw.com
	Mark S. Eisen, Esq. (admitted *pro hac vice*)
	meisen@beneschlaw.com
	**BENESCH, FRIEDLANDER,**
	**COPLAN & ARONOFF LLP**
	333 West Wacker Drive, Suite 1900
	Chicago, Illinois  60606
	Telephone:  (312) 212-4949
	Facsimile:  (312) 767-9192

	Jordan S. Kosches, Esq.
	jordan.kosches@gray-robinson.com
	**GRAYROBINSON, P.A.**
	333 SE 2nd Avenue, Suite 3200
	Miami, Florida 33131
	Telephone: (305) 416-6880
	Facsimile: (305) 416-6997
	Florida Bar No.: 49881

	*Counsel for Defendants*

2

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing **DEFENDANTS' MOTION TO COMPEL PLAINTIFF'S PRODUCTION OF CARRIER SUBPOENA COMMUNICATIONS** was served upon all interested parties using this Court's ECF filing system this 11th day of April, 2019.

*/s/ Jordan S. Kosches*

2