UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-CV-80577-MARRA/MATTHEWMAN

BRIAN KEIM, an individual, on behalf of
himself and all others similarly situated,

    Plaintiff,

vs.

ADF MIDATLANTIC, LLC, a foreign
corporation, et al.,

    Defendants.
_____/

FILED BY ____ D.C.
MAY 30 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## ORDER GRANTING DEFENDANTS' MOTION TO COMPEL PLAINTIFF'S PRODUCTION OF CARRIER SUBPOENA COMMUNICATIONS [DE 299]

**THIS CAUSE** is before the Court upon Defendants, ADF Midatlantic, Inc, American Huts, Inc., ADF Pizza I, LLC, ADF PA, LLC, and Pizza Hut, Inc.'s ("Defendants") Motion to Compel Plaintiff's Production of Carrier Subpoena Communications [DE 299]. This matter was referred to the undersigned upon an Order referring all discovery matters to the undersigned for appropriate disposition. *See* DE 65. Plaintiff Brian Keim ("Plaintiff") has filed a Response [DE 301], and Defendants have filed a Reply. [DE 302]. The Court held a hearing on the Motion on May 9, 2019. The Court has also carefully conducted an *in camera* review of numerous emails between Plaintiff's counsel and counsel for the non-party telephone carriers regarding the subpoenas to the telephone carriers that are at issue in Motion to Compel. The matter is now ripe for review.

1

## I. BACKGROUND

This discovery dispute involves Defendants' demand that Plaintiff produce to Defendants Plaintiff's counsel's email communications with counsel for the non-party telephone carriers AT&T, Sprint, US Cellular, Verizon, and T-Mobile ("the carriers") regarding the subpoenas that Plaintiff had issued to various phone carriers to identify subscribers and customary users of the cell phone numbers at issue in this case. Plaintiff issued his first set of subpoenas to telephone carriers on December 19, 2018, seeking information pertaining to 12,465 phone numbers, approximately 600 fewer numbers than alleged in the class. [DE 273-1.]. On February 7, 2019, Plaintiff issued a second set of subpoenas to the carriers, replacing the first set of subpoenas and fixing errors in the first set and addressing the carriers' objections. [DE 280-1]. The amended subpoenas sought information pertaining to fewer than 12,600 phone numbers, approximately 500 fewer numbers than alleged in the class.

Defendants allege that Plaintiff's counsel has had to engage in multiple conferrals with counsel for the subpoenaed non-parties regarding the scope of the subpoenas to the telephone carriers. Because those conferrals have resulted in the modification and narrowing of the subpoenas, Defendants allege that they should be permitted to review the emails in order to "evaluate the nature of whether and to what extent the carriers will produce information." [DE 299, pg. 2]. In response, Plaintiff claims he has already produced to Defendants all carrier objections and class data that Plaintiff has received from the carriers and argues that the communications between Plaintiff's counsel and counsel for the carriers are protected by the work-product privilege. [DE 301, pg. 1].

## II. MOTION TO COMPEL, RESPONSE, AND REPLY

### a. Defendants' Motion

In their Motion [DE 299], Defendants ask the Court to order Plaintiff to produce to Defendants the carrier communications because the communications pertain to three key issues of ascertainability and commonality: 1) whether carriers retain subscriber data dating to 2011, 2) whether carriers retain data pertaining to "users", and 3) the feasibility of obtaining the data to excise subscriber-forwarded numbers. [DE 299, pg. 2]. Specifically, Defendants are seeking information pertaining to Plaintiff's definition of the term "user" provided to AT&T, and explanations as to why hundreds of numbers sought by Plaintiff were not provided by the carriers. Defendants argue that the Court has a continuing obligation to monitor class actions and to decertify the class if necessary, and the Court cannot accomplish this without production of the carrier communications. [DE 299, pg. 5]. The carrier communications are essential to demonstrate Plaintiff's definition of user, and to support Plaintiff's explanations of delay and difficulties on behalf of the carriers. *Id.* Defendants also argue that they are unable to properly challenge class membership without the communications, because the communications have modified the scope of the subpoenas and provide context to the subpoena responses. [DE 299, pg. 6]. Finally, Defendants argue that Rule 26(e)(1) imposes on Plaintiff a continuing obligation to supplement his discovery disclosures in a timely manner. [DE 299, pg. 6]. Defendants claim that since they have issued Request for Production 39 to Plaintiff, which seeks "all documents obtained from third-parties relating to this Action," Plaintiff must produce the communications.

