UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

BRIAN KEIM, an individual, on behalf of )
himself and all others similarly situated, )
)
    Plaintiff, ) CASE NO. 9:12-cv-80577-KAM
v. )
)
ADF MIDATLANTIC, LLC, a foreign )
limited liability company, AMERICAN )
HUTS, INC., a foreign corporation, ADF )
PIZZA I, LLC, a foreign limited liability )
company, ADF PA, LLC, a foreign limited )
liability company, (known collectively as )
"ADF COMPANIES"), and PIZZA HUT, )
INC., a foreign corporation, )
)
    Defendants. )

## DECLARATION OF DONNA NAJAR IN SUPPORT OF VERIZON WIRELESS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

I, Donna Najar, declare under penalty of perjury, as provided for by the laws of the United States, 28 U.S.C. § 1746, that the following statements are true:

### BACKGROUND

1. I am a Supervisor with the Verizon Security Assistance Team, ("VSAT"), a part of Verizon Wireless ("Verizon"). I am providing this declaration in support of Verizon's opposition to plaintiff Brain Keim's ("Plaintiff") Motion to Compel Verizon to Comply with Plaintiff's Subpoena (the "Motion") in the above captioned case.

2. I have personal knowledge of the following facts as set forth in this declaration and, if called as a witness, could and would competently testify thereto.

3. I have been informed that Plaintiff has asked Verizon to provide a list of "account-holding subscribers' telephone number[s]" for four hundred and forty-three (443) shared plans (the "Shared Plan Accounts")—group plans that provide service for multiple wireless devices, and thus include multiple phone numbers.

## VERIZON HAS ALREADY PROVIDED SUBSCRIBER INFORMATION
## FOR THESE 443 SHARED PLAN ACCOUNTS

4. Verizon has already provided to Plaintiff's counsel subscriber information, consisting of the account number, as well as the account holder's name, billing address, and e-mail address if one was available, for all the mobile telephone numbers they requested that corresponded to Verizon Wireless customers, including the Shared Plan Accounts. Plaintiff's motion confirms that "Verizon has produced responsive data for over 2,000 mobile numbers" in response to the subpoena.

5. To gather this information, Verizon performed the following steps: VSAT contacted the information technology ("IT") group within VSAT that handles record processing, and provided that team with information parameters based on Plaintiff's subpoena. Using those parameters, the IT team then had to create, and did create, a customized data query for the relevant information. The IT team then ran its customized data query in Verizon's database that stores Verizon Wireless customer information. This process took time both to develop the relevant inquiry and to process the inquiry within the database. Once this process was completed, Verizon was able to identify the account number linked with each mobile telephone number provided by Plaintiff and compile a list of the names and addresses associated with those accounts. This information was produced to Plaintiff in response to his subpoena.

6. I understand that in addition to the information Verizon has already provided, Plaintiff is now requesting more detailed information, by seeking the specific mobile telephone numbers that are used by each "subscriber" of the Shared Plan Accounts.

7. As an initial matter, for Shared Plan Accounts, Verizon cannot determine which mobile telephone number the account owner (which Verizon defines as the person on a Shared Plan Account whose name appears on the statement and to whom a bill is addressed), or any other specific person on a Shared Plan Account, is using.

8. This is because the only information Verizon maintains related to the Shared Plan Accounts is the mobile telephone numbers linked with that particular account. Verizon does not require the account owner (or any other user) to use any particular phone number under the Shared Plan Account. Accordingly, over time, different people on the same account can change the phone numbers they use (for example, older children that were on a plan can come off the plan and younger siblings can take over use of the older child's former phone, and one person on the plan can temporarily borrow another person's phone).

9. Account owners with a Shared Plan Account have the option, but are not required, to provide information identifying a name for each phone number on the account, in their MyVerizon profile through the website Verizonwireless.com or the Verizon Wireless mobile application. The profile includes a "nickname" field that allows the account owner to enter an identifier for each phone number on the account—that is, to add a name or nickname for each phone number on the plan. Account owners do not need to use proper names, or even names at all, as nicknames—for example, account owners can input names such as "Mom," "Dad," "Junior," "Grandma," and the like. Verizon has no ability to verify the accuracy of the

nicknames, or confirm if such information is current. Similarly, any nickname an account owner inputs through MyVerizon is not retrievable by VSAT from the customer database.

