**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| **BRIAN KEIM, on behalf of himself and all others similarly situated,** )<br>)<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**ADF MIDATLANTIC, LLC, et al.,** )<br>)<br>**Defendants.** )<br>) | **Case No. 9:12-cv-80577-KAM**<br><br>Hon. Judge Kenneth A. Marra<br><br>Magistrate Judge William Matthewman |

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

Plaintiff Brian Keim respectfully moves for an Order of Preliminary Approval of the Class Settlement pursuant to the proposed class action settlement ("Settlement") reached with Defendants, ADF Midatlantic, LLC, American Huts, Inc., ADF Pizza I, LLC, ADF PA, LLC) and Pizza Hut, Inc. ("Defendants") (Collectively, the "Parties"). A copy of the Settlement Agreement and Release ("Agreement") is attached as *Appendix 1*.

Plaintiff submits that the Settlement provides an excellent result for the Class. Accordingly, as set forth in the Memorandum below, Plaintiff requests that the Court (1) enter an order granting preliminary approval of the Settlement as well as the plan for Class Notice; (2) set a fairness hearing; and (3) grant any other additional relief deemed just.

83822

# TABLE OF CONTENTS

MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT ................................................................................................................. 5
   I.   OVERVIEW OF THE SETTLEMENT & SUMMARY OF LITIGATION ....................... 5
      Plaintiff's Claims under the TCPA .................................................................................. 6
   II.   OVERVIEW OF THE PROPOSED SETTLEMENT AGREEMENT ............................... 7
      A.   Class Definition ....................................................................................................... 7
      B.   Structure of the Settlement Amount ....................................................................... 7
      C.   Individual Settlement Class Member Benefits ....................................................... 8
      D.   Compensation for the Class Representative .......................................................... 8
      E.   Payment of Attorneys' Fees and Expenses ............................................................ 8
      F.   Release .................................................................................................................... 8
   III.   THE COURT HAS ALREADY CERTIFIED THE CLASS ............................................ 9
   IV.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ........ 9
   V.   THE PROPOSED CLASS NOTICE SHOULD BE APPROVED ................................. 13
   VI.   A FAIRNESS HEARING SHOULD BE SCHEDULED ................................................ 14
   VII.   DEFENDANTS CONSENT TO PRELIMINARY APPROVAL OF THE SETTLEMENT ............................................................................................................... 14
   VIII.   PROPOSED SCHEDULE ............................................................................................... 14
   IX.   CONCLUSION ................................................................................................................ 15

# TABLE OF EXHIBITS

- Appendix 1 – Settlement Agreement and Release
  - Exhibit 1 – [Proposed] Preliminary Approval Order
  - Exhibit 2 – Postcard Notice
  - Exhibit 3 – Settlement Website
  - Exhibit 4 – Final Approval Order
  - Exhibit 5 – Claim Form
- Appendix 2 – Declaration of Keith J. Keogh
- Appendix 3 – Declaration of Scott D. Owens

