**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | | |
|---|---|---|
| **BRIAN KEIM, on behalf of himself and** | ) | |
| **all others similarly situated,** | ) | |
| | ) | **Case No. 9:12-cv-80577-KAM** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Hon. Judge Kenneth A. Marra |
| | ) | |
| **ADF MIDATLANTIC, LLC, et al.,** | ) | Magistrate Judge William Matthewman |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

92617

i

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     OVERVIEW OF THE SETTLEMENT & SUMMARY OF LITIGATION ..................3

III.    THE COURT HAS ALREADY CERTIFIED THE CLASS .........................................7

IV.   THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT .................................7

V.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ..........................8

   A.       The Agreement Is the Result of Arm's Length Negotiations. ...............................9

   B.       The Settlement Meets Each of the *Bennett* Factors. ............................................10

      1.  Likelihood of Success at Trial....................................................................11

      2.  Range of Possible Recovery and the Point at which the Agreement Is Fair, Reasonable, and Adequate. ........................................................................12

      3.  The Complexity and Expense of Further Litigation....................................13

      4.  Stage of Proceedings at which Settlement Achieved...................................14

      5.  Substance and Amount of Opposition to Agreement. ..................................14

VII.   THE PROPOSED INCENTIVE AWARD IS PROPER .............................................16

IX     CONCLUSION ....................................................................................................18

## TABLE OF EXHIBITS

    o  Appendix 1 – Settlement Agreement and Release

        ▪  Exhibit 1 – [Proposed] Preliminary Approval Order

        ▪  Exhibit 2 – Postcard Notice

        ▪  Exhibit 3 – Settlement Website

        ▪  Exhibit 4 – Final Approval Order

        ▪  Exhibit 5 – Claim Form

    o  Appendix 2 – Declaration of Keith J. Keogh

    o  Appendix 3 – Declaration of Scott D. Owens

    o  Appendix 4-Draft Final Approval Order

92617

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. AllianceOne Receivables Mgmt. Inc.*
No. 08-cv-00248 (S.D. Cal. Sept. 28, 2012)..........................................................................13

*Allapattah Servs., Inc. v. Exxon Corp.*
No. 91-cv-0986, 2006 WL 1132371, at *13 (S.D. Fla. Apr. 7, 2006) ....................................15

*Atkinson v. Wal-Mart Stores, Inc.*
2011 U.S. Dist. LEXIS 150274 (M.D. Fla. Dec. 29, 2011) ....................................................15

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543, (S.D. Fla. 1988)...........................................13

*Bennett v. Behring Corp.*, 737 F.2d 982, (11th Cir. 1984) .................................................... passim

*Cooper v. NelNet, Inc.*, 14-cv-314 (M.D. Fla. Aug. 4, 2015)........................................................17

*Dear v. Q Club Hotel, LLC*, 2018 U.S. Dist. LEXIS 42787 (S.D. Fla. Mar. 14, 2018) ...............15

*Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015)...............11

*Hashw v. Dep't Stores Nat'l Bank,* 182 F.Supp.3d 935 (D. Minn. 2016).....................................13

*Hitchman v. Nat'l Enter. Sys.*, 2014 U.S. Dist. LEXIS 30623 (S.D. Fla. Mar. 10, 2014)..............2

*In re Capital One TCPA Litigation*
12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) ......................................................13

*In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330 (S.D. Fla. 2011)...........................9, 10

*In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation,* Master
Docket No. 3:13-cv-1866-AWT (D. Conn. November 10, 2016)...........................................18

*In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, (N.D. Ga. 1993)...........................9

*In re Enhanced Recovery Co.*, 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014) .....................13

*In re Mex. Money Trans. Litig.*, 164 F.Supp.2d 1002 (N.D. Ill. 2000).......................................15

In re Mex. Money Trans. Litig., 267 F.3d 743 (7th Cir. 2001) ....................................................15

*In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D.La.1993) ....................................................14

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489, (11th Cir. 1992)..........................................................8

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, (N.D. Ga. 2001)................................................10

*James v. JPMorgan Chase Bank, N.A.*, No. 8:15-CV-2424-T-23JSS, 2017 WL 2472499 (M.D.
Fla. June 5, 2017)..................................................................................................................13

*Kramer v. Autobytel,*
No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800
(N.D. Cal. Jan. 27, 2012)......................................................................................................13

*Legg v AEO*, 14-cv-02440-VEC (S.D. NY 2017).......................................................................17

*Malta v. Fed. Home Loan Mortg. Corp.,*
No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) .............................13

*Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 U.S. Dist. LEXIS 17546
(N.D. Ga. Jan. 30, 2017)........................................................................................................13

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).................................................................1

*Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302 (11th Cir. 2015)..................................1