### b. Plaintiff's Response

In Plaintiff's Response [DE 301], Plaintiff argues that he has shared all objections and calling records he has received from the telephone carriers with Defendants [DE 301, pg. 3] and that

3

Plaintiff's counsels' email communications with the carriers are protected by the work-product privilege. [DE 301, pg. 1]. Plaintiff also refutes Defendants' contention that the email communications are third party documents as requested by Defendants in their Request for Production #39 and argues that even if the emails were subject to the prior discovery requests dating back to 2012, Plaintiff should not be limited in his capacity to object to this production. *Id.* Plaintiff claims that the emails constitute opinion work product because the emails reflect Plaintiff's counsel's mental impressions, conclusions, opinions, or legal theories. [DE 301, pg. 4].

### c. Defendants' Reply

Defendants filed a Reply at DE 302, in which Defendants address Plaintiff's assertion that the emails are protected work product. Defendants maintain that Plaintiff has failed to meet his burden of demonstrating that the work-product privilege applies to the emails. Defendants point out that emails are *not* comparable to witness interviews or notes but instead contain modifications to subpoenas, which are public matters that the Court must oversee and approve. [DE 302, pg. 4].

Defendants first argue that because Federal Rule of Civil Procedure 45(a)(4) requires pre-service notice of a subpoena to all parties, communications with a third party that effectuate changes in the subpoena should require notice to all parties. Second, Defendants argue that Plaintiff's assertion of the work-product privilege would improperly render the carriers' emails as work-product. Defendants also argue that, even if the emails are work product, the work-product protection is waived when protected materials are "disclosed in a way that substantially increases the opportunity for potential adversaries to obtain the information." [DE 302, pg. 4]. Finally, Defendants assert that without the information contained in the communications, Defendants are unable to inquire into the missing data from "thousands of class members." [DE 302, pg. 6].

## III. *IN CAMERA* REVIEW

At the May 9, 2019 hearing, the Court ordered the *ex parte* submission to the Court for *in camera* review of the emails between Plaintiff's counsel and counsel for the telephone carriers regarding the subpoenas to the telephone carriers that are at issue in Motion to Compel. The Court took this step to ensure that it was fully informed and made aware of the content of the emails at issue in the pending motion. The Court directed Plaintiff to submit the emails at issue. Plaintiff complied and submitted the emails on Monday, May 13, 2019. The Court has carefully reviewed the emails which are at the center of this discovery dispute.

## IV. ANALYSIS

### A. Work-Product Doctrine

Plaintiff argues that the withheld emails are protected by the work-product doctrine. The Court notes that the only privilege Plaintiff has asserted in the instant dispute is the work-product privilege. As this is a federal diversity action, federal law governs work-product doctrine issues. *Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc.*, No. 13–23881–CIV, 2014 WL 5305581, at *2 (S.D. Fla. Oct. 15, 2014); *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-81397-CIV, 2015 WL 9257019, at *3 (S.D. Fla. Dec. 18, 2015). Federal Rule of Civil Procedure 26(b)(3), which sets forth the work-product doctrine, states in relevant part:

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>     1. They are otherwise discoverable under Rule 26(b)(1); and
>     2. The party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
> (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

5

Fed. R. Civ. P. 26(b)(3).