10. If no information is provided in the device nickname field on a MyVerizon profile, the default is a blank. As the number of unlimited data plans has proliferated in recent years, there is less of a need for account owners to differentiate between different phone numbers on the same plan (as compared to past limited data plans, where account owners needed to track data use by each user on the plan). Thus, many Shared Plan Account owners do not associate nicknames with phone numbers on the account. Verizon similarly does not need to correlate particular phone numbers on a single Shared Plan Account to particular individuals, as which individual primarily uses a specific telephone number is irrelevant to Verizon's business needs.

11. This is illustrated by Plaintiff's "Exhibit 1" to his motion. That exhibit consists of a screenshot from a Verizon account owner "Amy Wells," which appears to be taken from her MyVerizon page. The exhibit references an "Account owner", but the "Account owner" information is linked to the account number, and not to a specific mobile telephone number. Although the "Account owner" is identified, that information was already provided by Verizon to Plaintiff's counsel for the Shared Plan Accounts.

## OBTAINING FURTHER DEMANDED USER INFORMATION IS BURDENSOME

12. As discussed in paragraphs 9-10, Verizon does not require any nickname information from its customers on Shared Plan Accounts. Verizon does not monitor or control, or attempt to monitor or control, who is the ultimate user of any particular mobile device under such an account. As a result, Verizon does not maintain any single, readily accessible database that includes any nickname information that account owners inputted in each Shared Plan Account.

13. At the request of Verizon's counsel, I researched the feasibility of obtaining the requested specific individual subscriber information from Verizon's electronic databases and what work would be required to gather and provide the requested information to Plaintiff. Providing this information would be an onerous, multistep process summarized below.

14. First, Verizon must identify the Shared Plan Account associated with the mobile telephone numbers provided by Plaintiff's counsel.

15. As stated in paragraphs 5 and 6, Verizon completed this step as part of the first production it made on April 16, 2019 for all of the numbers requested that were Verizon Wireless customers during the time frame requested, including the 443 Shared Plan Accounts.

16. Next, once the Shared Plan Account number is identified, a researcher must log into Verizon's database where customer billing records reside, and manually enter each account number in order to pull up a billing statement for a specified billing cycle for that particular Shared Plan Account.

17. The account billing statement is the only place accessible by Verizon where any nickname information is located.

18. Then, for each billing cycle during the responsive period, the researcher would have to manually enter into a spreadsheet (or other document) all the phone numbers linked with that shared plan and any account owner entered nickname information associated with each mobile number. However, this would still not enable Verizon to make a determination about which number was actually being used by the "subscriber" of a particular Shared Plan Account, and which number actually was used by any other particular person under the account.

19. These same steps must be repeated for every billing cycle during the time frame specified in Plaintiff's request for class certification. There is no automated process that exists for obtaining this information from the billing statement database.

20. It is my understanding that the Class Period in this case is November 2010 through January 2013. Verizon's document retention policies provide that it retains billing documents for a period of seven years. Therefore, Verizon does not currently possess billing statements for 2010 or 2011. Accordingly, Verizon personnel would need to manually look up 5,759 separate billing statements [443 accounts x 13 billing cycles], review them, and manually add them to a spreadsheet, refine that data, and then put the data into a producible format.

21. To provide this information constitutes a substantial expense to Verizon.

22. I performed 23 sample iterations of this process and, on average, it took me 65 minutes to complete each inquiry. These sample iterations involved accounts with up to 5 telephone numbers. To the extent other Shared Plan Accounts included within Plaintiff's request include more telephone numbers, the time required to produce the requested information for those accounts could be substantially greater.

23. Based on my sampling described above, I estimate that 480 personnel hours would be required to perform the database queries needed to gather and produce this information.

24. Verizon cannot avoid this expense by merely shifting employees' responsibilities, as Verizon does not have personnel simply sitting idle. All Verizon employees are fully committed.

25. Therefore, Verizon will be compelled to hire temporary workers. Verizon normally charges $75 per hour for subpoena compliance tasks. Based on Verizon's normal rate

and the processes required above, I estimate that Verizon will incur $36,000 to complete Plaintiff's request as set forth in its Motion.

26.     To date, Verizon has incurred costs of $456 for providing that information to Plaintiff, allocated to 6 hours of personnel time at $75 an hour and $6 for shipping costs. Verizon has requested payment from Plaintiff's counsel for that amount, but as of the signing of this declaration Verizon has not been reimbursed for any of those costs.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on this 14th day of June 2019 in San Angelo, Texas.

Dated: June 14, 2019

*[signature]*

Donna Najar