# **TABLE OF AUTHORITIES**

**Cases**

*Access Now, Inc. v. Claires Stores, Inc.*, No. 00-14017-CIV
   2002 WL 1162422 (S.D. Fla. May 7, 2002) ...................................................................... 10
*Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv- 00248 (S.D. Cal. Sept. 28, 2012) .... 12
*Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot. Act Litig.)*
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ................................................................................... 11
*Arthur v. Sallie Mae, Inc.*
   2012 U.S. Dist. LEXIS 132413, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012) ................. 11
*Bennett v. Behring*, 737 F.2d 982 (11th Cir. 1984) ............................................................. 10, 14
*Collins v. Erin Capital Management, LLC*
   No. 12-cv-22839-CMA (S.D. Fla. Dec. 20, 2013) ............................................................... 14
*Cooper v. NelNet, Inc.*, 14-cv- 314-RBD-DAB, ECF 85 (M.D. Fla. Aug. 4, 2015) ...................... 8
*Cooper v. Nelnet, Inc.*, 14-cv-00314-RBD (M.D. Fla. Feb. 26, 2015) ........................................ 14
*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ...................................................................... 10
*Curry v. AvMed, Inc.*, No. 10-cv-24513
   2014 U.S. Dist. LEXIS 48485 (S.D. Fla. Feb. 28, 2014) ...................................................... 14
*De Los Santos v. Millward Brown, Inc.*, No. 13-cv-80670-DPG (S.D. Fla. Feb. 10, 2015) ......... 14
*Fresco v. Auto Data Direct, Inc.,* No. 03-61063-CIV-MARTINEZ-BANDSTRA
   2007 U.S. Dist. LEXIS 37863 (S.D. Fla. May 11, 2007) ........................................................ 9
*Gevaerts v. TD Bank, N.A.*, No. 14-cv-20744-RLR
   2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015) ....................................................... 8
*Greco v. Ginn Dev. Co., LLC*, 2015 U.S. App. LEXIS 20867 (11th Cir. Dec. 2, 2015) ........ 10, 13
*Guarisma v. Adcahb Medical Coverages, Inc.*
   No. 13-cv-21016-FAM (S.D. Fla. Mar. 2, 2015) .................................................................. 14
*Hashw v. Dep't Stores Nat'l Bank,* 182 F.Supp.3d 935 (D. Minn. 2016) ..................................... 11
*Hitchman v. Nat'l Enter. Sys.*, 2014 U.S. Dist. LEXIS 30623 (S.D. Fla. Mar. 10, 2014) ............... 6
*In re Domestic Air Transport.*, 148 F.R.D. 297 (N.D. Ga. 1993) ................................................ 10
*In re Enhanced Recovery Company, LLC Telephone Consumer Protection Act Litigation*, Case
   No. 6:13-MD-2398-orl-37GJK (Oct. 31, 2014 M.D. Fl.) ..................................................... 11
*In re Rules and Regulations Implementing the TCPA of 1991*
   30 F.C.C. Rcd. 7961 (July 10, 2015) .................................................................................... 6
*In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323 (S.D. Fla. 2001) .............................................. 10
*In re U.S. Oil & Gas Litig.*, 967 F.2d 489 (11th Cir. 1992) .......................................................... 9
*James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS
   2017 U.S. Dist. LEXIS 91448 (M.D. Fla. June 5, 2017) ...................................................... 11
*Legg v. E-Z Rent A Car, Inc.*, No. 14-cv- 01716-PGB (M.D. Fla. May 28, 2015) ....................... 14
*Malta v. Fed. Home Loan Mortg. Corp.,* No. 10-cv-1290
   2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) ....................................................... 12
*Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM
   2017 U.S. Dist. LEXIS 17546 (N.D. Ga. Jan. 30, 2017) ...................................................... 11
*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012) ................................................................. 6
*Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302 (11th Cir. 2015) ................................ 6

*Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211 (W.D. Wash. Oct. 21, 2011) ........................... 12
*Rose v. Bank of Am. Corp.,* No. 5:11-CV-02390-EJD
   2014 U.S. Dist. LEXIS 121641 (N.D. Cal. Aug. 29, 2014) ..................................................... 11
*Soto v. The Gallup Organization, Inc.*, No. 13-cv-61747-MGC (S.D. Fla. June 6, 2015) ........... 14
*Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F.Supp. 1226 (N.D. Ill. 1993) ......................... 8
*Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) ........... 14
*Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1998) ................................................... 10
*Warren v. City of Tampa,* 893 F. 2d 347 (11th Cir. 1998) ........................................................... 10
*Wojcik v. Buffalo Bills, Inc.*, Case No. 8:12-cv-02414-SDM-TBM (M.D. Fla. Aug. 25, 2014) ... 11

**Statutes**

47 U.S.C. § 227(b)(1)(A)(iii) ............................................................................................................ 6