*Newman v. Sun Capital Corp.*, No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 (M.D. Fla. Aug.
28, 2012).................................................................................................................................11

*Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211 (W.D. Wash. Oct. 21, 2011).........................13

*Perez*, 501 F. Supp. 2d at 1380 .................................................................................... 10, 13, 14

*Steinfeld v. Discover Fin. Svcs.* 12-cv-01118 (N.D. Cal.)............................................................13

*Warren v. City of Tampa*, 693 F.Supp. 1051 (M.D. Fla. 1988)..................................................8, 9

*Willett, et al. v. Redflex Traffic Systems, Inc., et al.*, Case No. 13-cv-01241-JCH-RHS (D.NM
  10/24/16)........................................................................................................................17

*Wojcik v. Buffalo Bills, Inc.*
  Case No. 8:12-cv-02414-SDM-TBM (M.D. Fla. Aug. 25, 2014) ..........................................13

**Statutes**
47 U.S.C. § 227(b)(1)(A)(iii) .......................................................................................................1

92617

## I.      INTRODUCTION

Plaintiff Brian Keim respectfully moves for an Order of Final Approval of the Class Settlement ("Settlement") reached with Defendants, ADF Midatlantic, LLC, American Huts, Inc., ADF Pizza I, LLC, ADF PA, LLC) and Pizza Hut, Inc. ("Defendants") (Collectively, the "Parties"). A copy of the Settlement Agreement and Release ("Agreement") is attached as *Appendix 1*.

Plaintiff's claims arose under the Telephone Consumer Protection Act ("TCPA"), a law which prohibits calls using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to cellular telephone service unless the call is made "for emergency purposes" or with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). Text messages like those at issue in this Litigation are treated as "calls" under the TCPA. *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1307 (11th Cir. 2015).

The "[v]oluminous consumer complaints about abuses of telephone technology … prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012). Congress found that "automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided that "banning" such calls made without consent was "the only effective means of protecting consumers from this nuisance and privacy invasion." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394, 2394-95 (codified at 47 U.S.C. § 227).

Thus, the TCPA creates a private right of action for persons affected by violations andprovides a maximum for statutory damages of $500 per violation, which the Court may treble upon a showing that the violation was willful. *Hitchman v. Nat'l Enter. Sys.*, 2014 U.S. Dist. LEXIS

92617

1

30623, at *5 (S.D. Fla. Mar. 10, 2014) (citing 47 U.S.C. §227(b)(3)). Plaintiff alleged he received several unsolicited text messages from Defendants as part of a texting campaign designed to promote Pizza Hut. Plaintiff contends he never consented to receive these texts. Instead, as part of the texting campaign, Settlement Class Members' cell numbers were provided to Defendants by others, without the class members' prior express consent. Plaintiff alleged this violated the TCPA. Defendants deny these allegations. The proposed Settlement would resolve all claims in this case.

Pursuant to the Agreement, Defendants will provide a total of $6,000.000.00 ("Settlement Amount") to fully settle all claims in this Litigation. The Settlement provides that Settlement Class Members who timely submit a valid Settlement Claim Form may each receive up to $400.00, depending on the number of valid claims received. Plaintiff anticipated that each Settlement Class Member would receive the full $400.00 based on average claim rates for similar TCPA class actions.

On November 6, 2019, this Court granted preliminary approval and approved the notice plan to the class. [ECF 420]. Pursuant to the approved notice plan, the class members were sent direct notice to submit a claim and 671 timely valid claims have been filed and 10 valid but late[1] claims. *See* [ECF 423-1 at ¶17] (Decl. of Claims Administrator KCC filed March 2, 2020). The parties have agreed to allow the 10 late claims, subject to court approval, especially as each class member will still receive $400 even if late claims are allowed. Regardless, the claim rate is almost 6% of the class members sent notice, which is a higher claim rate than in many consumer cases granted final approval and a terrific result in light of the fact that the text messages at issue were

---

[1] Several of the late claims were postmarked just a day or two after the deadline. *Id.* at ¶17. Similarly, a couple did not have a postmark such that it could not be determined if they were timely mailed as timeliness was determined by the postmark and not receipt of the claim. *Id.*

sent between 2010 and 2013.

As a further illustration of the class's support for the Settlement, there were no exclusions and no objections, [ECF 423-1 at ¶18] (KCC Decl.). Lack of objections or even a "low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005). Finally, no governmental entity objected to the Settlement after receiving the required CAFA notice. [ECF 423-1 at ¶4]. Thus, there is no opposition to this Settlement.