"The work product doctrine protects from disclosure materials prepared in anticipation of litigation by or for a party or that party's representative (including its attorney)." *Auto Owners Ins. Co.*, 135 F.R.D. at 201 (*citing In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir. 1 979); Fed. R. Civ. P. 26(b)(3)). The doctrine protects "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). Courts generally agree that work product protection should be determined on a case-by-case basis. *See Auto Owners Ins. Co.*, 135 F.R.D. at 202 (*citations omitted*); *Pete Rinaldi's Fast Foods, Inc. v. Great Amer. Ins. Cos.*, 123 F.R.D. 198, 202 (M.D.N.C. 1998); *Chambers v. Allstate Ins. Co.,* 206 F.R.D. 579, 585 (S.D. W. Va. 2002)).

Rule 26(b)(3) establishes two tiers of protection: first, work product prepared in anticipation of litigation by an attorney or her agent is discoverable only upon a showing of need and hardship; and second, "core" or "opinion" work product that encompasses the "mental impressions, conclusions, opinion, legal theories of an attorney or other representative of a party concerning the litigation" is "generally afforded near absolute protection from discovery." *Kahn v. United States*, No. 13-24366-CIV, 2015 WL 4112081, at *4 (S.D. Fla. July 8, 2015) (citing *In re Cendant Corp. Sec. Litig.,* 343 F.3d 658 (3d Cir.2003) (citing Fed. R. Civ. P. 26(b)(3) and *In re Ford Motor Co.,* 110 F.3d 954, 962 n. 7 (3d Cir.1997)).

### B. Whether the Telephone Carrier Communications are Protected by Work-Product Privilege

This case concerns whether, in a class action proceeding, emails between a plaintiff's attorneys and the attorneys of non-party and disinterested witnesses (carriers) whose documents have been subpoenaed are protected under the opinion work-product privilege. Although this

appears to be an issue of first impression in this circuit, the Honorable Colleen McMahon, United States District Judge, considered similar circumstances in *Ricoh Co. v. Aeroflex Inc.*, 219 F.R.D. 66, 67 (S.D.N.Y. 2003). In that case, Judge McMahon found that the emails between an employee of the subpoenaed non-party and counsel for defendants ultimately fell into two categories. The first category included emails that were sent by the non-party to defendants' counsel; and the second category included emails that were sent by defendants' counsel to the non-party.

Judge McMahon determined that the first category of documents, emails sent by the non-party to defendants' counsel, were not protected by the work-product privilege because there is no confidential relationship between the senders (the subpoenaed non-parties) and the recipient (defendants' counsel). *Ricoh*, 219 F.R.D. at 69. As to the second category of documents, Judge McMahon found that some of the emails sent by defendants' counsel to the subpoenaed non-party were potentially protected work product to the extent that "the e-mails reflect counsel's strategy for establishing an affirmative defense as [to] Defendants claim."[1] *Id.* at 70. However, Judge McMahon determined that whether the emails contained work product was a moot issue, because defendants' counsel "waived the privilege by sharing his views or questions with Darringer, an employee of a non-party witness." *Id.*

The Court finds Judge McMahon's logic persuasive. As in *Ricoh*, the emails in the instant case between counsel for the telephone carriers and Plaintiff's counsel ultimately fall into two categories: first, emails that were sent by various counsel for the carriers at issue to Plaintiff's counsel, Keith Keogh and Amy Wells; and second, emails that were sent by Plaintiff's counsel to counsel for the carriers. The Court will now analyze the two categories of documents at issue in this case.

---

[1] Judge McMahon further stated: "I have no way of knowing whether the e-mails contain work product, since no one has seen fit to send them to me for inspection." *Ricoh*, 219 F.R.D. at 70.