**Other Authorities**

Carlos F. Herr, *Annotated Manual for Complex Litigation,* § 21.632 (4th ed. 2004) ..................... 9
Newberg & Conte, 4 *Newberg on Class Actions*, §11.25 (4th Ed. 2002) ....................................... 9

# MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL
# OF CLASS ACTION SETTLEMENT

## I.     OVERVIEW OF THE SETTLEMENT & SUMMARY OF LITIGATION

This case was filed on May 27, 2012. *ECF 1*. On December 4, 2018, the Court granted class certification. *ECF 259*. Following seven years of active litigation,[1] the Parties reached this Settlement.[2] The scope of the Litigation has been extensive. It has entailed motion work at the pleading stage, which was followed by an appeal. Subsequently, extensive discovery that included at least nine depositions, data discovery, third-party discovery, as well as experts. Even after class certification, Plaintiff engaged in carrier-related discovery, which required motion practice. Defendants had also filed a Rule 23(f) petition to appeal, a motion to decertify and moved for summary judgment that were pending when the case was mediated on August 7, 2019.

The mediation was conducted by a highly regarded retired federal court judge and professional mediator, Honorable James F. Holderman, who has extensive experience with the TCPA, both while he was a federal district court judge as well as at JAMS. While the mediation did not result in immediate resolution, it facilitated continued negotiations between the Parties, which continued during the ensuing weeks. These conferrals included negotiation regarding terms, verbiage of the Agreement, and agreed upon forms. Ultimately, the Parties consummated the Agreement.

Pursuant to the Agreement, Defendants will provide a total of $6,000.000.00 ("Settlement Amount") to fully settle all claims in this Litigation. Settlement Class Members who timely submit a valid Settlement Claim Form may each receive up to $400.00, depending on the number of valid claims received. Should the Settlement Claim Payments, when combined with the remainder of the Settlement Payments, exceed $6,000,000.00, the Settlement Claim Payments will be reduced amongst the Class on a *pro rata* basis up to the Settlement Amount. However, given the average claims rate, Plaintiff anticipates that each Settlement Class Member will receive the full $400.00, which will provide Settlement Class Members an outstanding result. This is true in any event, but particularly in this case, where many years have passed since Settlement Class Members received the marketing texts. Moreover, in the context of the amount available under the Telephone

---

1 As reflected by over 400 filings on the Court's docket, alone.
2 Capitalized words in this motion have the same meaning as in the Agreement.

Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), $400.00 is a significant portion of the $500 statutory damages available. On a per class member basis, this result surpasses the vast majority of other TCPA class action settlements approved in this District and nationwide. In short, given these facts, as well as the hurdles and defenses facing the Class (discussed *infra*), the results achieved are exceptional.

### Plaintiff's Claims under the TCPA

Plaintiff's claims arose under the TCPA, a law which prohibits calls using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to cellular telephone service unless the call is made "for emergency purposes" or with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). Text messages like those at issue in this Litigation are treated as "calls" under the TCPA. *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1307 (11th Cir. 2015).

The "[v]oluminous consumer complaints about abuses of telephone technology … prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012). Congress found that "automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided that "banning" such calls made without consent was "the only effective means of protecting consumers from this nuisance and privacy invasion." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394, 2394-95 (codified at 47 U.S.C. § 227). Today, "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [Federal Communications] Commission." *In re Rules and Regulations Implementing the TCPA of 1991*, 30 F.C.C. Rcd. 7961, 7991 at ¶ 1 (July 10, 2015). In fact, abusive text message spam, "robocalls," and "autodialed" calls were the FTC's number one grievance in 2015, and the FTC reported more than 2.2 million complaints.[3]

The TCPA creates a private right of action for persons affected by violations, which provides a maximum for statutory damages of $500 per violation, which the Court may treble upon a showing that the violation was willful. *Hitchman v. Nat'l Enter. Sys.*, 2014 U.S. Dist. LEXIS 30623, at *5 (S.D. Fla. Mar. 10, 2014), citing 47 U.S.C. §227(b)(3). Plaintiff alleged that he

---

3  http://money.cnn.com/2015/10/22/pf/fcc-robocall-telemarketing-data-public/ (Last Accessed: January 10, 2017).