In granting preliminary approval, the Court found the Settlement was within the range of reasonableness, and thus that the class should be given notice. [ECF No. 420]. Nothing has changed to alter that finding. To the contrary, as demonstrated by the claim rate and lack of exclusions and objections, the class has indicated solid support for the Settlement. Thus, for the reasons set forth herein as well as those in the motion for attorneys' fees and expenses, Plaintiff respectfully requests this Court grant final approval, award Mr. Keim $10,000 as an incentive award; and award Class Counsel $2,000,000, which is inclusive of Class Counsel's expenses of $74,416.

## II.    OVERVIEW OF THE SETTLEMENT & SUMMARY OF LITIGATION

### A.    Procedural Background

On May 27, 2012, Keim filed a Complaint alleging that Defendants violated the TCPA by sending text messages *en masse* to Plaintiff and the putative class members having obtained their phone numbers from third-parties and without the prior express consent of Keim or the putative class members. Defendants filed a Motion to Dismiss, [ECF Nos. 18, 21], which the Court granted on July 15, 2013. [ECF No. 55]. Plaintiff successfully appealed the dismissal of the case to the

92617

3

Eleventh Circuit Court of Appeal, and the case was remanded to this Court for further decision after a year and a half hiatus due to the appeal. *See* [ECF Nos. 65, 62].

On June 10, 2015, Plaintiff filed his Second Amended Complaint, which is the operative complaint. [ECF No. 97]. On January 12, 2017, Plaintiff filed his Motion for Class Certification, [ECF No. 199], which was ultimately granted by this Court on December 4, 2018, after briefing. [ECF No. 259]. On December 21, 2017, Plaintiff filed a Motion to Approve Class Notice [ECF No. 264]. The Court eventually approved the class notice in part with revisions, [ECF No. 272], and Defendant moved for reconsideration of the Order. [ECF No. 273]. The Court denied the Motion for Reconsideration and granted in part Plaintiff's Motion to Approve Class Notice. [ECF No. 286]. In accordance with the Court's Order, [ECF No. 272], on July 12, 2019, Plaintiff filed a new Motion for Approval of Class Notice Plan. [ECF No. 374].

Meanwhile, Plaintiff proceeded to subpoena telephone carriers to obtain the class data necessary to provide notice to the unnamed class members, and moved to compel several carriers to respond to his subpoenas. *See, e.g.*, [ECF Nos. 288, 299, 306, 333].

On May 23, 2019, Defendants filed a Motion for Summary Judgment, which was fully briefed by July 19, 2019. [ECF Nos. 357, 387]. On July 17, 2019, Defendants also moved to decertify the class. [ECF No. 381]. Plaintiff filed his response to the motion to decertify on August 1, 2019. [ECF No. 396]. Before the Court's ruling on the Motion to Decertify and Defendant's Motion for Summary Judgment [ECF No. 319], the parties filed a joint motion to stay pending conclusion of settlement [ECF No. 409].

A final settlement was reached between the parties on August 29, 2019, while Defendant's Motion for Summary Judgment and Motion to Decertify were pending, and finally on October 30,

92617

4

2019, Plaintiff filed his Motion for Preliminary Approval of Class Action Settlement [ECF No. 419].

**B.      Discovery**

The Parties engaged in extensive discovery, including expert discovery and numerous depositions of Defendants' representatives. In addition, Plaintiff issued subpoenas to the telephone carriers and moved to compel production of discovery from the same.

Throughout the discovery process, Counsel held numerous discovery conferences with counsel as well as with third party counsel. The discussions were thorough and, at many points, contentious, as the parties addressed all facets of discovery as well as their respective views on class certification and of Plaintiff's class TCPA claims. *See* Declaration of Keith J. Keogh ("*Keogh Decl.*") attached as *Appendix 2*, at ¶¶ 3-6.

**C.      The Parties' Mediation**

The parties have discussed resolution of this matter throughout the years of litigation. The discussions gave rise to a mediation before the Honorable James Holderman (ret.) of JAMS on August 7, 2019. The parties followed-up with negotiations between counsel before reaching a resolution in principle. Prior to the mediation, the parties submitted detailed mediation briefs setting forth their respective views on the case.

At mediation, the parties discussed their relative views of the law and the facts and potential relief for the proposed Class. Counsel exchanged counterproposals on key aspects of the Settlement. At all times, the settlement negotiations were non-collusive and arm's length. *Id.* at ¶6.

The parties could not reach an agreement during the mediation, but negotiations continued until the final settlement of August 29, 2019.

### D.      The Settlement

The Settlement provides Defendants will pay $6,000,000 into a Settlement Fund for the

Settlement Class, which is defined as follows:

> All persons in the United States who received a text message from Defendants
> wherein their cellular telephone number was provided by a third party and said text
> messages were sent using hardware and software owned or licensed to Songwhale
> or Cellit between November 2010 and January 2013. Excluded from the class are
> all persons who received a text message from Defendants wherein their cellular
> telephone number was provided by a subscriber of the calling plan.[2]

[ECF No. 419-1 at 6].