7

### C. Whether the Emails Sent by the Carriers' Counsel to Plaintiff's counsel are Protected Work Product

As in *Ricoh*, emails sent by the carriers' counsel to Plaintiff's counsel in this case are simply not protected by the work-product privilege because there is no confidential relationship between the senders (counsel for the carriers) and the recipient (Plaintiff's counsel). Although a confidential relationship exists where the non-party is, for example, a consultant retained by a party or its lawyer and brought within the privilege as an agent of the attorney or party, the carriers are neither parties to this action nor do they have any interest in the action. *Ricoh Co. v. Aeroflex Inc.*, 219 F.R.D. 66, 69 (S.D.N.Y. 2003) (citing *E.C.D.C. Envt'l, L.C. v. New York Marine & General Ins. Co.*, No. 96 Civ. 6033, 1998 WL 614478, 1998 U.S. Dist. LEXIS 8808 (S.D.N.Y.1998) (disclosure of work product to outside contractors did not waive protection where contractors were either related companies to plaintiff or acted as agent for plaintiff in the litigation); *Garrett v. Metropolitan Life Ins. Co., et al.*, No. 95 Civ. 2406, 1996 WL 325725, 1996 U.S. Dist. LEXIS 8054 (S.D.N.Y. June 11, 1996))(outside consulting firm was acting as agent of defendant's attorney when consultant's reports were generated under the direction and control of defense counsel).

It is a stretch worthy of a Major League Baseball first baseman for Plaintiff to argue that correspondence from counsel for non-party, disinterested, subpoenaed telephone carriers to Plaintiff's counsel are covered by work-product protection. The work-product doctrine does not extend so far afield. Thus, the emails sent by counsel for the subpoenaed telephone carriers to Plaintiff's counsel in this case are simply not protected by the work product privilege. Therefore, they shall be produced by Plaintiff to Defendants.

### D. Whether Plaintiff's Counsel's Emails to Counsel for the Carriers is Work Product Pursuant to Rule 26(b)

The Court must next consider the second category of documents, that is, Plaintiff's counsel's emails to counsel for the carriers. After reviewing the disputed emails *in camera,* on an *ex parte* basis, the Court is very reluctant to find that the emails are work product at all. The tenor and purpose of the emails are in reference to publicly filed and issued subpoenas in this case. In *Ricoh,* although Judge McMahon found that some of the emails sent by defendants' counsel to the subpoenaed non-party were potentially protected work product to the extent that "the e-mails reflect counsel's strategy for establishing an affirmative defense as [to] Defendants claim," she also stated that she had no way of knowing if they were protected work product since they had not been made available to her for review. *Id.* at 70. In this case, however, the undersigned has carefully reviewed the disputed emails. It is clear that the emails at issue in this case solely refer to the modification, scope, and execution of the subpoenas issued to the non-party carriers. Many of the emails contain counsels' arguments and thoughts on the scope of the subpoena, explain discrepancies regarding responses to the subpoena, or define terms used in the subpoena. However, they are not typical work product. The communications by Plaintiff's counsel are not made to Plaintiff's own expert or agent, but rather to a third-party who has no involvement in the case other than to respond to a lawfully issued subpoena.

The emails at issue are directly relevant to the scope of the subpoenas sent to the carriers, and indeed the emails seem to modify the subpoenas via the conferral between the counsel specified in the emails. The Court notes its ongoing duty to monitor this class action case. *Keim v. ADF MidAtlantic, LLC,* 328 F.R.D. 668 (S.D. Fla. 2018) (quoting *Manno v. Healthcare Revenue Recovery, LLC,* 289 F.R.D. 674, 695 (S.D. Fla. 2013)); *Espinoza v. Galardi S. Enterprises,* No. 14-21244, 2016 WL 127586, at *11 (S.D. Fla. Jan. 11, 2016). Allowing Plaintiff to maintain his

9

work-product privilege would deny Defendants important information pertaining to the narrowing of the scope of the subpoena(s) and production by the carriers in response to the narrowed subpoena(s). It would also undermine the Court's ability to monitor the subpoenas to the carriers or effectively evaluate the merits of Plaintiff's subpoena efforts.

In sum, preventing the production of these emails, which do not constitute work product, would simply be unfair to Defendants. Defendants have a strong interest in ensuring the validity and reliability of the documents subpoenaed by Plaintiff from the non-parties, who are disinterested telephone carriers. Thus, all of Plaintiff's counsel's email communication with telephone carriers AT&T, Sprint, US Cellular, Verizon, and T-Mobile regarding the subpoenas that Plaintiff had issued to various phone carriers to identify subscribers and customary users of the cell phone numbers at issue in this case shall be produced to Defendants.