83822

received unsolicited text messages from Defendants as part of a texting campaign designed to promote Pizza Hut. Plaintiff contends that he never consented to receive these texts. Instead, as part of the texting campaign, Settlement Class Members' cell numbers were provided to Defendants by others, without the class members' prior express consent. Plaintiff alleged this violated the TCPA. Defendants deny these allegations.

The proposed Settlement would resolve all claims in this case.

Accordingly, Plaintiff moves the Court to: (1) enter an order granting preliminary approval of the Settlement as well as the plan for Class Notice; (2) set a fairness hearing; and (3) grant any other additional relief deemed just.

## II.     OVERVIEW OF THE PROPOSED SETTLEMENT AGREEMENT

The key terms of the proposed Agreement are as follows:

### A. Class Definition

The Settlement Class[4] is defined the same as the Class definition certified by the Court.[5] Specifically, as:

> All persons in the United States who received a text message from Defendants wherein their cellular telephone number was provided by a third party and said text messages were sent using hardware and software owned or licensed to Songwhale or Cellit between November 2010 and January 2013. Excluded from the class are all persons who received a text message from Defendants wherein their cellular telephone number was provided by a subscriber of the calling plan.

According to Defendants' records, there are 13,046 unique cellular numbers that belong within the Settlement Class.

### B. Structure of the Settlement Amount

The Agreement provides that Defendants will make available $6,000,000.00 for the benefit of the Settlement Class. *Appendix 1* at p. 12-13, § III(C). The Settlement Payments cover (i) Settlement Claim Payments to Settlement Class Members, (ii) attorneys' fees and costs as approved by the Court, (iii) an Incentive Payment to Mr. Keim as approved by the Court, and (iv)

---

[4] Excluded from the Settlement Class are Defendants, their legal representatives, assigns, and successors, and any entity in which the Defendants have a controlling interest. Also excluded from the Class is the Judge to whom this case is assigned as well as the Judge's immediate family, and any individual who opts out of the Settlement Class.
[5] On December 20, 2018, the Court granted Plaintiff's Motion for Clarification, and amended the definition to reflect the class period of November 2010 through January 2013, as set forth herein.

83822

the costs of Class Notice and administration of the Settlement to the Claims Administrator. *Id.* at p. 11, § II(FF).

### C. Individual Settlement Class Member Benefits

A Settlement Class Member who submits a valid and timely claim shall receive up to $400.00, calculated after deduction of costs of sending notice of the Settlement, settlement administration expenses, court-approved attorneys' fees and costs, and the class representative Incentive Payment as awarded by this Court. *Id.* at p. 12-13, § III(C). Plaintiff estimates[6] that each class member who submits a valid and timely claim will receive the full $400.00.

### D. Compensation for the Class Representative

Under the Agreement, and subject to Court approval, the Parties have agreed that Plaintiff's counsel may apply to this Court for an Incentive Payment for Mr. Keim, who has provided over seven years of service on behalf of the Class. Plaintiff will move for an Incentive Payment for Mr. Keim's service, not to exceed $10,000.00.[7] Notably, the Agreement provides no "clear sailing" provision regarding an Incentive Payment.

### E. Payment of Attorneys' Fees and Expenses

Under the Agreement, and subject to Court approval, the Parties have agreed that Plaintiff's counsel may apply to this Court for an award of attorneys' fees and expenses associated with their work in this Action. Plaintiff's counsel will petition the Court for an award of attorneys' fees not to exceed one-third of the Settlement Amount. Like the Incentive Payment, the Agreement does not provide any amount[8] for fees or a "clear sailing" provision regarding attorney fees or costs.

### F. Release

In exchange for the relief described above, the release is applicable to all class members and releases any and all claims related to or arising out of claims that were made or could have

---

6 The estimate is based on a claims rate between 5 and 10%, administration costs of $40,000, requested attorney fees, inclusive of costs, of one-third of the Settlement Amount ($2,000,000), and the requested Incentive Payment for Plaintiff of $10,000.

7 This is consistent with incentive awards in other cases. *See*, *e.g.*, *Gevaerts v. TD Bank, N.A.*, No. 14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, *25- *26 (S.D. Fla. Nov. 5, 2015) ($10,000 incentive payment), *citing Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving incentive payments ranging from $5,000 to $100,000, and approving $10,000 for each plaintiff); *Cooper v. NelNet, Inc.*, 14-cv- 314-RBD-DAB, ECF 85, p.5, ¶11 (M.D. Fla. Aug. 4, 2015) ($25,000 incentive payment in TCPA case).

8 The notice states Plaintiff will seek one-third of the Settlement Fund for fees to fully inform the class as that is the amount Plaintiff intends to seek.

been made in the Litigation. The full scope of the release, and its exact terms, is fully set forth in detail in the Agreement. *Id.* at p. 21-22, § VI(A-C).

### III. THE COURT HAS ALREADY CERTIFIED THE CLASS

On December 4, 2018, the Court certified the Class, finding Plaintiff met the class-certification requirements of Rule 23 of the Federal Rules of Civil Procedure. ECF 259.

### IV. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Rule 23 of the Federal Rules of Civil Procedure provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The procedure for review of a proposed class action settlement is a well-established two-step process. Newberg & Conte, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002); *see also* Carlos F. Herr, *Annotated Manual for Complex Litigation,* § 21.632 (4th ed. 2004).

The first step is a preliminary, pre-notification determination whether the settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (*quoting Manual for Complex Litigation*, §30.41 (3rd Ed.)); *Fresco v. Auto Data Direct, Inc.,* No. 03-61063-CIV-MARTINEZ-BANDSTRA, 2007 U.S. Dist. LEXIS 37863 (S.D. Fla. May 11, 2007). This is not a fairness determination; rather, the purpose is to ascertain whether there are grounds to notify the class members of the settlement and then to proceed with a fairness hearing. *Newberg*, §11.25, at 38-39; *Fresco,* 2007 U.S. Dist. LEXIS 37863, at *11-12 (S.D. Fla. May 11, 2007) ("A proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, if there is probable cause to notify the class of the proposed settlement.") (internal quotations omitted).

The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement made by the Court on the basis of written submissions and informal presentation from the settling Parties. *See Manual for Complex Litigation,* § 21.632 (4th ed. 2004). If the Court finds a settlement proposal "within the range of possible approval," it proceeds to the second step in the review process—the final approval hearing. *Newberg*, §11.25, at 38-39. There is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly

83822

favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd,* 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422 at *4 (S.D. Fla. May 7, 2002). In the case of a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Although the approval of a class action settlement is a matter for the Court's discretion, proper consideration should be given to the consensual decision of the Parties. *See Greco v. Ginn Dev. Co., LLC*, 2015 U.S. App. LEXIS 20867 at *9 (11th Cir. Dec. 2, 2015) (unpublished) ("a district court may also rely upon the judgment of experienced counsel for the parties. Indeed, absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'"), *quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Warren*, 693 F. Supp. at 1054 ("The Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"). Ultimately, a class action settlement should be approved if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett v. Behring*, 737 F.2d 982, 986 (11th Cir. 1984); *Access Now,* 2002 WL 1162422 at *4. When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001).

In considering whether the proposed Settlement is "fair, adequate, and reasonable," the following factors are often considered: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986; *see also In re Sunbeam*, 176 F. Supp. 2d at 329. Finally, in considering the preliminary approval issue, courts need not "reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

Here, the proposed Settlement is fair, adequate and reasonable, and well "within the range of possible approval." This is demonstrated by the amount of monetary relief made available to

83822

Settlement Class Members, and the fact that the Agreement was the result of hard fought, arms' length negotiations by experienced counsel conducted through a seasoned third-party mediator.

The monetary relief secured on behalf of the Settlement Class is substantial. Each Settlement Class Member who submits a valid and timely claim will receive up to a $400.00 payment from the Settlement Amount. As noted above, Plaintiff estimates each Settlement Class Member who submits a valid and timely claim will receive the full $400.00.

This compares to a potential statutory damages recovery of $500 per call under the TCPA (with treble damages only if the violation is deemed willful). The monetary relief is even more favorable after considering that if Pizza Hut was granted summary judgment, or otherwise not found liable for texts, the remaining franchise defendants would not be able to pay a class judgment due to their waning financial condition.

Finally, the monetary relief is substantially more than other TCPA class settlements approved in this Circuit and elsewhere. *See James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2017 U.S. Dist. LEXIS 91448, at *5 (M.D. Fla. June 5, 2017) (holding class counsel's result of "$81 per class member who submitted a claim equals or exceeds the typical award in a TCPA class action."); *Markos v. Wells Fargo Bank*, *N.A.*, No. 1:15-cv-01156-LMM, 2017 U.S. Dist. LEXIS 17546, at *11 (N.D. Ga. Jan. 30, 2017) (finding $24 per class member to be "an excellent result"); *Wojcik v. Buffalo Bills, Inc.*, Case No. 8:12-cv-02414-SDM-TBM (M.D. Fla. Aug. 25, 2014) (class claimants to receive $57.50-$75.00 gift card); *In re Enhanced Recovery Company, LLC Telephone Consumer Protection Act Litigation*, Case No. 6:13-MD-2398-orl-37GJK (Oct. 31, 2014 M.D. Fl.) (class claimants to receive injunctive relief and no monetary recovery); *Hashw v. Dep't Stores Nat'l Bank,* 182 F.Supp.3d 935, 944 (D. Minn. 2016) (Kyle, J.) (approving a TCPA settlement that yielded $33.20 per claimant); *Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot. Act Litig.),* 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) ($34.60 "falls within the range of recoveries in other TCPA actions"); *Rose v. Bank of Am. Corp.,* No. 5:11-CV-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *30-31 (N.D. Cal. Aug. 29, 2014) ($20-40 per claimant); *Grannan v. Alliant Law Grp., P.C.,* No. C10-02803 HRL, 2012 U.S. Dist. LEXIS 8101, at *19 (N.D. Cal. Jan. 24, 2012) (approving "$300-325 [as] less than what the TCPA provides for a negligent violation, yet considerable" in class settlement); *Arthur v. Sallie Mae, Inc.*, 2012 U.S. Dist. LEXIS 132413, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012) (each claimant

was estimated to receive between $20 and $40); *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members; each claimant was to be paid $100, but subject to a *pro rata* reduction based on the maximum amount of the fund, and it was unclear from the final approval order how much money each claimant actually received); *Malta v. Fed. Home Loan Mortg. Corp.,* No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (each claimant received $84.82); *Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv- 00248, ECF 116 & 137 (S.D. Cal. Sept. 28, 2012) (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, ECF. 84 & 91 (W.D. Wash. Oct. 21, 2011) (approving $5.5 million settlement to benefit 18.1 million class members).

The Settlement is the product of substantial and active arms' length negotiations that took place over many years. Based on the discovery undertaken, including Plaintiff's expert report, Plaintiff's counsel is confident in the strength of the claim alleged in this action and Plaintiff's chance of success at trial. Nevertheless, litigation is inherently unpredictable, Defendants are represented by competent and formidable counsel, and Plaintiff must clear a number of significant hurdles in order to secure relief for the class in the absence of settlement.

The significant risks the Class would face were the Litigation to continue includes the following possibilities: the Court may grant Pizza Hut's motion for summary judgment; the court may decertify the class; the Jury could conclude that Pizza Hut and/or the franchise defendants are not liable under the TCPA; or the case may be appealed and the certification could be reversed. Here, Class Counsel strongly believes this settlement is fair, reasonable and in the best interests of the Class.[9]

In the end, when the strengths of the case are weighed against the legal and factual obstacles present, and the complexity of class action practice, the proposed Settlement is undoubtedly in the best interest of Settlement Class Members. Moreover, given the value of this Settlement, Plaintiff expects no significant opposition by any Settlement Class Member. In its totality, this Settlement in an excellent result for the Class, and is well within the range of reasonableness and should be preliminarily approved.

---

9 *Appendices 2 and 3,* Declarations of Class Counsel.

83822

## V. THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

The Agreement includes notice procedures designed to directly reach each Settlement Class Member as is practicable. *Appendix 1* at p. 15-16 §IV(B). Because the names and addresses associated with each of the unique cellular telephone numbers that Defendants texted were not known, Plaintiff previously subpoenaed the cellular carriers who provided service to the Class in this case (Verizon, AT&T, Sprint, T-Mobile, Alltel, Boost Mobile, Cellular South, Arch Paging, Cricket, Appalachian, Immix, Metro PCS, Nextel, Rogers, Rural Cellular, U.S. Cellular). Through the subpoenas, Class Counsel has already obtained the names and address for most Settlement Class Members. For those numbers where contact information was unavailable through the cellular provider, within seven days of the Preliminary Approval Date, Class Counsel will provide the Claims Administrator the Class List, along with mailing addresses Class Counsel has identified to date. Within 21 days thereafter, the Claims Administrator shall perform a reverse look-up to identify any addresses that Class Counsel was unable to identify. *Id.* at § IV(B)(1). With this information, the best Class Notice practicable may be provided to the Class.

Next, the Claims Administrator shall cause Class Notice to be sent via First Class mail to every Settlement Class Member for whom address information is available. *Id.* at § IV(B)(2).

The Settlement Agreement allows Settlement Class Members to make claims by mail, online and via a toll-free number with their claim ID. . *Id.* at § IV(B)(4).

Additionally, the Claims Administrator will establish a Settlement Website that supplements the mail notice with comprehensive information about the Settlement, as well as a copy of the operative Complaint, the Agreement, the Preliminary Settlement Approval Order and Plaintiff's motion for incentive award and attorney fees for the Settlement Class Members to review. The additional notice posted on the Settlement Website provides Settlement Class Members with a detailed explanation of their options, to enable them to make an informed decision. The Settlement Website will also enable Settlement Class Members to submit a claim or download a Claim Form. *Id.* at § IV(B)(3).

Mailed Class Notice, coupled the toll-free number and a Settlement Website for further information is a commonly approved method for providing notice in class settlements. *See e.g.*, *Greco v. Ginn Dev. Co., LLC*, 2015 U.S. App. LEXIS 20867 at *15 (11th Cir. Dec. 2, 2015) (unpublished) ("all material facts were available to class members because a full copy of the

83822

settlement agreement, and the release, were available on a website referenced in the Notice."); *Collins v. Erin Capital Management, LLC*, No. 12-cv-22839-CMA (S.D. Fla. Dec. 20, 2013) at ECF No. 133, ¶ 5; *Guarisma v. Adcahb Medical Coverages, Inc.*, No. 13-cv-21016-FAM (S.D. Fla. Mar. 2, 2015) at ECF No. 91, ¶11; *Soto v. The Gallup Organization, Inc.*, No. 13-cv-61747-MGC (S.D. Fla. June 6, 2015) at ECF No. 79, ¶9; *De Los Santos v. Millward Brown, Inc.*, No. 13-cv-80670-DPG (S.D. Fla. Feb. 10, 2015) at ECF No. 77, ¶ 11; *Curry v. AvMed, Inc.*, No. 10-cv-24513, 2014 U.S. Dist. LEXIS 48485 at *3 (S.D. Fla. Feb. 28, 2014); *Cooper v. Nelnet, Inc.*, 14-cv-00314-RBD (M.D. Fla. Feb. 26, 2015) at ECF No. 72, ¶10; and *Legg v. E-Z Rent A Car, Inc.*, No. 14-cv- 01716-PGB (M.D. Fla. May 28, 2015) at ECF No. 64, ¶10.

Finally, Defendants will serve notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, upon the Attorneys General of each of the fifty United States and the Attorney General of the United States, providing notice of the proposed settlement within ten (10) days after the proposed Settlement is filed. *See Appendix 1* at p. 19, § IV(B)(9).

Accordingly, the proposed notice plan should be approved.

## VI. A FAIRNESS HEARING SHOULD BE SCHEDULED

After adequate notice is given to the Settlement Class and the government, as required by 28 U.S.C. §1715, a fairness hearing should be held for the Court to confirm that the Settlement is fair, reasonable and adequate. *See*, *e.g.*, *Bennett*, 737 F.2d at 985; *Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1336 (S.D. Fla. 2011).

## VII. DEFENDANTS CONSENT TO PRELIMINARY APPROVAL OF THE SETTLEMENT

While Defendants disagree as to their liability under the TCPA, and even that certification should have been granted, following extensive negotiations, Defendants have agreed to the terms of the Settlement or the relief sought herein.

## VIII. PROPOSED SCHEDULE

Based on the events that need to take place between the granting of preliminary approval and final approval that are described in the proposed preliminary approval order (Exhibit 1 to *Appendix 1*), Plaintiff proposes the following deadlines for evaluating and concluding this Settlement:

83822

| | |
|---|---|
| _____, 2019 [30 days after Preliminary Approval Date] | Deadline for Class Notice<br><br>Deadline for filing of Plaintiff's Motion for Attorneys' Fees and Incentive Payment |
| _____, 2020 [91 days after Preliminary Approval Date] | Deadline for Settlement Class Members to file:<br>a. any objection and basis therefor;<br><br>b. notice of intent to appear at the fairness hearing, indicating with or without counsel; or<br><br>c. request exclusion |
| _____, 2020 [91 days after Preliminary Approval Date] | Claim Period – Deadline for Settlement Class Members to Submit a Settlement Claim Form |
| _____, 2020 [121 days after Preliminary Approval Date] | Deadline for Parties to file:<br>a. List of persons who made timely and proper requests for exclusion;<br><br>b. Proof of Class Notice; and<br><br>c. Motion and Memorandum in Support of Final Approval and related matter, including any response to any objection. |
| _____, 2020 [135] days after Preliminary Approval Date] | Fairness Hearing |

## IX. CONCLUSION

For the foregoing reasons, with Defendants' consent, Plaintiff respectfully moves the Court to (1) enter an order granting preliminary approval of the Settlement as well as the notice plan; (2) set a fairness hearing; and (3) grant any other additional relief deemed just.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Counsel for Plaintiff has conferred with Defendants' Counsel and Defendants do not oppose the relief requested herein.

s/ *Keith J. Keogh*

Keith J. Keogh
Amy L. Wells, *pro hac vice*
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
312.374.3401 (Direct)
312.726.1092 (Main)
312.726.1092 (Fax)
AWells@Keoghlaw.com
Keith@Keoghlaw.com

Scott D. Owens
SCOTT D. OWENS, PA.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Phone: 954-589-0588
Fax: 954-337-0666
Email: Scott@ScottDOwens.com

*Class Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

By: s/ *Keith J. Keogh*
Keith J. Keogh

83822