Notice and administration costs through Kurtzman Carson Consultants LLC ("KCC") are

$46,361. *See* [ECF 423-1 at ¶21].

Consistent with Eleventh Circuit law and Federal Rule 23(h), the notice advised class

members of the Settlement's terms, the proposed fee and expense award, as well as the class

members' right to file a claim, request exclusion and/or object to the Settlement and proposed fee

and expense award. The notice expressly told class members "Plaintiff will petition for an

Incentive Payment not to exceed $10,000 for the Named Plaintiff's work in representing the Class,

and Class Counsel's fees of up to one third of the Settlement Amount, not to exceed $2,000,000

(which is inclusive of all costs and expenses)." [ECF 423-1 at Ex. C (p.2)] (KCC Decl.). Once

again, there were no objections to any portion of the Settlement. Likewise, no governmental entity

objected to any portion of the Settlement after receiving the required CAFA notice of the

Settlement and its terms, which was sent on November 8, 2019. *Id* at ¶3-4.

---

[2] Excluded from the Settlement Class are Defendants, their legal representatives, assigns, and
successors, and any entity in which the Defendants have a controlling interest. Also excluded from
the Class is the Judge to whom this case is assigned as well as the Judge's immediate family, and
any individual who opts out of the Settlement Class.

92617

### III.     THE COURT HAS ALREADY CERTIFIED THE CLASS

On December 4, 2018, the Court certified the Class, finding Plaintiff met the class-certification requirements of Rule 23 of the Federal Rules of Civil Procedure. [ECF 259].

### IV.     THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT

To satisfy Rule 23, the notice must be calculated to "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determination regarding whether the settlement serves their interests." *U.S. v. Alabama*, 271 Fed. Appx. 896, 901 (11th Cir. 2008); *see also In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1314 (11th Cir. 2009), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"). However, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations and citation omitted). Moreover, neither Rule 23 nor due process requires that class members receive actual notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012).

The plan approved by the Court provided exceptional notice that exceeds Rule 23 and due process requirements. This Court Ordered:

> The Class Administrator shall provide direct notice via First Class Mail to Settlement Class Members for whom it has contact information. Class Notice shall be in the form of the Postcard Notice attached as Exhibit 2 to the Agreement, which shall contain a claim ID and shall direct recipients to the Settlement Website, which will contain the completed long form notice attached as Exhibit 3 to the Agreement. Prior to mailing the Postcard Notice, the Claims Administrator shall search for updated addresses via the USPS national change of address database. The Claims Administrator shall re-mail one time any Postcard Notice returned as undeliverable, and shall undertake reasonable means to locate alternative addresses for any returned Postcard Notice. The Court hereby directs the Parties and the Claims

Administrator to complete Class Notice by December 6, 2019, which is 30 days following the entry of the Preliminary Approval Order ("Notice Deadline").

[ECF No. 420, ¶12].

The Claims Administrator followed the plan. It sent direct notice to each class member for which valid contact information was located. [ECF 423-1 at ¶¶5-9, 11-16] (KCC Decl.). The direct notice summarized the claim, gave the estimate of what each class member would receive, stated the exact amounts sought for incentive awards and for fees (in both a dollar amount and as a percentage of the fund), provided a toll-free number for questions, and directed class members to the settlement website. *Id.* at ¶11 and Ex. C. The website enabled class members to review the settlement agreement and exhibits, the preliminary approval order, fee petition, long form notice and FAQs. *Id.* at ¶15. The site's FAQs also provided a toll-free number to reach class counsel. (www.PizzaTCPASettlement.com) ("You can also call Class Counsel with any questions at 1-866-726-1092."). The claims process outlined in the notice was first rate, allowing class members to submit a claim via mail, the settlement website or even through the telephone with a claim *Id.* In short, the notice complies with the court-approved plan, exceeds Rule 23 and due process requirements, and fully apprised the class of all material terms and their rights. *See e.g.*, *Greco v. Ginn Dev. Co., LLC*, 2015 U.S. App. LEXIS 20867 at *15 (11th Cir. Dec. 2, 2015) (unpublished) ("all material facts were available to class members because a full copy of the settlement agreement, and the release, were available on a website referenced in the Notice.").

## V.       THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Judicial and public policy favor the voluntary settlement of class litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F.Supp. 1051, 1054 (M.D. Fla. 1988)

("settlements are highly favored in the law."). With a settlement, class members are ensured a benefit as opposed to "the mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

A settlement should be approved if it is fair, reasonable, and adequate, and not the product of collusion. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). In determining this, some deference should be given to the decision of the parties. *See Warren*, 693 F.Supp. at 1060 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation."). Also, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323, 1329 (S.D. Fla. 2001) (citation omitted). In determining whether a settlement is "fair, adequate, and reasonable," the following factors (the *Bennett* factors) are generally considered:

> (1) likelihood of success at trial; (2) range of possible recovery; (3) point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) complexity, expense and duration of litigation; (5) substance and amount of opposition to the settlement; and (6) stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986. Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1344 (S.D. Fla. 2011) (internal citation omitted). That is the case here, as the Agreement is the result of arm's length, informed negotiations between the parties with the assistance of a neutral mediator, and satisfies each of the *Bennett* factors.

A.    **The Agreement Is the Result of Arm's Length Negotiations.**

The context in which the Agreement was reached confirms it was the result of arm's length

and informed negotiations between the parties, not collusion. To start, the Agreement only came about after seven years of litigation including a successful appeal and a certified class. Even then, Defendants moved for summary judgment and decertification. Further, the case was not resolved until after discovery was closed and after a mediation presided over by a highly-qualified, third-party mediator. These extensive efforts gave Class Counsel ample information about the facts and the chance of success, and enabled them to evaluate the terms and ensured a fair compromise. *See Appendix 2* (Keogh Decl.) at ¶4-¶5 and *Appendix 3* (Owens Decl.) at ¶27-33.

The fact the parties only reached a deal after an in-person mediation session with an experienced neutral further demonstrates the absence of collusion. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of …. a highly experienced mediator, lends further support to the absence of collusion."); *see also In re Checking Account Overdraft Litig.*, 830 F.Supp.2d at 1345, 1349 (no collusion where settlement reached by capable and experienced counsel with the assistance of a well-qualified, experienced mediator). As such, it is clear this settlement is the result of arms' length, informed negotiations, and thus it should be approved.

**B.    The Settlement Meets Each of the *Bennett* Factors.**

In addition to being the product of arm's length negotiations, the Agreement also meets each of the Eleventh Circuit's *Bennett* factors.  It is important to keep in mind that "[i]n evaluating these considerations, the district court should not try the case on the merits."  *Perez v. Asurion Co.*, 501 F. Supp.2d 1360, 1380 (S.D. Fla. 2007) (citation omitted). "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'"  *Id*. Here, each factor weighs in favor of granting final approval.

92617

10

1.          **Likelihood of Success at Trial.**

For the first *Bennett* factor, "[t]he likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma*, 406 F. Supp.2d at 1319. Where success at trial is uncertain, this factor weighs in favor of approving the settlement. *See Newman v. Sun Capital, Inc.*, 2012 U.S. Dist. LEXIS 121843, *30 (M.D. Fla. Aug. 28, 2012).

At the time of the settlement, Defendants' motions for decertification and summary judgment as to vicarious liability and whether the systems used to send the texts even qualified as an ATDS were pending. [ECF Nos. 319, 381].

Against these myriad hurdles and uncertainties, the Settlement guarantees substantial cash relief. *See Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354, *38 (S.D. Fla. Nov. 5, 2015) ("Rather than facing more years of costly and uncertain litigation, [the] Settlement Class Members will receive an immediate cash benefit…") (brackets added). Thus, when the strengths of the claims are weighed against the legal and factual obstacles the class faces, and the complexity of class action practice, there should be no doubt that this settlement is in the class's best interests. *See Appendix 2* (Keogh Decl.) at ¶7-9.

In fact, after settlement was reached and after this Court granted preliminary approval, the Eleventh Circuit decided *Glasser v. Hilton Grand Vacations*, 2020 U.S. App. LEXIS 2481 (11th Cir. 2020)*, which held a dialing system must randomly generate numbers to be dialed to be actionable under the TCPA. There is a high probability that applying *Glasser* to the dialing systems here would result in judgment for Defendants, resulting in nothing for the class.

This risk, as well as the risks the Court could decertify the class or Pizza Hut would prevail on vicarious liability or the ATDS issue all support the Settlement. *See Muransky v. Godiva*

*Chocolatier, Inc.*, 905 F.3d 1200, 1218 (11th Cir. 2018), *opinion vacated and superseded*, 922 F.3d 1175 (11th Cir. 2019), *reh'g en banc granted, opinion vacated*, 939 F.3d 1278 (11th Cir. 2019) (noting the district court's discussion of the "significant legal hurdles class counsel faced..." at the time of settlement.) The first *Bennett* factor strongly weighs in favor of approving it.

### 2.     Range of Possible Recovery and the Point at which the Agreement Is Fair, Reasonable, and Adequate.

Analysis of the second and third *Bennett* factors – the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable – are often combined.  *See In re Sunbeam*, 176 F.Supp.2d at 1331. As in most litigation, "[t]he range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Co.*, 517 F.Supp.2d 1292, 1326 (S.D. Fla. 2007) (quoting *Lipuma*, 406 F.Supp.2d at 1322). However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Id*.

The monetary relief secured for the class is substantial and provides for $400 per claim. This is a substantial portion of the amount each class member could hope to recover as the TCPA provides for $500 per call. *See Muransky*, 905 F.3d at 1205 (affirming FACTA settlement where class members would receive less than $100 as it was likely the potential maximum recovery would be $100, not $1,000, noting "Dr. Muransky acknowledged there was 'a good chance' each class member would recover the $100 minimum statutory damage award if the case went to trial. At the fairness hearing, the District Court agreed …"). This result is also plainly reasonable because the relief easily surpasses the potential per-class-member benefit conferred in many other

92617

TCPA class settlements that received final approval.[3]

### 3.     The Complexity and Expense of Further Litigation.

The next factor is the complexity and expense of further litigation. In evaluating this factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp.2d at 1323 (citation omitted). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F. Supp.2d at 1381 (citation omitted).

This factor favors approval because the expense and complexity of further litigation would be substantial and require additional litigation regarding the impact of *Glasser* and possibly trial

---

[3]  *See James v. JPMorgan Chase Bank, N.A.*, No. 8:15-CV-2424-T-23JSS, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (holding class counsel's result of "$81 per class member who submitted a claim equals or exceeds the typical award in a TCPA class action."); *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 U.S. Dist. LEXIS 17546, at *11 (N.D. Ga. Jan. 30, 2017) (finding $24 per class member to be "an excellent result"); *Wojcik v. Buffalo Bills, Inc.*, Case No. 8:12-cv-02414-SDM-TBM (M.D. Fla. Aug. 25, 2014) (class claimants to receive $57.50-$75.00 gift card); *In re Enhanced Recovery Co.*, 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014) at DE 123, p. 1 (only injunctive relief for class) and DE 124 (settlement granted final approval); *Hashw v. Dep't Stores Nat'l Bank*, 182 F.Supp.3d 935, 944 (D. Minn. 2016) (Kyle, J.) (approving a TCPA settlement that yielded $33.20 per claimant); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval where each claimant would be awarded $39.66) (Holderman, J.); *Steinfeld v. Discover Fin. Svcs.* 12-cv-01118 (N.D. Cal.) (Final Approval of $46.98 to each claimant.); *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval granted at Dkt. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248, Dkt. Nos. 116 & 137 (S.D. Cal. Sept. 28, 2012) (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D. Wash. Oct. 21, 2011) (approving $5.5 million settlement to benefit 18.1 million class members).

92617

and subsequent appeals. *See Appendix 2* (Keogh Decl.) at ¶8. Moreover, continued litigation would delay the case's resolution, impose additional substantial expense on both sides, and consume substantial judicial resources. In these circumstances, it is "proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp.2d at 1323 (quoting *In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La. 1993)); *see also Perez*, 501 F.Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.").

4.      **Stage of Proceedings at which Settlement Achieved.**

The next *Bennett* factor looks to the stage of proceedings at which the settlement was achieved. This factor is used "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F. Supp.2d at 1383 (citation omitted).

The Agreement was preceded by seven years of litigation including an appeal, class certification, expert discovery.   The case was not settled until after discovery closed and after a day-long mediation before a professional neutral. Thus, the settlement is the product of full knowledge of the facts, and ample motions and rulings.

On top of that, Class Counsel were able to bring to substantial expertise to bear on this case from their experiences in other TCPA class actions, which should leave no doubt that they had sufficient information and knowledge to evaluate the strength of the class claims and weigh the benefits of the Agreement against continued litigation. *See Appendix 2* and *3*.

5.      **Substance and Amount of Opposition to Agreement.**

The final *Bennett* factor is the substance and amount of opposition to the Agreement. There

is none. The complete lack of opposition and terrific claim rate for texts that took place between 2010 and 2013, show this factor weighs fully in support of final approval. *See Lipuma*, 406 F.Supp.2d at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval.") (citing *Bennett*, 737 F.2d at 986); *Allapattah Servs., Inc. v. Exxon Corp.*, 2006 U.S. Dist. LEXIS 88829, *44 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair.") (brackets added).[4]

In sum, the Agreement meets all *Bennett* factors. For this additional reason, it is fair, reasonable, and adequate, and thus should be granted final approval.

## VI.     THE PROPOSED FEE IS REASONABLE

As explained in Plaintiff's petition for Attorney Fees, the one-third percentage sought is common and approved in multiple consumer class actions in this district.[5] Thus, the

---

[4]  *See also In re Mex. Money Trans. Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (that "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlements."), *aff'd*, 267 F.3d 743 (7th Cir. 2001); 2 McLaughlin on Class Actions §6:10 (10th ed.) ("the absence of objectors or receipt of a relatively small number of objections and opt-outs supports the conclusion that the settlement is adequate.").

[5]  *See Muransky*, 905 F.3d at 1217-18(Affirming one third of the settlement in consumer statutory class action over class member objections.) (Vacated on other grounds); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 150274 at *19 (M.D. Fla. Dec. 29, 2011) (approving fee award of one-third of the common fund); *Guarisma v. Microsoft*, 15-cv-24326-CMA, ECF No. 79, pp.7-8 (S.D. Fla), ¶g.-¶j., and ¶14; *Legg v. Lab. Corp. of Am. Holdings*, 14-cv-61543-RLR, ECF No. 227, ¶13 (S.D. Fla. Feb. 18, 2016); *Legg v. Spirit Airlines Inc.*, 14-cv-61978-JIC, ECF No. 151, ¶14 and ¶15 (S.D. Fla. Aug. 2, 2016); *Wood v. J. Choo USA, Inc.*, 15-cv-81487-BB, ECF No. 97, p.7, ¶g. and ¶23 (S.D. Fla. May 9, 2017); *Muransky v. Godiva Chocolatier, Inc.*, 15-cv-60716-WPD, ECF No. 99, ¶12.j. and ¶14 (S.D. Fla. Sept. 28, 2016), *aff'd Muransky*, 905 F.3d at 1206, 1217; *see also, e.g, Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012), *report and recommendation adopted*, No. 03-22778-CIV, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012) ("One-third of the recovery is considered standard…"); *Dear v. Q Club Hotel, LLC*, 2018 U.S. Dist. LEXIS 42787 at *11 (S.D. Fla. Mar. 14, 2018) ("A review of the case law reveals that a 33.3% fee award is a consistent award in class action common fund cases.").

reasonableness of a one-third percentage, inclusive of expenses, is fully supported by the *Johnson/Camden* factors endorsed by the Eleventh.

In addition, there was no clear sailing agreement and the notice expressly advised the class of the exact amount Class Counsel would seek. [ECF 423-1 at Ex. C (p.2)] (KCC Decl.). Not a single class member objected.

## VII.   THE PROPOSED INCENTIVE AWARD IS PROPER

Incentive payments are commonly awarded to class representatives for their service to the class in vindicating their rights and enabling them to secure relief on their common claims, as contemplated by Federal Rule 23. *See Muransky*, 905 F.3d at 1218 ("Many circuits have endorsed incentive awards and recognize them as serving the purposes of Rule 23.") (internal citations omitted). Here, Mr. Keim seeks $10,000 for his seven years of efforts on behalf of the class including answering discovery, sitting for his deposition and attending the mediation in Chicago in person. Over the course of seven years, Mr. Keim worked with Class Counsel to investigate the case, stayed abreast of the proceedings throughout the litigation and settlement, and reviewed and approved the proposed settlement. *See, e.g.*, *Benzion v. Vivint, Inc.*, No. 12-61826-CIV, 2015 WL 11143078, at *3 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 service award in TCPA class settlement); *Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIV, 2018 WL 5905415, at *11 (S.D. Fla. Nov. 9, 2018) (approving $50,000 per plaintiff, noting "[t]ogether, the requested awards total $100,000, or 0.1% the amount recovered for the Class, which is well within the range of incentive awards in other cases.") (collecting cases approving incentive awards ranging from $15,000 to $1.76 million); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, DE 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 service awards in TCPA class settlement); *Cooper v. NelNet,*

*Inc.*, 14-cv-314, ECF No. 85, p.5, ¶11 (M.D. Fla. Aug. 4, 2015) (approving a $25,000 incentive award); and *Muransky*, 905 F.3d at 1219 (affirming $10,000 incentive award in FACTA case that settled months after being filed, where plaintiff was not deposed and did not have to answer written discovery).

Like for the attorney fee request, the notices expressly advised the class of the exact amount Plaintiff would seek. ECF 423-1 (KCC Decl.) at Ex. C (p.2). Not a single class member objected. Thus, the proposed incentive award should be approved.

**VII. CY PRES RECIPIENT**

In the event any funds remain from uncashed checks, Plaintiff proposes the remaining funds be distributed to the National Consumer Law Center ("NCLC") and earmarked for work to maintain TCPA protections for consumers. *See Legg v. AEO*, 14-cv-02440-VEC (S.D. NY 2017) (TCPA) (Approving NCLC for TCPA class case); *Willett, et al. v. Redflex Traffic Systems, Inc., et al.*, Case No. 13-cv-01241-JCH-RHS (D.NM Oct. 24, 2016) (TCPA) (same); *In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation,* Master Docket No. 3:13-cv-1866-AWT (D. Conn. November 10, 2016) (Same); *Leung v XPO*, 15 C 03877, ECF 161 (N.D. Ill. May 30, 2018) (rejecting objector's challenge to NCLC because Class Counsel [6] was associated with fundraising arm of NCLC where he had no role in governing or controlling NCLC). *Leung* further found that "NCLC is also funded by reputable organizations, including the Illinois Office of the Attorney General and the W.K. Kellogg Foundation, which supports the finding that

---

[6] Undersigned was Class Counsel in *Leung*. Mr. Keogh along with Mr. Owens, are members of the Partners Council for NCLC. As found by *Leung*, NCLC has a separate Board of Directors and full-time staff who run NCLC. *See* Mr. Keogh's and Mr. Owen's declarations attached as *Appendix 2* and *3*.

92617

NCLC is a reputable nonprofit. *See* https://www.nclc.org/about-us/nclc-supporters.html (last accessed May 28, 2018)." In fact, one would be hard pressed to find another organization so closely aligned to the class interests to be protected by the TCPA[7]. Defendants do not oppose this proposal.

## IX     CONCLUSION

This Settlement provides substantial cash benefits, it is the product of full discovery, substantial litigation and arm's length negotiations with an experienced mediator, plus it satisfies each of the six *Bennett* factors. The Court's preliminary approval order already found the Settlement within the range of reasonableness, nothing has changed to disturb that conclusion, and to the contrary the claim rate and lack of objections show the Settlement is fair, reasonable and adequate. Thus, Plaintiff requests an order granting final approval, awarding Mr. Keim $10,000 as an incentive award, awarding Class Counsel $2,000,000 for reasonable attorneys' fees, inclusive of expenses. A proposed final approval order, which is also being emailed to chambers, is hereby attached as *Appendix 4*.

---

[7] NCLC has commented to the FCC on almost every major, and many minor, proceedings, rulemakings and requests for exemptions under the TCPA that have come up since late 2014 with the FCC. *See* https://www.nclc.org/issues/robocalls-and-telemarketing.html It is widely seen as the leading consumer voice and the expert on TCPA matters pending before both the FCC and Congress. *Id*. NCLC staff meet regularly, almost bi-monthly, with staff of the former and current FCC Chairman's office, as well as staff of other Commissioners' office, and staff of the Consumer and Governmental Affairs Bureau. *Id*. Many of these filings are simple ex parte meeting summaries, but many single filings also reflect multiple meetings held on one day. In addition, NCLC wrote the amicus to the DC Circuit Court on behalf on behalf of several of the national consumer groups defending the 2015 Omnibus Order (which NCLC was largely instrumental in effecting -- as can be seen from a search of that order for either NCLC staff member Margot Saunders or NCLC's name. *Id*. NCLC staff has also testified in the Senate defending the TCPA last time the issue was before it. *Id*.

92617

Respectfully Submitted,

/s/ *Keith J. Keogh*

| | |
|---|---|
| Keith J. Keogh | Scott D. Owens |
| Keogh Law, LTD. | SCOTT D. OWENS, PA. |
| 55 W. Monroe St., Ste. 3390 | 3800 S. Ocean Dr., Ste. 235 |
| Chicago, IL 60603 | Hollywood, FL 33019 |
| 312.726.1092 (Main) | Phone: 954-589-0588 |
| 312.726.1092 (Fax) | Fax: 954-337-0666 |
| Keith@Keoghlaw.com | Email: Scott@ScottDOwens.com |

*Class Counsel for Plaintiff*

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Counsel for Plaintiff has conferred with Defendants' Counsel and Defendants do not oppose the relief requested herein.

s/ *Keith J. Keogh*

| | |
|---|---|
| Keith J. Keogh | Scott D. Owens |
| Keogh Law, LTD. | SCOTT D. OWENS, PA. |
| 55 W. Monroe St., Ste. 3390 | 3800 S. Ocean Dr., Ste. 235 |
| Chicago, IL 60603 | Hollywood, FL 33019 |
| 312.374.3401 (Direct) | Phone: 954-589-0588 |
| 312.726.1092 (Main) | Fax: 954-337-0666 |
| 312.726.1092 (Fax) | Email: Scott@ScottDOwens.com |
| | |
| Keith@Keoghlaw.com | *Class Counsel for Plaintiff* |

92617

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on March 6, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

By: <u>s/ <i>Keith J. Keogh</i>   </u>
      Keith J. Keogh

83822