### E. Production of the Emails is Required Even Assuming Arguendo that Plaintiff has Asserted a Valid Claim of Work Product

Although the Court believes that the emails at issue simply do not constitute work product at all in this case, the issue, like in *Ricoh,* is moot. This is so because to the extent Plaintiff argues the emails constitute fact work product, Defendants have established 1) that the emails are relevant and proportional to the needs of this case, 2) that Defendants have substantial need for the emails and an inability to obtain the materials or their substantial equivalent by other means, and 3) that Plaintiff's counsel has waived work-product privilege by sharing any allegedly protected work product with counsel for the subpoenaed non-parties. Thus, even if the emails arguably constitute fact work product, they still must be produced.

As explained above, the Court finds that the emails are proportional and relevant to the needs of this case pursuant to Rule 26(b)(1). Defendants have further established a substantial need and an inability to obtain the materials or their substantial equivalent by other means. Defendants

represented at the hearing that they have repeatedly asked Plaintiff's counsel how the term "user" was defined in the subpoenas, and how Plaintiff accounts for numerical discrepancies regarding the phone numbers, and Defendants assert that they have received no sufficient response from Plaintiff. The emails appear to modify the scope of the subpoenas and contain relevant information, including Plaintiff's definition of the term "User," which impacts the carriers' production. Just as Plaintiff is required under Federal Rule of Civil Procedure 45(a)(4) to provide pre-service notice of a subpoena to all parties, so too is Plaintiff required to provide Plaintiff's communications to the non-parties which narrow or refine the scope of the subpoenas. Therefore, even if the Court were to find that some of the emails constitute fact work product as Plaintiff asserts (which the Court does not), the Court finds that Defendants are nonetheless entitled to the production of all of those emails because Defendants have demonstrated a substantial need and an inability to obtain the materials or their substantial equivalent by other means, *Kehle*, 2018 WL 2435176, at *7, and because Plaintiff has waived any work product protection.

As to Plaintiff's argument that the emails constitute opinion work product, the Court rejects this argument. The Court finds that no such opinion work product exists for all of the reasons stated in this Order. Further, even if some of the emails arguably constituted opinion work product, the Court finds that Plaintiff waived any possible work-product privilege as to information contained in the emails by Plaintiff's counsel's voluntary dissemination of the emails to the telephone carrier's counsel and discussion of the contents of the emails with non-party counsel for the carriers. The carriers do not share a common interest in the case with Plaintiff, and indeed the carriers appear to be adversarial, especially considering Plaintiff's contested motions to compel certain non-parties to comply with subpoenas. [DE 288, DE 306]. Plaintiff and his counsel could not have reasonably expected that any information contained in Plaintiff's counsel's emails to

counsel for the carriers would be maintained as secret against Defendants in this litigation. Therefore, the Court finds that even if Plaintiff had shown that the emails sent from Plaintiff's counsel to the carriers contained opinion work product (which he did not), Plaintiff waived any claim of work product protection with regards to emails when it voluntarily sent the emails to counsel for the disinterested, non-party telephone carriers. *See Davis v. United States*, No. 08-81447-CIV, 2010 WL 11504342, at *5 (S.D. Fla. Feb. 25, 2010) (citing *Ricoh Co. Ltd.*, 219 F.R.D. at 70).

## V. CONCLUSION

In light of the foregoing, it is **ORDERED** that Defendants' Motion to Compel Plaintiff's Production of Carrier Subpoena Communications [DE 299] is **GRANTED.** Plaintiff is ordered to produce to Defendant, within five days of the date of this Order, all of Plaintiff's counsel's email communications with telephone carriers AT&T, Sprint, US Cellular, Verizon, and T-Mobile regarding the subpoenas that Plaintiff had issued to various phone carriers to identify subscribers and customary users of the cell phone numbers at issue in this case.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 30th day of May, 2019.

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE